UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORTO, INC., <br>     Plaintiff, <br><br> v. <br><br> WILLIAM GATEMAN, INDIVIDUALLY <br> and as TRUSTEE OF 200 UNION <br> STREET REALTY TRUST, <br>     Defendant and <br>     Third Party Plaintiff, <br><br> v. <br><br> ROBERTS CORPORATION, <br>     Third Party <br>     Defendant. | CIVIL ACTION NO. 04-11730 NG |

### PLAINTIFF'S ANSWERS TO WILLIAM GATEMAN'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, Georto, Inc. ("Georto"), hereby responds to the interrogatories of the Defendant, William Gateman, Individually and as Trustee of 200 Union Street Realty Trust ("Gateman"), as follows:

### GENERAL OBJECTIONS

The following objections are asserted in response to each and every interrogatory propounded by Gateman. Each objection will not be re-stated in each response, but instead will be incorporated by reference. A response does not constitute a waiver of any objection asserted.

1. Georto objects to the Interrogatories to the extent that they purport to require it to identify information and/or documents not within its possession, custody, or control, and to the extent that they purport to require Georto to respond on behalf of any person or entity other than itself.

2. Georto objects to the Interrogatories to the extent that they call for information which

is not relevant to the material issues in this litigation, not admissible at trial, or not reasonably calculated to lead to the discovery of admissible evidence.

3. Georto objects to Gateman's instructions and definitions to the extent that they seek to impose obligations on Georto not required or permitted by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the District of Massachusetts.

4. Georto objects to the Interrogatories to the extent that they are argumentative and/or mischaracterize documents that speak for themselves.

5. Georto objects to the Interrogatories to the extent that they call for information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.

6. Georto objects to the Interrogatories to the extent that they call for the disclosure of confidential or sensitive commercial information.

7. Georto objects to the Interrogatories to the extent that they call for information more appropriately obtained through other means of discovery, including but not limited to depositions and/or requests for admission.

8. Georto objects to the extent that the Interrogatories seek to require Georto to identify facts and documents upon which it relies prior to the expiration of discovery.

9. Georto specifically reserves the right to supplement its responses.

## ANSWERS TO INTERROGATORIES

1Q. Please state your name, age, residence address, business address, employer, and authority by which you answer these interrogatories.

1A.

    James Mallory Hawkins, age 41
    3965 Leafy Way
    Coconut Grove, FL 33133

2

Georto, Inc.
2980 McFarlane Road Suite 202
Miami, FL 33133

Employer:

Smith Barney (Senior VP – Investments)

Mr. Hawkins answers these interrogatories as President of Georto.

2Q. Identify for each date on which Georto was present at the Property at any time after the structure on the Property was demolished, the name and address of the Georto representative(s) present. Your answer is to include the date thereof.

2A. In addition to its General Objections, Georto specifically objects to the interrogatory on the grounds that the interrogatory is overly broad, unduly burdensome, and seeks information which is more appropriately obtained through other means of discovery. Georto also objects to the Interrogatory to the extent that it calls for information which is not relevant to the material issues in this litigation, not admissible at trial, or not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, including the General Objections set forth above, Georto, pursuant to Fed. R. Civ. P. 33(d), states that the answer may be derived or ascertained in whole or in part from the documents produced by Georto. (See document bates numbered P0399, 1087-1425) Subject to these objections, including the General Objections set forth above, Georto further responds as follows:

Time period up through closing (February 19, 2004): To the best of his recollection, Mr. Hawkins may have first visited the Property in the winter or early spring of 2003 (likely within a short time of first learning that the Property was for sale). Mr. Hawkins drove by and/or visited the Property on two or three additional occasions prior to signing the Purchase and Sale

3

Agreement. Mr. Hawkins also visited the Property with a representative of Aaron's on or about July 15, 2003.

Time period after closing (February 19, 2004): Mr. Hawkins may have visited the Property once or twice during the period after the closing and prior to the beginning of construction but does not specifically recall doing so. Mr. Hawkins visited the Property on April 9, 2004 shortly after Georto learned that the demolition and solid waste that had been buried at the Property. He met with Gateman at the Property at that time, in the presence of Steve McIntryre of PM Construction. Mr. Hawkins also visited the Property on other occasions in the period following that meeting, including meeting at the Property in or about May, 2004 with Chad Michaud. Starting at or about the time that Georto received its Certificate of Use and Occupancy, dated September 28, 2004, Georto has caused its employees to be on the Property on an approximately daily basis.

3Q. Identify for each date on which Georto had any conversation(s) with the Defendant Gateman which in any way concerned the Property, the name and address of the Georto representative(s) present. Your answer is to include the date thereof.

3A. In addition to its General Objections, Georto specifically objects to the interrogatory on the grounds that the interrogatory is overly broad, unduly burdensome, and seeks information which is more appropriately obtained through other means of discovery. Georto also objects to the interrogatory on the grounds that the term "representative" is vague and ambiguous. Georto interprets such term to mean an officer, director, employee, or attorney of Georto. Subject to these objections, including the General Objections set forth above, Georto, pursuant to Fed. R. Civ. P. 33(d), states that the answer may be derived or ascertained in whole or in part from the documents produced by Georto. (See documents bates stamped

4

P0476-0481) Subject to these objections, including the General Objections set forth above, Georto further responds as follows:

To the best of his recollection, Mr. Hawkins had only one conversation, a telephone call, with Gateman during the time period between the spring of 2003 and February, 2004. Upon information and belief, that conversation took place in June, 2003, after Mr. Hawkins executed the Purchase and Sale Agreement. After the closing, Mr. Hawkins had conversations with Gateman regarding the Property on or about the following dates: April 9, 2004 (meeting at the Property; also attended by Steve McIntyre of PM Construction), April 13, 2004 (telephone call), April 14, 2004 (telephone calls), and April 15, 2004 (telephone call). Georto's counsel, after issuing a letter dated April 26, 2004 addressed to Paul F.X. Yasi, Esq., received approximately three calls from Gateman on or about April 27, 2004 and in the period shortly thereafter.

4Q.   Identify each and every document (by name, date of document, date received, person from whom received and substance) which Georto claims contained information and/or representations which formed any part of the basis upon which it claims it entered into the Purchase and Sale Agreement with Gateman.

4A.   In addition to its General Objections, Georto specifically objects to the interrogatory on the grounds that the interrogatory is overly broad, unduly burdensome, and seeks information which is more appropriately obtained through other means of discovery. Georto further objects to the interrogatory on the grounds that the language "information" and "which formed any part of the basis" are vague and ambiguous. Georto also objects to the Interrogatory to the extent that it calls for information which is not relevant to the material issues in this litigation, not admissible at trial, or not reasonably calculated to lead to the discovery of admissible evidence. Subject to these objections, including the General Objections set forth above, Georto, pursuant to Fed. R. Civ. P. 33(d), states that the answer may be derived or ascertained in whole or in part from the documents produced by Georto. (See documents bates

5

numbered P0294-0303, 0344-0368, 0484-0491, 1454-1465, and 1406-1425.) Subject to these objections, including the General Objections set forth above, Georto further responds as follows:

Georto entered into the Purchase and Sale Agreement based upon the provisions contained therein, specifically including the warranties, representations, and contingencies included therein. Upon information and belief, the Purchase and Sale Agreement was prepared by Gateman's counsel and was reviewed by Georto's counsel. Upon information and belief, the first draft of the Purchase and Sale Agreement was received from Clayton Collins on or about March 25, 2003. After further negotiation and revisions, the Purchase and Sale Agreement was executed by Mr. Hawkins on or about June 11, 2003. Upon information and belief based on a review of the document, Gateman executed the document on or about June 18, 2003. Georto had received the Purchase and Sale Agreement executed by Gateman as of June 21, 2003.

To the extent that the interrogatory seeks the identification of documents setting forth information as to why Georto was interested in the Property, made an offer on the Property, and/or decided to enter into a purchase and sale agreement, Georto further states that its interest was based on information about the suitability/expected profitability of the Property for a retail location for Georto's business. Such information included property size, property configuration, appearance, location, demographics, proximity, competition, financing, acquisition and construction costs, expenses, profitability, and related information.

5Q.   Please state whether or not Georto claims that Gateman failed to fulfill any obligations or any responsibilities under the Contract with regard to "...hazardous materials as defined by state, federal or local law...on the property". If the answer is anything other than an unconditional negative, please describe in complete detail each such hazardous material on the property and/or failure by Gateman.

5A.   Gateman warranted that "there are no hazardous materials as defined by state, federal, or local law..." While Georto is not aware of the discovery on the Property after the closing (February 19, 2004) of any hazardous materials as defined by state, federal or local law,

6

the groundwater investigation referenced in the Goldman Environmental Consultants' Phase II Environmental Site Assessment dated December 23, 2002 (see documents bates numbered P0825-0874) states that low levels of tetrachloroethene and trichloroethene and cis-1,2-dichloromethane were detected in groundwater from two of the monitoring wells (reported as low concentrations below applicable MCP reporting concentrations). Additional information is contained in that report.

6Q. With regard to Paragraph 19(a) of Georto's Complaint, please give a complete description of each of the items of "demolition debris and solid waste" identified by describing the nature of, size of and location of the items.

6A. In addition to its General Objections, Georto specifically objects to the interrogatory on the grounds that the interrogatory is overly broad, unduly burdensome, and seeks information which is more appropriately obtained through other means of discovery, specifically including depositions of those individuals who witnessed the debris and solid waste (specifically including but not limited to the contractors hired by Gateman to perform site work, as well as PM Construction and other contractors that performed work for Georto regarding removal of the debris and solid waste). Georto further objects to the interrogatory to the extent that it calls for the identification and/or location of each item of debris or solid waste. Georto further objects on the grounds that Georto made the Property available for inspection by Gateman prior to causing the removal of the debris and waste. Subject to these objections, including the General Objections set forth above, Georto, pursuant to Fed. R. Civ. P. 33(d), states that the answer may be derived or ascertained in whole or in part from the documents produced by Georto. (See documents bates numbered P0041-0047, 0061, 0074-0076, 0150-0160, 0474, 0476-0481, 0505-0679 (specifically but not limited to 0592-0594), 0876-0892, 0900, and 0900A-E.) Subject to these objections, including the General Objections set forth above, Georto further responds as follows:

The debris and solid waste included extensive amounts of wood timbers, wood, charred wood, brick, concrete, metal, trash, radiator(s), a cash register, shelving, air tank, and other materials. The debris and solid waste were concealed below several feet of fill material. The demolition debris and solid waste and the locations thereof, as observed prior to the date of his report, are described in the Geotechnical Engineering Evaluation dated May 13, 2004 (see document bates numbered P0876-892) prepared by Chad B. Michaud, P.E., S.W. Cole Engineering, Inc. Georto also directs Gateman's attention to the photographs produced by Georto.

7Q. With regard to Paragraph 21 of Georto's Complaint, please identify with particularity the specific sections of the "Solid Waste regulations of the Massachusetts Department of Environmental Protection" which Georto therein claims were violated by Gateman.

7A. Georto identifies 310 CMR 16.00, et seq., and 310 CMR 19.000, et seq.. Without limitation, Georto more specifically identifies 310 CMR 16.02, 310 CMR 16.05, and 310 CMR 19.014, and the regulations referenced therein.

8Q. Please state whether or not Georto ever conducted any independent "test borings" at the Property and, if so, on what date, at what cost and by whom.

8A. Georto, in accordance with the requirements of KeyBank, caused Goldman Environmental Consultants to prepare a Phase II Environmental Site Assessment, consisting of soil and groundwater sampling, at a cost of $5,491. Goldman Environmental Consultants' conclusions relating to the subsurface investigation conducted at the Property were set forth in letter from Goldman to Georto dated February 2, 2004. Upon information and belief, Goldman

caused four soil test borings to be performed at the Property. Locations and other information regarding the drilling are reflected in the report (see document bates numbered P0691-0733). The report indicates that the test borings were installed by GeoLogic, Inc., under the supervision of Goldman Environmental Consultants, on January 21, 2004. (See also documents bates numbered P0759-0766, 0797-0823.)

9Q. Did Georto, either orally or through documents, prior to executing the Contract, ever supply Gateman or communicate to him its specific engineering/architectural requirements for the soil at the Property given its intended use of the Property. If so, please identify in complete detail each such document or oral communication by document date, name of document, date supplied to Gateman, parties involved and the names of any witnesses thereto.

9A. Pursuant to its Letter of Intent dated February 20, 2003 addressed to Gateman, Georto notified Gateman that Georto required that the Property be "environmentally clean with appropriate subsurface conditions" and be "appropriate for use as a furniture, electronics, appliance, computer, & jewelry lease-to-own facility" and that Georto intended to "build and operate a franchise on site". The Letter of Intent was provided to Clayton Collins and Gateman. The Purchase and Sale Agreement provides that Gateman warranted that "there are no hazardous materials as defined by state, federal, or local law, or non-acceptable environmental conditions on the property," that the Property was intended for use as a commercial retail establishment, that the Property would be used for the construction and operation of at least one commercial space in accordance with Georto's standard plans and specifications for a typical furniture, electronics, appliance, computer and jewelry lease to own facility. Upon information and belief, while Georto did not itself otherwise provide Gateman with "specific engineering / architectural requirements, PM Construction, Port City Design, and/or Eastern Land Survey may have communicated with Gateman's counsel regarding certain

9

issues regarding the Property. Georto further states, based on discovery, that Gateman was made aware by Family Dollar prior to the Georto Purchase and Sale Agreement that the demolition debris and solid waste must be removed in order to construct a similar building. Georto further states that Gateman caused the demolition debris and solid waste to be buried at the Property and covered with fill so as to give the appearance of suitability for construction.

10Q. For the period 1990 to the present, please identify the exact address, date of and seller of each and every other property purchased by Georto which Georto "...intended to use ... for the construction of a new commercial building as a retail store for Georto's business." as alleged in Paragraph 9 of the Complaint.

10A. None.

11Q. Please identify by date, parties involved and the names and addresses of any witnesses for each occasion on which Georto claims Gateman "warranted and/or represented to Georto that all demolition debris had been removed from the Property...."

11A. Gateman's warranties and/or representations that all demolition debris had been removed from the Property were set forth in Goldman Environmental Consultant's Phase I Environmental Site Assessment dated May 29, 2002 (see document bates numbered P0505-0679) provided/certified by Gateman to Georto (shortly after June 11, 2003 and again on or about December 20, 2003) pursuant to the Purchase and Sale Agreement and in the Family Dollar Purchase and Sale Agreement faxed to Georto by Gateman's counsel on July 7, 2003 (see documents bates numbered P0454 – 0472). Witnesses include individuals who prepared or received such documents, including Lauren M. Maigret, Heather Boyd, Samuel W. Butcher of Goldman Environmental, Mr. Hawkins, employees of PM Construction, employees of KeyBank, employees of Aaron's, employees of Family Dollar, Gateman, Clayton Collins, Gateman's counsel (Mr. Yasi), and others. Addresses are set forth in the parties' initial disclosures.

12Q. With regard to Paragraph 13 of the Complaint, please state whether or not the original May 29, 2002 "Phase I Environmental Site Assessment written report prepared by Goldman Environmental Consultants, Inc." (Assessment") referred to therein, was, in fact, originally written for purposes of the sale by Gateman to Family Dollar Stores of Massachusetts, Inc. of a lot which adjoined that purchased by Georto through its Contract of June 18, 2003 with Gateman.

12A. Georto was not aware of the Property as of May 29, 2002 and does not have contemporaneous knowledge of the original purpose for which the Assessment was written. While it appears that the Assessment was originally written in connection with the sale to Family Dollar, Gateman, in accordance with the provisions of the Purchase and Sale Agreement, provided Georto with a copy of Assessment from Gateman (via Federal Express) shortly after execution of the Purchase and Sale Agreement. Upon information and belief, Gateman forwarded an additional copy of the Assessment to Georto by email dated December 20, 2003. Gateman caused Goldman Environmental to provide Georto with a letter dated December 11, 2003 (see document bates numbered P0680 and P0740), pursuant to which Goldman stated that Goldman "understands that Georto, Inc. is relying on the information contained in our report for the completion of due diligence activities and financing associated with the above-referenced property. Georto, Inc. may rely on the information contained in this report as if the information were prepared for them." Upon information and belief based upon a review of the document bates numbered P0734, Gateman requested that Goldman Environmental Consultants issue the reliance letter to Georto. Goldman also provided a letter dated February 11, 2004 addressed to Mr. Drew Yesso (of KeyBank) in care of Mr. James Hawkins, Georto, Inc. (see document bates numbered P0741-0753), pursuant to which Goldman stated that Goldman "understands that KeyBank is relying on the information contained in GEC's reports for the completion of due diligence activities and financing associated with the above-referenced property. KeyBank may rely on the information contained in the following reports [identified in

11

the letter as Goldman's Phase I Environmental Site Assessment, dated May 29, 2002, and the Limited Subsurface Investigation (.e., Phase II report) dated February 2, 2004] as if the information were prepared for them."

Georto further states that the Assessment indicates that the Site that was the subject of the investigation included the Property ultimately sold to Georto.

13Q.   With regard to Paragraph 8 ("Contingencies") of the Contract, please set forth in exact detail the nature of, date of and parties involved in each and every step or action taken by Georto with regard to satisfying itself as to the contingency of Paragraph 8 regarding "...(b) the results of (i) engineering, drainage, surface and subsoil investigations and tests of the property....".

13A.   In addition to its General Objections, Georto specifically objects to the interrogatory on the grounds that the interrogatory is overly broad, unduly burdensome, and seeks information which is more appropriately obtained through other means of discovery. Subject to these objections, including the General Objections set forth above, Georto, pursuant to Fed. R. Civ. P. 33(d), states that the answer may be derived or ascertained in whole or in part from the documents produced by Georto. (See documents bates numbered P0304, 0315-0317, 0324-0326, 0369-0379, 0505-0679, 0691-0733, 0741-0753, 0759-0766, 0797-0823, 0824-0874) Subject to these objections, including the General Objections set forth above, Georto further responds as follows:

In accordance with the provisions of the Purchase and Sale Agreement, Georto received a copy of Assessment from Gateman (via Federal Express) shortly after execution of the Purchase and Sale Agreement. Georto provided the Assessment to PM Construction for use in connection with the expected costs of construction and to KeyBank in connection with the financing for the acquisition and construction costs and relied upon the accuracy of the information set forth therein. Georto, in accordance with the requirements of KeyBank, also

caused Goldman Environmental Consultants to prepare a Phase II Environmental Site Assessment, consisting of soil and groundwater sampling, at a cost of $5,491. Goldman Environmental Consultants' conclusions relating to the subsurface investigation conducted at the Property were set forth in letter from Goldman to Georto dated February 2, 2004. Upon information and belief, Goldman caused four soil test borings to be performed at the Property. Locations and other information reflected in report (see document bates numbered P0691-0733). Georto also received on December 22, 2003 a copy of a separate Phase II Environmental Site Assessment prepared by Goldman Environmental Consultants and dated December 23, 2002 (see document bates numbered P0824-0874).

Georto also relied upon Gateman's warranties in the Purchase and Sale Agreement, specifically including his warranties that "there are no hazardous materials as defined by state, federal, or local law" on the property and that there are no "non-acceptable environmental conditions on the property." The additional warranty language (regarding "non-acceptable environmental conditions" was added to the Purchase and Sale Agreement at Georto's request.

Georto further states that PM Construction, Port City Design, and/or Eastern Land Survey performed certain work regarding engineering, drainage, surface and subsoil investigations and tests of the property.

14Q. Please describe in exact detail each and every step and/or action taken by Georto to satisfy its "Due Diligence" requirements with regard to the purchase of the Gateman property through the Contract along with the costs associated with each such step or action and the name and address of the parties involved therein.

14A. In addition to its General Objections, Georto specifically objects to the interrogatory on the grounds that the interrogatory is overly broad, unduly burdensome, and seeks information which is more appropriately obtained through other means of discovery. Georto also objects to the Interrogatory to the extent that it calls for information which is not

relevant to the material issues in this litigation, not admissible at trial, or not reasonably calculated to lead to the discovery of admissible evidence. Georto objects to the interrogatory on the grounds that the interrogatory misconstrues the Purchase and Sale Agreement and is argumentative. Subject to these objections, including the General Objections set forth above, Georto, pursuant to Fed. R. Civ. P. 33(d), states that the answer may be derived or ascertained in whole or in part from the documents produced by Georto. (See documents bates numbered P0304, 0315-0317, 0324-0326, 0369-0379, 0505-0679, 0691-0733, 0741-0753, 0759-0766, 0797-0823, 0824-0874, 0902-0922, and 1140-1425.) Subject to these objections, including the General Objections set forth above, Georto further responds as follows:

In accordance with the provisions of the Purchase and Sale Agreement, Georto received a copy of Assessment from Gateman (via Federal Express) shortly after execution of the Purchase and Sale Agreement. Georto provided the Assessment to PM Construction for use in connection with the expected costs of construction and to KeyBank in connection with the financing for the acquisition and construction costs and relied upon the accuracy of the information set forth therein. Georto, in accordance with the requirements of KeyBank, also caused Goldman Environmental Consultants to prepare a Phase II Environmental Site Assessment, consisting of soil and groundwater sampling, at a cost of $5,491. Goldman Environmental Consultants' conclusions relating to the subsurface investigation conducted at the Property were set forth in letter from Goldman to Georto dated February 2, 2004. Upon information and belief, Goldman caused four soil test borings to be performed at the Property. Locations and other information reflected in report (see document bates numbered P0691-0733). Georto also received on December 22, 2003 a copy of a separate Phase II Environmental Site Assessment prepared by Goldman Environmental Consultants and dated December 23, 2002 (see document bates numbered P0824-0874).

Georto also relied upon Gateman's warranties in the Purchase and Sale Agreement, specifically including his warranties that "there are no hazardous materials as defined by state,

14

federal, or local law" on the property and that there are no "non-acceptable environmental conditions on the property." The additional warranty language (regarding "non-acceptable environmental conditions" was added to the Purchase and Sale Agreement at Georto's request.

Georto further states that PM Construction, Port City Design, and/or Eastern Land Survey performed certain work regarding the Property.

Georto further states that it performed due diligence regarding the suitability/profitability of the Property for a retail location for Georto's business. Such due diligence included investigation and information regarding the property size, property configuration, appearance, location, demographics, proximity, transportation, foot traffic, competition, financing, acquisition and construction costs, expenses, profitability, required equity, and related information. Such additional due diligence is reflected in Georto's email communications with KeyBank and Aaron's and in Georto's written submission to Aaron's (copies of which documents have been produced by Georto). In addition to the cost of Goldman Environmental Consultants' Phase II report, Georto incurred the value/opportunity cost of Mr. Hawkins' time with respect to the foregoing and the costs paid to PM Construction.

15Q. Please state the date on which Georto first received or obtained a copy of the Purchase and Sale Agreement contract between Gateman and Family Dollar Stores of Massachusetts, Inc. which was signed on or about April 26, 2002 and to which reference is made in Paragraph 14 of the Complaint.

15A. Georto received a copy of the Contract for Purchase and Sale of Real Estate between William Gateman, Trustee, 200 Union Street Realty Trust, and Family Dollar Stores of Massachusetts, Inc. by facsimile transmission from Gateman's counsel, Paul F.X. Yasi, Esq., to James Hawkins on July 7, 2003. See Plaintiffs' documents bates numbered P0454 – 0472.

Upon information and belief, the July 7, 2003 fax is the first time that Georto first received or obtained a copy of that document.

16Q. Please identify by exact name, nature of, date of and parties to each and every document which Georto claims forms any part of the Contract between it and Gateman for the purchase by it of the property in question.

16A. As is referenced in the Introduction and Definitions of the First Set of Interrogatories Propounded by the Defendant, William Gateman, a copy of the Contract is attached as Exhibit A to the Complaint. Georto further states that the document is entitled Contract for Purchase and Sale of Real Estate, is stated to be made and entered into as of June 18, 2003 by and between William Gateman, Trustee, 200 Union Street Realty Trust and Georto, Inc., and was amended as set forth in certain amendments extending the date in which to perform due diligence. See documents bates stamped P0484-0491. Georto further states that Gateman, pursuant to Section 8 of the Contract, provided and certified Goldman Environmental Consultants' Phase I Environmental Site Assessment dated May 29, 2002.

17Q. Please identify by date, persons present and substance of all conversations or communications by and between Georto and Scott Hungate of Family Dollar of Massachusetts, Inc. which in any way concerned the property which is the subject of the Contract and this law suit from 2001 to date.

17A. Mr. Hawkins does not recall ever speaking with Scott Hungate. Georto received an email (see document bates numbered P1307; also appears elsewhere in production of emails) dated December 19, 3003 that identified the sender's email address as "SHUNGATE@FAMILYDOLLAR.COM" and that forwarded other emails and an attached copy of the Goldman Environmental Consultants Phase I Assessment. Georto also received a fax

16

dated December 22, 2003 (see document bates numbered P0824-0874) which stated that it was sent from Scott Hungate.

      18Q.    For each expert witness you intend to call at trial, please state:

           a.    the name, address, occupation and business address of each such expert;

           b.    the subject matter on which each such expert is expected to testify;

           c.    the substance of the facts and opinions to which each such expert is expected to testify; and

           d.    a summary of the grounds for each such opinion of each such witness.

      18A.    Georto objects to the interrogatory on the grounds that the Court has set forth deadlines for disclosure of expert testimony, the interrogatory seeks information prior to such deadlines, and discovery has not been completed. Subject to such objections, Georto states that it expects to offer at trial the testimony (both fact and opinion) of Chad B. Michaud, P.E., S.W. Cole Engineering, Inc., 350 Route 108, Suite 208, Somersworth, New Hampshire, (603) 692-0088. The subject matter, substance of the facts and opinions, and summary of grounds of his anticipated testimony is set forth in the Geotechnical Engineering Evaluation dated May 13, 2004 (see document bates numbered P0876-892). Georto may also offer the testimony (both fact and opinion) of the experts identified in the Goldman Environmental Consultants reports (see documents bates numbered P0505-0679, P0691-0733, P0741-0753, P0797-0823, P0824-874) with respect to the subject matter, facts, and opinions referenced therein. The qualifications are set forth in the document bates numbered P0741-0753. Georto may also offer the testimony (both fact and opinion) of Kristina Duran and/or James J. Marotta, MAI, Marotta Valuation Advisors, Inc., 47A River Street, Suite 200A, Wellesley, Massachusetts with respect to the subject matter, facts, and opinions referenced in the report dated January 13, 2004 (see document bates numbered P0902-0984). The qualifications of such experts are set forth in that

report. Georto may also offer the testimony (both fact and opinion) of experts of PM Construction Co., 19, Industrial Park Road, Saco, Maine, (207) 282-7682.

Georto reserves its right to supplement this response, including the identification of the subject matter, substance of facts and opinions, and the summary of grounds of anticipated testimony, as well the identification of additional experts.

19Q. Please identify, by name, address and telephone number, each witness which Georto intends to offer at trial and for each please state the subject of and substance of their anticipated testimony.

19A. Georto objects to the interrogatory on the grounds that the interrogatory seeks information prior to the Court deadlines for such information and discovery has not been completed. Subject to such objections, Georto states that it anticipates offering at trial the testimony of witnesses identified in Georto's initial disclosures (general subject matter, addresses, and phone numbers set forth therein) and of additional individuals learned through discovery. Among other individuals, Georto at this time anticipates that it may offer the testimony of James Hawkins, employee(s) of PM Construction (including Phillip Morin, Steve McIntyre, and Richard Pearl), Kent Parks (formerly of Aaron's), Dave Kraft and Drew Yesso (or other employee(s) of KeyBank), Chad Michaud, P.E., employee(s) of Goldman Environmental Consulting (including Heather A. Boyd, Samuel W. Butcher, LSP, Lauren M. Maigret, Parrish C. Smolcha), employee(s) of Thomas Mattuchio Construction, Inc., employee(s) of Family Dollar Stores of Massachusetts, Inc., employee(s) of Roberts Demolition (including Robert B. Stalker, Jr., and Kevin Doherty), employee(s) of Scott Weatherbee Contractors, Jackson Gateman, and Gateman.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 13 DAY OF SEPTEMBER, 2005.

Georto, Inc.

By: _James Hawkins_
Its: _President_

As to Objections:

_____
Dale C. Kerester, BBO#548385
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110-1800
(617) 951-0800

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___ DAY OF SEPTEMBER, 2005.

```
                                    _____
                                    Georto, Inc.

                                    By:   _____
                                    Its:  _____
```

As to Objections:

_(signature)_
_____
Dale C. Kerester, BBO#548385
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA 02110-1800
(617) 951-0800

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on _(handwritten)_

19