| STATE OF MASSACHUSETTS | CONTRACT FOR PURCHASE AND |
| COUNTY OF ESSEX | SALE OF REAL ESTATE |

THIS AGREEMENT is made and entered into this 16th day of June, 2003, (the "Contract") by and between William Gateman, Trustee, 200 Union Street Realty Trust, whose address is 93 Atlantic Avenue, Swampscott, MA 01907, hereinafter referred to as "Seller," and Georto, Inc., a Florida corporation, whose address is 3965 Leafy Way, Coconut Grove, FL 33133, hereinafter referred to as "Purchaser".

### WITNESSETH

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Seller agrees to sell and convey to Purchaser, and Purchaser agrees to purchase from Seller, the real property situated in the City of Lynn, County of Essex, Commonwealth of Massachusetts, compromised by approximately 19,500 square feet (83' x232.5') located between Ellis Street and Union Street and being that property fronting approximately 83 feet on Union Street and approximately 80 feet on Ellis Street, together with all easements, rights and appurtenances thereunto belonging and all improvements located thereon, (hereinafter referred to as the "property"), subject to the terms and conditions set forth herein. A legal description will be provided by Seller, and will accurately describe the property.

1. PURCHASE PRICE. Purchaser shall pay to Seller a total purchase price, subject to adjustment as set forth herein (hereinafter referred to as the "purchase price") of THREE HUNDRED THOUSAND AND NO/100 DOLLARS ($300,000.00) to be paid as follows:

    (a) The sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00) ("the binder") to be paid by Purchaser within ten business days after Purchaser's receipt of a fully executed counterpart of this Contract, into escrow to Seller's attorney, Paul F.X. Yasi, Yasi & Yasi, PC, Two Salem Green, Salem, MA 01970.

    (b) The sum of TWO HUNDRED NINETY-FIVE THOUSAND AND NO/100 DOLLARS ($295,000.00) to be paid at the closing hereon.

2. **WARRANTIES.** At the closing, Seller shall execute and deliver to Purchaser a warranty deed sufficient to convey to Purchaser indefeasible, fee simple marketable title to the property, insurable as to fee and marketability at regular rates by a Title Insurance Corporation without exception.

Seller also hereby warrants and represents, and shall as of the closing date warrant and represent, that (a) there are no contracts undertaken by Seller which shall survive the closing and become the responsibility of Purchaser; (b) the property is not subject to any taxes other than ad valorem real property taxes for the current year, and levied special assessments; (c) Seller owns marketable, fee simple title to the property and there are no unrecorded leases, uses or easements affecting the property; (d) no tenant or other person (other than Purchaser) has made a claim or given notice of such for damages because of any event upon the property; (e) the property is not subject to any condemnation, eminent domain or similar proceedings and to the best of Seller's knowledge and belief, there is no planned condemnation which could affect the property; and (f) there are no hazardous materials as defined by state, federal, or local law, or non-acceptable environmental conditions on the property. Purchaser shall not be obligated to close the sale if it learns prior to closing that any representation or warranty of Seller has been breached. All of Seller's warranties and representations shall survive the closing.

2-A. Seller shall advise purchaser within ten (10) days from execution of any notices of rezoning, assessments or proposed special assessments or building violation or noncompliance.

3. **CLOSING DATE.** Seller shall use diligent efforts to timely satisfy all conditions in this Contract and, subject to all conditions in this Contract being satisfied, this transaction shall be closed thirty days after Purchaser notifies Seller that all conditions and contingencies in this Contract have been satisfied (or sooner if agreeable to Purchaser) and possession shall be given as of the date of closing.

4. **REAL ESTATE TAXES.** Real estate ad valorem taxes on the property for the year in which the closing occurs shall be prorated as of the date of closing.

5. **CLOSING COSTS.** Seller agrees to pay expenses for the drafting of a general warranty deed free and clear of all liens and encumbrances with proper transfer and revenue/excise tax stamps affixed thereto along with all other documents required by Purchaser's title insurance company. Seller shall also cooperate with Purchaser in obtaining any lot split, subdivision, replatting and rezoning approvals which may be required. Seller agrees to provide Purchaser a current title commitment for the property within ten (10) days of execution. Any lot split, subdivision, or replat expense shall be borne by Seller. Purchaser agrees to pay the expenses of Purchaser's title examination, and title insurance. Except as provided above, Seller and Purchaser shall pay all other closing costs in accordance with local custom.

6. **REAL ESTATE COMMISSIONS.** None. Both parties warrant that they have not contacted a broker with regard to this trust or real estate.

7. **RISK OF DAMAGE.** Seller shall bear the risk of all damage to the property prior to closing, ordinary wear and tear excepted. In the event of any material damage to the property prior to closing, Purchaser, at its option, by written notice, may: (a) declare this Contract null and void, in which event Purchaser and Seller shall be discharged from all liability under this Contract, and the binder shall be returned to Purchaser; or (b) complete the purchase of said property with the purchase price reduced by an amount equal to the loss suffered.

8. **CONTINGENCIES.** The obligations of Purchaser hereunder are contingent upon (a) the property being served by adequate electricity, city water and sewage, telephone and any other utilities which Purchaser may require for its intended use of the property as a commercial retail establishment, and all such utilities being available in a public street or alley adjoining the property; (b) the results of (i) engineering, drainage, surface and subsurface soil investigations and tests of the property, (ii) ALTA survey of the property, (iii) investigations of the title to the property, (iv) attempts to secure zoning classifications and/or variances from zoning and/or other

regulatory requirements, (v) environmental surveys of the property, including a phase 1 environmental assessment, to be furnished and certified to Purchaser by Seller within 30 days of execution hereof, and (vi) satisfactory access and easements, if necessary (all of which actions described in clauses (i) through (vi) above as hereinafter collectively referred to as "Purchaser's due diligence"), being satisfactory to Purchaser in all respects; (c) there being no restrictions, encumbrances, easements, etc., on the property other than those imposed by governmental authorities and zoning ordinances which will not interfere with the commercial use of the property by Purchaser, and title is acceptable to Purchaser; (d) Purchaser being able to secure all building and zoning permits and any other necessary authority and approval from the appropriate authorities (including, but not limited to, permits for driveways, curb cuts, median breaks and standard signage) for the construction and operation of at least one commercial space in accordance with Purchaser's standard plans and specifications for a typical furniture, electronics, appliance, computer and jewelry lease to own facility; (e) the Buyer hereby acknowledges the restriction set forth on Exhibit A – Exclusive Use Protection attached hereto and incorporated here by reference; (f) the Purchaser's obtaining adequate financing for this purchase; (g) the Purchaser's obtaining approval of Aaron Rents, the franchisor of the business that Purchaser intends to put at this location, for this project. If on the scheduled closing date one or more of the contingencies described above has not been satisfied, Purchaser shall have the right, at its option, (i) to extend the time for closing until all such contingencies have been satisfied, or (ii) to cancel this Contract and recover all binders and other payments or deposits theretofore paid by Purchaser to Seller, and thereupon Purchaser and Seller shall be released of any obligation under this Contract, or (iii) to close on the purchase of the property independent of the satisfaction of such contingencies. At any time after the date of this Contract, Purchaser and its authorized representatives shall have, and are hereby given, the right and privilege to enter in and upon the property for any legitimate purpose, including the performance of Purchaser's due diligence. Purchaser shall have a ninety (90) day period in which to perform Purchaser's due diligence. The parties agree to close no later than thirty (30) days from the expiration of the due-diligence period.



9.   NOTICES. Any notice called for to be given by the Purchaser to the Seller or by the Seller to the Purchaser will be considered delivered to the Seller or Purchaser as of the date and time when the same is deposited in the United States mail, Certified Mail, Return Receipt Requested, postage prepaid, addressed to the party to receive such notice at its address provided above or at such other address as such party may have provided in accordance with this paragraph.

10.   BINDING EFFECT. This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, heirs, devisees, executors, representatives and assigns. Upon written notification of the designation of a nominee or of an assignment of the Purchaser's rights hereunder, the Seller agrees to recognize such nominee or assignee as the holder of all of the Purchaser's rights hereunder. The word "Purchaser" as used in this Contract shall include any such nominee or assignee of the Purchaser's rights.

11.   ENTIRE AGREEMENT. This Contract contains the final and entire agreement between the parties hereto and all prior or contemporaneous oral or written statements or agreements are merged herein. The paragraph headings in this Contract have been inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof. This Contract may only be amended b a written agreement signed by both Seller and Purchaser. No oral changes shall have any force or effect.

IN WITNESS WHEREOF, the parties have executed this Contract the day and year first above written.

WITNESS: _____

SELLER: _____ 6/18/03
WILLIAM GATEMAN, TRUSTEE
200 Union Street Realty Trust

WITNESS: _____

PURCHASER:
GEORTO, INC.
By: _____ 6/1/03
JAMES HAWKINS, PRESIDENT

**EXHIBIT A – EXCLUSIVE USE PROTECTION**

Buyer is aware of the following restriction placed on this property, which applies to the parcel being transferred to Buyer.

Seller agrees that Seller and any entity controlled by Seller or any partner or principal of Seller shall not lease (or permit the leasing or subleasing of) or sell any space on other property owned or controlled by Seller or any partner or principal of Seller within one thousand feet of the property to any discount store operated by or under the name of McCrory's, Fred's, Bill's Dollar, Dollar Tree, Wal-Mart, K-Mart, Ames, Duckwall-Alco, Greenbacks, Pamida, Value City, Dolgencorp or Dollar General, Bonus Dollar Stores, or any entity controlled by, affiliated with or related to any of them, or any store operated by Variety Wholesalers including but not limited to Maxway, Roses, Super 10, ValuMart, Pope's and Bargaintown. This provision is not intended to prohibit Seller from leasing or selling space to a drugstore, toy store, hobby store, sporting goods store, card and gift store, hardware store, home improvement store, auto supply store or any other store selling a single category of merchandise even though the category may be a broad one such as toys or hardware.

EXHIBIT B – EXCLUSIVE USE PROTECTION
CONTRACT DATE: _____
LOCATION: _____
SELLER: _W__   PURCHASER: _____