UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORTO, INC., <br>     Plaintiff, <br><br> v. <br><br> WILLIAM GATEMAN, INDIVIDUALLY and as TRUSTEE OF 200 UNION STREET REALTY TRUST, <br>     Defendant and <br>     Third Party Plaintiff, <br><br> v. <br><br> ROBERTS CORPORATION, <br>     Third Party <br>     Defendant. | CIVIL ACTION NO. 04-11730 NG |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff Georto, Inc. ("Georto") submits this memorandum and the Affidavit of Dale Kerester ("Kerester Affidavit") in support of its motion to compel Defendant William Gateman, Individually and as Trustee of 200 Union Street Realty Trust ("Gateman"), to produce the following documents in response to Georto's First Request for Production of Documents (the "Document Requests"):

1. **schedule(s) of beneficial interests**, including any amendments, with respect to the 200 Union Street Realty Trust (a nominee trust that sold the subject property to Georto and whose declaration of trust provides that the trustee shall act at the direction of the beneficiaries) [responsive to Document Requests nos. 1, 2];

2. **documents regarding any fill** delivered to and used at the subject property, specifically including documents identifying the source and type of any fill used [responsive to Georto's requests numbered 15, 16, among others];

3. **invoices and cancelled checks** concerning services rendered in connection with the demolition of the building at the subject property (specifically including demolition, any removal of demolition debris / solid waste from the

      property, and filling and grading activities) [responsive to Document Requests nos. 11, 13 - 17, 26, 29, 35, 37, 39, among others];

4. **telephone bills** reflecting the dates and times of communications between Gateman and any of Georto, Roberts, Goldman Environmental Consultants, Inc., Envirotest laboratories, and Clayton Collins [responsive to request numbered 21]

5. **documents concerning distributions** from the 200 Union Street Realty Trust after August, 2001 (the date of the fire), including but not limited to bank account and brokerage statements, checks, accounting records, and disbursement/distribution correspondence, and specifically including documents concerning distributions made after the filing of the Complaint in this action [responsive to Document Requests no. 2, among others];

6. any other responsive documents not yet produced, including but not limited to **Gateman's emails** [responsive to Georto's requests numbered 21, 40, among others].

Georto also seeks to compel Gateman to produce a privilege to the extent that any documents have been withheld from production on the grounds of attorney client privilege, the work product doctrine, or any other privilege.

## BACKGROUND

Factual Allegations of Complaint

Georto alleges in its Complaint as follows:

In 2001, Gateman owned certain real estate located in Lynn, Massachusetts that included the Property. In August 2001, a five story brick building located on that real estate was damaged by fire. The building was torn down between October 2001 and April 2002.

On or about June 18, 2003, Georto entered into a Contract for the Sale of Real Estate (the "Contract") with Gateman to buy the Property for $300,000. As Gateman knew, Georto intended to use the Property for the construction of a new commercial building as a retail store. Pursuant to the Contract, Gateman warranted and

2

represented to Georto that "there are no hazardous materials as defined by state, federal, or local law, or <u>non-acceptable environmental conditions</u> on the property." (emphasis added)  Gateman's warranties survived the closing.  Pursuant to his obligations under the Contract, and as part of the due diligence regarding the Property, Gateman, after the execution of the Contract and prior to the closing, provided Georto with a Phrase I Environmental Site Assessment written report prepared by Goldman Environmental Consultants, Inc. (the "Assessment") and dated May 29, 2002.  The Assessment set forth numerous material representations regarding the Property, specifically including representations made by Gateman that <u>all of the demolition debris had been or would be removed from the property and replaced with fill dirt</u>.  At Gateman's request, Goldman Environmental Consultants issued a reliance letter to Georto acknowledging that Georto was relying upon the information contained in the Assessment for completion of due diligence activities and financing and stating that Georto could rely upon such information as if the information had been prepared for Georto.  Gateman, by his counsel, also furnished Georto on July 7, 2003 (after execution of the Contract and prior to the closing) with a copy of an additional document warranting and representing that Gateman had completed the removal of the demolition debris from the Property.  In reliance on those representations and warranties, Georto closed on the Property on February 19, 2004 by paying the balance of the $300,000 purchase price to Gateman.

   Upon commencement of the excavation for the construction of the retail building on the Property in early April, 2004, however, Georto's contractor discovered extensive amounts of demolition debris and solid waste (consisting of wood timbers,

wood, charred wood, brick, concrete, metal, trash, and other solid waste materials) concealed below grade on the Property.  The evidence indicated that Gateman, contrary to his warranties and representations and in violation of the Solid Waste regulations of the Massachusetts Department of Environmental Protection and corresponding statute, had caused the demolition debris and solid waste to be deliberately dumped on the Property and concealed by varying depths of fill.  Georto seeks recovery of the costs it incurred to remove the demolition debris and solid waste and to replace it with fill.

<u>Gateman's Admissions in Answers to Interrogatories</u>

Pursuant to his Further Answers to Georto's Interrogatories, which Gateman served only after Georto moved to compel answers to interrogatories, Gateman admits that he had moved demolition debris onto that portion of the property later sold to Georto and that such debris had not been removed from the property prior to the sale to Georto.  More specifically, while Gateman had denied in his Answer to the Complaint the allegation that he had dumped the demolition and solid waste debris on the property (Complaint at ¶ 20;  Answer ¶ 20), Gateman admitted in his further answers to Georto's interrogatories that he had in fact moved brick, concrete, and what he characterized as "inconsequential amounts of miscellaneous items"[1] to that

---

[1] Georto, through the testimony of both fact and expert witnesses (including a geotechnical engineer who visited the site and documented the discovered/observed debris prior to its removal by Georto, as well as a solid waste expert) and through other evidence, expects to prove at trial that Gateman dumped <u>extensive</u> amounts of demolition debris and solid waste (consisting of wood timbers, wood, charred wood, brick, concrete, metal, trash, and other solid waste materials) throughout the property and then concealed such solid waste below grade by covering such waste with fill, all in breach of his warranty, in contravention of his express representations, and in violation of applicable Solid Waste Regulations and Statutes.

portion of the property later sold to Georto, that such materials were not removed from the property and disposed, and that leaving such materials at the site thereby lowered Gateman's demolition and disposal costs.  See attachment to Gateman's Opposition and Response to Plaintiff's Motion to Compel Answers to Interrogatories, Docket No. 18, at pp. 3 - 6.

## ARGUMENT

Georto served its First Request for Production of Documents (the "Document Requests") on Gateman on or about June 24, 2005.  Gateman served his response to the Requests on August 23, 2005, a copy of which is attached hereto as Exhibit "A".  Kerester Affidavit at ¶ 3.  With the limited exception of his response to request number 46 (regarding documents relied upon by testifying experts), Gateman did not object to any of the Document Requests.  Gateman also did not serve any privilege log in connection with such response.  Kerester Affidavit at ¶ 5.

Among other requests, Georto sought the production of schedule(s) of beneficial interests in the 200 Union Street Realty Trust (a nominee trust that sold the property to Georto, the declaration of trust for which states that the trustee shall act at the direction of the holder of the beneficial interests), documents concerning any fill used at the property, invoices, cancelled checks, and similar documents concerning the demolition and related services at the property, telephone bills or other records reflecting the dates and times of communications between Gateman and certain specified parties, and documents concerning distributions made by Gateman as Trustee since the date of the fire at the property (August, 2001).  See Document Requests nos. 1, 2, 11, 13 - 17, 21, 26, 29, 35, 37, 39, and 40.   While Gateman

produced certain documents in response to the Document Requests, he, with limited exceptions, did not produce any of the foregoing documents. Kerester Affidavit at ¶ 4.

Georto previously refrained from filing a motion to compel production because Gateman did not object to producing such documents and Gateman's counsel repeatedly promised to produce such documents (including promises made during and after the deposition of William Gateman on August 30, at which deposition Gateman testified about such documents and Georto's counsel confirmed that such documents had not yet been produced).[2] In fact, Gateman's counsel confirmed such promises at the status conference held with the Court on October 17, 2005 and on numerous dates thereafter. Kerester Affidavit at ¶¶ 6, 9.

Gateman's counsel has repeatedly acknowledged that Gateman is required to produce the schedule(s) of beneficial interests in 200 Union Street Realty Trust but has stated that he has not yet received such documents from his client. Kerester Affidavit at ¶ 6 and at Exhibit 1 (Gateman Depo.) at pp. 49-50. It is expected that such documents will identify the individual(s) who, as holders of the beneficial interest in the nominee trust, were entitled to direct Gateman's actions as trustee of the nominee trust and who, given the nature of a nominee trust, would also be liable for Gateman's conduct. See Kerester Affidavit at Exhibit 2. When expressly questioned at his deposition, Gateman stated, incredibly, that he didn't know who the beneficiaries of the trust are. Kerester Affidavit at Exhibit 1 (Gateman Depo.) at pp. 182-183. Thus, the schedule(s) of beneficial interests and similar documents reflecting ownership of

---

[2] Georto advised the Court at the status conference on October 17, 2005 that it expected to file a motion to amend the Complaint to add claims against the holder of the

the beneficial interests are the only means by which Georto can obtain such information.[3]

In connection with Georto's examination of Gateman at his deposition on August 30 regarding certain "free" fill Gateman said he used at the property, Gateman's counsel stated that he recalled seeing documents provided to him by his client regarding the source and type of fill. Gateman's counsel stated that he would produce such documents. Kerester Affidavit at ¶ 6 and at Exhibit 1 (Gateman Depo. Transcript.) at pp 165-168.

When questioned about his response to Georto's Document Requests, Gateman testified at his deposition that he had <u>not</u> looked for any emails regarding the Property, telephone bills (which would reflect dates and times of communications with specific identified parties), or cancelled checks (which, along with any account statements with respect to cash payments, checks would reflect payment dates and amounts for demolition and related services rendered at the property, including but not limited to payments to Turner Demolition, Regional Industrial Services Corporation, Testa, Scott Wetherbee / Wetherbee Contracting, Roberts Demolition, Red Baron Trucking, and Loveland Trucking). Kerester Affidavit at Exhibit 1 (Gateman Depo.) at pp. 39-42, 92-94. (Gateman also stated in response to a number of the document

---

beneficial interests upon receipt of the promised documents identifying that owner(s). Kerester Affidavit at ¶ 9.

[3] Georto previously served two deposition subpoenas duces tecum to Jackson Gateman (for a deposition to be taken on September 26 and then on November 30, 2005), but Gateman's counsel stated that Jackson Gateman has asserted certain health issues which he believes should prevent him from testifying. Jackson Gateman has not, however, served any objection to the subpoena. Georto, by separate motion, will seek to enforce such subpoena in the event that Jackson Gateman continues to attempt to avoid testifying. Kerester Affidavit at ¶ 11.

requests that he was conducting a further search.)  Not surprisingly given his statements, Gateman's document production omitted such documents.  With limited exceptions, Gateman also failed to produce invoices issued to him by the contractors for site work at the property.[4]  Kerester Affidavit at ¶ 4 and at Exhibit 1 at pp 165.  These documents presumably reflect the specific work for which such contractors were engaged, dates on which specific work was performed (including information about work to dump debris and conceal with fill material) as well as any notations made by Gateman regarding such work or arrangements.

Gateman testified at his deposition that, in addition to certain other proceeds that he received in connection with the subject property, he (as trustee) had received $785,000 in proceeds from the sale of the property ($375,000 from the sale of a parcel to Family Dollar in 2002, $300,000 from the sale of a parcel to Georto in February, 2004 , and $110,000 from a subsequent sale of a smaller parcel to another party) and

---

[4] While Gateman produced invoices from SCS Environmental Services, Inc. for asbestos abatement work and four slips from Roberts Demolition regarding extras for certain equipment, he did not produce any invoices from Roberts Demolition for the services rendered by Roberts Demolition, any invoices from Wetherbee Contracting / Scott Wetherbee for site grading and related services, or any invoices from Turner Demolition, Testa, and Regional Industrial Services Corporation for demolition and related services at the site.   Gateman also did not produce documents evidencing payments for such services, such as cancelled checks or account statements reflecting cash payments. (Discovery has demonstrated that Gateman made significant cash payments to certain of his contractors, including Roberts Demolition and Scott Wetherbee.)   Kerester Affidavit at ¶4.  While Roberts Demolition produced certain invoices and related documents (such as certain checks) in response to Georto's requests for production, Georto is entitled to receive Gateman's documents (which may, for example, reflect notations made by Gateman regarding a reduction in price in exchange for leaving debris on site and would include documents regarding the cash payments he made to Roberts Demolition representative).

that he had distributed out of the Trust all but $200,000 of those proceeds[5], <u>including a distribution of $200,000 he caused to be made after the filing of the present Complaint to purchase stock in the name of a family friend but for the benefit of Gateman or his father</u>.  Kerester Affidavit at Exhibit 1 (Gateman Depo.) at pp. 60-68.  Gateman also testified that he made distributions from the trust to "other businesses that were purchased" and in which he "may have an interest", but he was unable to recall to whom such distributions were made.  Kerester Affidavit at Exhibit 1 at pp. 62-63.  Given the timing and circumstances of such distributions and purchases, it is reasonable to conclude that Gateman sought to shield such assets from potential recovery by Georto.

Notwithstanding Georto's repeated requests (made during the time period from August 30, 2005 through early January, 2006) that Gateman produce the additional documents so as to avoid the necessity of Georto filing a motion to compel, Gateman has failed to produce any such additional documents.

## CONCLUSION

Georto therefore requests that the Court order Gateman to produce the documents identified in items 1 – 6 above, as well as a privilege log, within ten days.  Given Gateman's failure to produce such documents and his testimony that he had not even looked for various categories of responsive documents, Georto requests

---

[5] As to the remaining $200,000, Gateman testified that such funds had been retained by the Trust and were held in a bank account on which "my name is on it someplace."  Gateman alternatively testified that the Trust currently did not hold any assets and that he was uncertain as to whether the account was held in the name of the trust or in his name individually.  Kerester Affidavit at Exhibit 1 (Gateman Depo.) at pp. 47, 63-64.  Georto has been unable to obtain any agreement from Gateman to maintain such funds

pursuant to item 6 that the Court order Gateman to locate and produce all responsive documents in accordance with the requirements of Fed. R. Civ. P. 26 and 34.

## ADDITIONAL LOCAL RULE 37.1 INFORMATION

Counsel for Georto (Dale Kerester) and counsel for William Gateman (James Robbins) conferred regarding the subject matter of Georto's motion to compel production of documents on multiple occasions, including but not limited to August 30, 2005 (in person meeting at Plaintiff's offices during the deposition of William Gateman), September 28, 2005 (by telephone conference lasing approximately five minutes by counsel at their respective offices), September 30, 2005 (in person meeting at Plaintiff's offices at the conclusion of a deposition of a representative of Third Party Defendant, lasting less than five minutes), October 17, 2005 (at and prior to the Court status conference), at various depositions in November and December, 2005, and most recently pursuant to telephone conferences on January 13 and January 20, 2006. While Gateman's counsel had agreed to produce the additional documents, such documents still have not been produced.

                **PLAINTIFF GEORTO, INC.**
                By its attorney,

                /s/ Dale Kerester
                Dale C. Kerester, BBO#548385
                LYNCH, BREWER, HOFFMAN & FINK, LLP
                101 Federal Street, 22nd Floor
                Boston, MA  02110-1800
                (617) 951-0800

Dated:  January 24, 2006

---

in escrow pending resolution of this litigation and accordingly expects to move for a trustee process attachment of such funds.  Kerester Affidavit at ¶ 13.

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 24, 2006.

        /s/ Dale Kerester
        Dale Kerester