UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2006 APR 21  P 3: 44

CIVIL ACTION NO. 04-11730-NG

U.S. DISTRICT COURT
DISTRICT OF MASS.

GEORTO, INC.,
    Plaintiff,

v.

WILLIAM GATEMAN, INDIVIDUALLY
and as TRUSTEE OF 200 UNION
STREET REALTY TRUST

    Defendant,
    Third Party Plaintiff, and
    Third Party Defendant-in-
    Counterclaim

ROBERTS CORPORATION

    Third Party Defendant,
    and Third Party Plaintiff-in-
    Counterclaim

## THIRD PARTY PLAINTIFF WILLIAM GATEMAN'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSTION TO THIRD PARTY DEFENDANT ROBERTS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Third Party Plaintiff, William Gateman ("Gateman"), pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 of this Court, submits the following memorandum of law in support of his Opposition to Third Party Defendant Roberts Corporation's ("Roberts") Motion for Summary Judgment.

## INTRODUCTION

This action arises out of a conveyance of real property from Gateman to the Plaintiff Georto, Inc. ("Georto"). Georto filed a Complaint with this Court, on August 5, 2005, alleging, inter alia, that the real property located between Ellis Street and Union Street in Lynn, Massachusetts ("the Property"), and upon commencement of construction of a new commercial building, it discovered demolition debris and solid waste that had been concealed below grade in contravention of Gateman's express warranty and representations contained in a June, 2003 purchase and sale agreement. Georto further alleged that in Spring 2004 it was required to excavate, remove, and dispose of 167 truckloads of the demolition debris and waste and to replace it with acceptable fill in order to construct the building on the Property.

Gateman filed his Answer and Third Party Complaint on August 31, 2005, alleging breach of contract and that Roberts was obliged to remove demolition debris from the Property, and that Roberts is liable to Gateman in the event that Gateman is held liable to Georto, and is further obligated to defend and indemnify Gateman against Georto's claims.

Roberts filed its Answer to Third Party Complaint, Counterclaim Against Third Party Plaintiff, and Jury Demand on December 20, 2004 and filed its Amended Answer to Third Party Complaint, Counterclaim Against Third Party Plaintiff, and Jury Demand on December 28, 2004.

The facts are in dispute as to whether or not Roberts fully and completely performed its contractual obligations in 2002. The facts are also in dispute as to whether or not Roberts indemnified Gateman.

## STATEMENT OF FACTS

1. Gateman, an individual residing in Massachusetts, is the trustee of 200 Union Street Realty Trust. Complaint at ¶ 2 (Docket No. 1). The Trust owned the Property at issue. Complaint at ¶ 5.

2. Prior to August of 2001, a large commercial building was situated on the Property until it was destroyed by fire. *Id.* at 6. Thereafter, Gateman contracted with Roberts, a New Hampshire corporation, for the demolition of the damaged structure and removal of the debris. Roberts-Gateman Contract (Attached as Exhibit 1 to Concise Statement of Facts).

3. Gateman partitioned the Property and sold one portion of the lot to Family Dollar Stores of Massachusetts, Inc. ("Family Dollar") and one portion to Georto. Family Dollar Contract for Purchase and Sale of Real Estate (Attached as Exhibit 2); and Georto Contract for Purchase and Sale of Real Estate (Attached as Exhibit 3).

4. The Trust first acquired the Property in 1996 and held it as an investment prior to dividing it into separate lots. William Gateman Depo. at 51 (Attached as Exhibit 4).

5. Several juveniles set the building on fire in August of 2001, which resulted in its total destruction. *Id.* at 79-80.

6. Gateman entered into negotiations with various demolition companies to take the remaining structure down and remove the remaining debris. *Id.* at 75-80.

7.     In an effort to mitigate the cost of demolition, Gateman sought to have the building's brick and concrete remain on the Property to be used as fill. *Id.* at 79-82.

8.     Roberts submitted two different bids, one which included the cost of removing the brick and concrete, and the other estimating only the cost of removing the debris, while leaving the brick and concrete in the former basement. Roberts-Gateman Contract.

9.     On or about March 12, 2002, Roberts entered into a written contract with Gateman, whereby Roberts agreed, among other things, to demolish the existing building, remove the demolition debris from the site, cover the site with fill and rough grade the site, and remove the brick and concrete. *Id.* Kevin Doherty Depo. at 35-42 (Attached as Exhibit 5). Thus, the written contract reflected two estimates: $90,000.00 for completing the demolition and removing the debris; *or* $90,000.00 plus an additional $25,000.00 for removing the brick and concrete. See Roberts-Gateman Contract.

10.     Roberts commenced the demolition work the day after signing the contract with Gateman and worked on the site for the next several weeks. Doherty Depo. at 59-66.

11.     Roberts removed over 50 truckloads of debris, leaving behind brick and concrete on the site to use as fill, per the permission obtained by Gateman from the City of Lynn's Building Inspector that the brick and concrete

|     | |
| --- | --- |
|     | could be used as fill. As a result, only the $90,000.00 provision of the contract between Gateman and Roberts applied. Roberts Daily Tracking Reports (Attached as Exhibit 6); Gateman Depo. at 79-82. Roberts-Gateman Contract. |
| 12. | In completing its work and per the contract, Roberts warranted that all demolition debris, other than the aforementioned bricks and concrete, had been removed from the site. Roberts-Gateman Contract. Gateman Depo. at 231. |
| 13. | Gateman relied on Roberts' contractual obligations and representations from Roberts' management that the work had been fully performed and that Roberts had not concealed any debris. Gateman Depo. at 231-34. |
| 14. | Gateman discovered, after Roberts had represented that the work had been completed, that Roberts had failed to remove the debris that had constituted an access ramp to the site. Doherty depo. at 91-93; 117. |
| 15. | Roberts then sent a screener, a loader and several trucks to screen the material from the ramp, but not removing the entire ramp nor all the debris. Doherty Depo. at 117-118; Stalker depo. at 46-47 (Attached as Exhibit 7). |
| 16. | Gateman was seemingly satisfied with Roberts work because Roberts had performed removal of demolition debris in a seemingly competent fashion for an adjoining parcel of land owned by Gateman and purchased and developed by a separate buyer. Gateman Depo. at 150-153. Gateman |

|     | therefore relied on Roberts' contractual and personal representations that all necessary demolition debris would be removed on the adjoining parcel purchased by Georto. *Id.* |
|-----|---|
| 17. | On or about June 18, 2003, Gateman entered into a contract for the purchase and sale of the adjoining site to Georto. *Id.* at 186. |
| 18. | Gateman had no knowledge at any time of any problems with the site until informed on or about April, 2004 by Georto that Georto was prohibited from going forward because the site allegedly contained solid waste. *Id.* at 186-189. |

## ARGUMENT

**I.   Roberts Corporation Did Not Perform Under the Terms of the Contract, Breached its Contractual Obligations to Gateman, and Failed to Properly Remove Debris from the Site, Resulting in Gateman's Purchaser of the Site Filing Suit Against Gateman.**

Summary Judgment is proper only in instances where there are no genuine issues of material fact. Fed.R.Civ.P.56. More specifically, summary judgment is appropriate when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995). To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position. Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990).

As a prerequisite to summary judgment, a moving party must demonstrate an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325

(1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 256 (1986).

In this case, summary judgment should not issue on either claim against Roberts because there are substantial issues of material fact regarding whether Roberts breached its contractual obligations to Gateman and whether Roberts is obligated to indemnify Gateman if Gateman is held liable to Georto.

A material breach of contract by one party excuses the other party from performance as a matter of law. Hastings Assocs. v. Local 369 Bldg. Fund, 42 Mass.App.Ct. 162, 171 (1997). Whether there is such a material breach is a question for the jury. Id. at 171.

Before an enforceable agreement arises, all [its] essential terms . . . must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." JRY Corp. v. LeRoux, 18 Mass.App.Ct. 153, 172. Courts determine parties' performance obligations from the contractual terms, which are derivatives of the parties' intent when bargaining. Cygan v. Megathlin, 326 Mass. 732, 733 (1951).

A material breach of an agreement occurs when there is a breach of "an essential and inducing feature of the contract." Prozinski v. Northeast Real Estate Services, 59 Mass.App.Ct. 599, 608 (2003). Whether a breach is material or immaterial normally is a question for the jury to decide. Lease-It, Inc. v. Massachusetts Port Authority, 33 Mass.App.Ct. 391, 396 (1992). The

existence of a material breach must be determined from the circumstances of each case. <u>Boston Housing Authority v. Hemingway</u>, 363 Mass. 184, 200 (1973).

In the case of Cygan v. Megathlin, 326 Mass. 732 (1951), the court said that a contract is not to be struck down because one of its material provisions is stated in broad and general terms if, when applied to the transaction and construed in the light of the attending circumstances, the meaning to be attributed to it can be interpreted with reasonable certainty so that the rights and obligations of the parties can be fixed and determined. *Id.* at 734.

The terms of the Roberts-Gateman contract were stated in broad yet unambiguous terms. The one page contract called for Roberts to "demolish existing building" and "remove demo debris off site." The clear intention of the contract was to have the building demolished and the debris removed from the site. The fact that Georto, the Purchaser, found debris on the site that prevented development and building on the site can only be attributed to Roberts, which had been hired for the express purpose of removing all of the debris.

When Roberts left the site, Gateman paid Roberts on the assumption and belief that Roberts had adequately removed all debris necessary to be removed from the site. Gateman expressly contracted with Roberts as Gateman had little to no experience with demolition debris and relied on Roberts' expertise and competence. Roberts had a duty under its contract with Gateman to perform the removal services in a satisfactory manner and it breached that duty in failing to properly dispose of all debris.

Contrary to Roberts' claim in its Motion for Summary Judgment, Gateman was "satisfied" with Roberts' performance initially only because Gateman had no personal knowledge or reason to believe that the Company with which he had contracted had not properly disposed of

the debris. It was only upon hearing from Georto that there was waste and unacceptable debris on the site that it had purchased that Gateman became aware that Roberts had not properly discharged its obligations under the contract.

Given that there are substantial questions of material fact concerning Roberts' performance under its contract with Gateman and whether it breached that contract with Gateman, this Court should deny Roberts' motion for summary judgment on the breach of contract claim.

> II. **Roberts is Liable for Indemnification Under the Gateman-Roberts Contract and Circumstances Support Indemnity by Operation of Law.**

Indemnity is the right of a party who has discharged the obligation of another party to reimbursement for that party. See generally 41 Am. Jur. 2d, Indemnity § 1; C.J.S., Indemnity § 2. Indemnity is available to a party pursuant to a contract, or by operation of law based on equitable principles designed to prevent unjust enrichment. See generally Restatement (third) of Torts: Apportionment Liab. § 22 (2000). Under Massachusetts law, a contract-based right to indemnification exists when there is a binding contract between indemnitor and indemnitee in which such right is expressed or from which it can be fairly implied. H.P. Hood & Sons, Inc. v. Ford Motor Co., 370 Mass. 69, 77 (1976). The intent of the parties controls interpretation of the contractual agreement as it allows for the rules of construction to give effect to the reasonable expectations of the parties. See Fall River Housing Auth. V. H.V. Collins Co., 414 Mass. 10, 13 (1992) (indemnity provisions to be construed fairly and reasonably to ascertain intent and effect purpose of same).

Contribution is also available in Massachusetts "where two or more persons become jointly liable in tort for the same injury to person or property . . ." and contribution is permitted between joint tortfeasors. G.L.c. 231B, 1(a); Hopper Feeds, Inc. v. Cincinnati Milacron, inc. 411 Mass. 273, 276 (1991). To obtain contribution, the potential contributor must be directly liable to the plaintiff. Liberty Mutual Ins. Co. v. Westerlind, 374 Mass. 524, 526 (1978).

Lacking an express indemnity provision, the Court may also recognize an indemnity implied by the circumstances when there are special factors surrounding the contractual relationship which indicate an intention by one party to indemnify another in a particular situation. Fall River Housing Auth., 414 Mass. at 14. Massachusetts courts have found an implied right to contractual indemnity in certain situations so that an equitable resolution may be reached. In Monadnock Display Fireworks, Inc. v. Andover, the Supreme Judicial Court held that a contractual agreement by a town to provide police protection at a fireworks display implied an agreement by the town to indemnify the fireworks company for damages paid to a spectator who came too near the display and was injured. 388 Mass. 153, 156 (1983). Something in the contract, or something special in the relationship between the parties, must be present in order to imply an obligation to indemnify against liability or personal injury. Damages must be fairly within the scope of foreseeability to permit inclusion under an implied right of indemnification. See Great Atlantic Pacific & Tea Company v. Yanofsky, 380 Mass. 326, 333 (1980).

Indemnification may also be implied under common law principles. Indemnification generally is not permitted between negligent parties. It is allowed, however, when a party is exposed to liability because of the negligence of another. See Rathbun v. Western Massachusetts Elec. Co., 395 Mass. 361, 364 (1985). The exposed party, usually only passively negligent itself,

is deemed to be constructively negligent and therefore vicariously or derivatively liable. *Id.* Common law indemnification seeks to shift the liability for damages onto the actively negligent party. See Rathbun, supra at 364.

The contract between Gateman and Roberts did not contain an express indemnity clause but clearly the intent of the parties was to contract for demolition services that would remove all necessary debris from the site in order to make the site suitable for sale and development. Gateman clearly relied on the expertise of Roberts to perform the demolition and removal of debris and Roberts just as clearly knew that reliance and those expectations existed and willingly accepted full payment under the terms of the contract to "remove all debris." Moreover, it is equally certain that the present suit brought by Georto against Gateman would not have issued were it not for the negligent removal of debris on the part of Roberts. If Gateman is liable to Georto, Roberts is therefore liable under an indemnification theory and contribute to any damages owed by Gateman.

The Gateman-Roberts contract gives evidence of intent by Roberts to indemnify Gateman in that it provided for the "removal of demo debris off site." Moreover, the discussions and relationship between Gateman and Roberts were such that indemnity can be fairly implied. The entire reason for engaging Roberts' services was to protect Gateman from any potential liability arising from claims by would-be buyers of the land that the site would be free of any demolition debris.

## CONCLUSION

For the above stated reasons, as well as those that shall be advanced at the time of hearing, summary judgment should be denied on all claims against Roberts Corporation asserted in the Third Party Complaint.

Respectfully submitted,
William Gateman,
Individually and as Trustee
By his Attorney,

*/s/ Mark P. McGrath*

_____
Mark P. McGrath, BBO #642913
9 West Broadway #214
Boston, MA 02127
(617) 271-9009
mpgrath@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was this day served upon all counsel of record by mailing a true and exact copy of same, postage paid, as the undersigned has not yet been assigned as a registered participant in the ECF system.

SIGNED under the pains and penalties of perjury.

*/s/ Mark P. McGrath*

Dated: April 21, 2006

_____
Mark P. McGrath