UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) <br> ) <br> GEORTO, INC., ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAM GATEMAN, INDIVIDUALLY ) <br> and as TRUSTEE OF 200 UNION ) <br> STREET REALTY TRUST ) <br> ) <br>     Defendant, ) <br>     Third Party Plaintiff, and ) <br>     Third Party Defendant-in- ) <br>     Counterclaim ) <br> ) <br> ROBERTS CORPORATION ) <br> ) <br>     Third Party Defendant, ) <br>     and Third Party Plaintiff-in- ) <br>     Counterclaim ) <br> _____) | CIVIL ACTION NO. 04-11730 NG |

**<u>DEFENDANT WILLIAM GATEMAN'S OPPOSTION TO PLAINTIFF'S MOTION FOR TRUSTEE PROCESS</u>**

Defendant, William Gateman ("Gateman"), pursuant to Fed. R. Civ. P. 64, Chapter 246 of the Massachusetts General Laws, and Mass. R. Civ. P. 4.2, hereby opposes Plaintiff Georto, Inc.'s ("Georto") Motion for Trustee Process. In support of his Opposition, Gateman submits its Memorandum in Support of Opposition to Motion for Trustee Process (referencing portions of deposition transcripts previously filed in this matter).

This action arises out of a conveyance of real property from Gateman to the Plaintiff Georto, Inc. ("Georto"). Georto filed a Complaint with this Court, on August 5, 2005, alleging, inter alia, that the real property located between Ellis Street and Union Street in Lynn, Massachusetts ("the Property"), and upon commencement of construction of a new commercial building, it discovered demolition debris and solid waste that had been concealed below grade in contravention of Gateman's express warranty and representations contained in a June, 2003 purchase and sale agreement. Georto further alleged that in Spring 2004 it was required to excavate, remove, and dispose of 167 truckloads of the demolition debris and waste and to replace it with acceptable fill in order to construct the building on the Property.

Gateman filed his Answer and Third Party Complaint on August 31, 2005, denying the allegations of Georto's Complaint and alleging breach of contract with Third Party Defendant Roberts Corporation, asserting that Roberts was obliged to remove demolition debris from the Property, and that Roberts is liable to Gateman in the event that Gateman is held liable to Georto, and is further obligated to defend and indemnify Gateman against Georto's claims.

There is little likelihood that Georto will recover judgment in an amount equal to or greater than the amount of trustee process. As further detailed in the attached memorandum, the evidence demonstrates the following:

1. Prior to August of 2001, a large commercial building was situated on the Property until it was destroyed by fire. Complaint at ¶ 6. Thereafter, Gateman contracted with Roberts, a New Hampshire corporation, for the demolition of the damaged structure and removal of the debris. Roberts-Gateman Contract.

2. Gateman partitioned the Property and sold one portion of the lot to Family Dollar Stores of Massachusetts, Inc. ("Family Dollar") and one portion to Georto. Family Dollar Contract for Purchase and Sale of Real Estate; and Georto Contract for Purchase and Sale of Real Estate.

3. Several juveniles set the building on fire in August of 2001, which resulted in its total destruction. Gateman Deposition at 79-80.

4. Gateman entered into negotiations with various demolition companies to take the remaining structure down and remove the remaining debris. *Id.* at 75-80.

5. In an effort to mitigate the cost of demolition, Gateman sought to have the building's brick and concrete remain on the Property to be used as fill. *Id.* at 79-82.

6. On or about March 12, 2002, Roberts entered into a written contract with Gateman, whereby Roberts agreed, among other things, to demolish the existing building, remove the demolition debris from the site, cover the site with fill and rough grade the site, and remove the brick and concrete. *Id.* Kevin Doherty Depo. at 35-42.

7. Roberts commenced the demolition work the day after signing the contract with Gateman and worked on the site for the next several weeks. Doherty Depo. at 59-66.

8. Roberts removed over 50 truckloads of debris, leaving behind brick and concrete on the site to use as fill, per the permission obtained from the City

of Lynn's Building Inspector that the brick and concrete could be used as fill. Gateman Depo. at 79-82. Roberts-Gateman Contract.

9. In completing its work and per the contract, Roberts warranted that all demolition debris, other than the aforementioned bricks and concrete, had been removed from the site. Roberts-Gateman Contract. Gateman Depo. at 231.

10. Gateman relied on Roberts' contractual obligations and representations from Roberts' management that the work had been fully performed and that Roberts had not concealed any debris. Gateman Depo. at 231-34.

11. Gateman discovered, after Roberts had represented that the work had been completed, that Roberts had failed to remove the debris that had constituted an access ramp to the site. Doherty depo. at 91-93; 117.

12. Roberts then sent a screener, a loader and several trucks to screen the material from the ramp, but not removing the entire ramp nor all the debris. Doherty Depo. at 117-118; Stalker depo. at 46-47 (Attached as Exhibit 7).

13. Gateman had every reason to believe that the Georto parcel was free of debris because Gateman had contracted with and relied upon Roberts's performing the removal of demolition debris in a seemingly competent fashion for an adjoining parcel of land owned by Gateman and purchased and developed by Family Dollar. Gateman Depo. at 150-153. Gateman therefore relied on Roberts' contractual and personal representations that

all necessary demolition debris would be removed on the adjoining parcel purchased by Georto. *Id.*

14. Gateman had no knowledge at any time of any problems with the site until informed on or about April, 2004 by Georto that Georto was prohibited from going forward because the site allegedly contained solid waste. *Id.* at 186-189.

15. Georto had the site and subsoil tested as part of its due diligence. Even after testing, at no point prior to April, 2004 did Georto raise any objection to the site or its fill. Georto-Gateman Contract.

16. When Georto finally did raise an objection, in April, 2004, Gateman had Robert Stalker of Roberts Corporation return to the site, and he indicated that there was nothing objectionable and, moreover, nothing further that Roberts would do. Gateman Depo. at 239-240.

17. Georto sent a letter to Gateman estimating the cost of cleaning the site because of allegedly unacceptable fill to be $150,000. Gateman submitted a cheaper alternative to Georto of approximately $85,000.00, which was rejected by Georto. Georto then commenced work with its contractor, in advance of the date given to Gateman by which the alleged problems had to be cured, and was grossly overcharged for work that was largely unnecessary. Gateman Depo. at 240-241.

If Trustee Process were to issue in this case, Gateman would be unreasonably and

unfairly burdened. The claims and issues raised in the Complaint are issues for a jury or fact finder to resolve. There is no evidence that Gateman at any time acted in bad faith or that Gateman has funds available to him that even approximate the amount sought in the Plaintiff's Motion.

WHEREFORE, the Defendant, William Gateman respectfully requests this Court to deny the Plaintiff's Motion for Trustee Process.

Respectfully submitted,
William Gateman,
Individually and as Trustee
By his Attorney,

_____
Mark P. McGrath, BBO #642913
9 West Broadway #214
Boston, MA 02127
(617) 271-9009
mpgrath@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was this day served upon all counsel of record by electronic filing, this 28th day of April, 2006.

SIGNED under the pains and penalties of perjury.

Dated: April 28, 2006                    _____
                                         Mark P. McGrath