UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEORTO, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM GATEMAN, INDIVIDUALLY | ) | CIVIL ACTION NO. 04-11730 NG |
| and as TRUSTEE OF 200 UNION | ) | |
| STREET REALTY TRUST, | ) | |
| Defendant and | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERTS CORPORATION, | ) | |
| Third Party | ) | |
| Defendant. | ) | |

## JOINT PRETRIAL MEMORANDUM

Plaintiff Georto, Inc. ("Georto"), Defendant and Third Party Plaintiff William Gateman,

individually and as trustee of the 200 Union Street Realty Trust ("Gateman"), and Third Party

Defendant Roberts Corporation ("Roberts Corporation") submit this Joint Pretrial Memorandum

in accordance with the Court's pretrial Order dated July 20, 2006.

1.    **Trial Counsel**

   ***Counsel for Plaintiff Georto, Inc.***

   Dale C. Kerester, Esq.
   Karin McEwen, Esq.
   Lynch, Brewer, Hoffman & Fink, LLP
   101 Federal Street, 22nd Floor
   Boston, MA  02110-1800
   (617) 951-0800
   dkerester@lynchbrewer.com

   ***Counsel for Defendant / Third Party Plaintiff William Gateman***

   Mark P. McGrath, Esq.                    Carolyn M. Conway, Esq.
   Law Office of Mark P. McGrath            DiMento & Sullivan
   9 West Broadway, #214                    7 Faneuil Marketplace
   Boston, MA  02127                        Boston, MA  02109
   (413) 642 0160                           (617) 523-2345
   Mpgrath@aol.com                          cmc@dimentosullivan.com

   ***Counsel for Third Party Defendant Roberts Corporation***

   J. Mark Dickison, Esq.
   Dean J. Hutchison, Esq.
   Lawson & Weitzen, LLP
   88 Black Falcon Avenue, Suite 345
   Boston, MA  02210
   (617) 439-4990
   MDickison@lawson-weitzen.com

2.    **Jury / Non-Jury**

   This case is to be tried with a jury.  The parties further state that Georto asserts claims

against Gateman under Chapter 93A of the Massachusetts General Laws, for which there is no

right to a trial by jury.  Accordingly, it is anticipated that Georto's claims against Gateman under

Chapter 93A will be decided by the Court.

2

3.    **Statement of Claims, Defenses, and Counterclaims**

    A.  **Plaintiff Georto's Statement of Claims**

        1)  ***Liability:***

This action arises out of Georto's purchase of certain land in Lynn, Massachusetts (the "Property") from Gateman for $300,000 on February 19, 2004 pursuant to a Contract for the Sale of Real Estate (the "Contract") dated June 18, 2003.  The Property was one parcel of a larger site that Gateman had owned at 200 Union Street in Lynn but then sold as three separate parcels after a fire had destroyed three buildings on the site.

Georto asserts claims against Gateman for breach of warranty (Count One), fraud (Count Two), negligent misrepresentation (Count Three), breach of the covenant of good faith and fair dealing (Count Four), and violation of Chapter 93A of the Massachusetts General Laws (Count Five) arising from Gateman's conduct in intentionally dumping and concealing extensive amounts of solid waste / demolition debris on the Property.

Georto expects that the evidence at trial will demonstrate that:

- After a fire in August, 2001 damaged the three buildings on the site, Gateman deliberately dumped and buried on that part of the site later sold to Georto extensive amounts of solid waste / demolition debris (including but not limited to wood timbers, wood, charred wood, ash, brick, concrete, metal, radiators, junk, and other solid waste materials) in violation of applicable Solid Waste regulations and statutory provisions as well as directives of the City of Lynn and the Massachusetts Department of Environmental Protection.

- Among other debris, Gateman buried and concealed on the property later sold to Georto debris from the debris ramp that he had previously buried on the Family Dollar portion of the site in violation of his warranty and representations to Family Dollar.

- Gateman intentionally buried and concealed the solid waste / debris on the part of the property later sold to Georto by covering it with certain fill materials, all in order to reduce the costs of demolition and to facilitate his sale of one portion of the site to Family Dollar for $375,000.

- Notwithstanding the foregoing and that he knew that Georto intended to construct a building on the Property, Gateman warranted and represented to Georto in the Contract that "there are no hazardous materials as defined by state, federal, or local law, or non-acceptable environmental conditions on the property." (emphasis added) Gateman's warranties survived the closing.

- Pursuant to his obligations under the Contract, and as part of the due diligence regarding the Property, Gateman, after the execution of the Contract and prior to the closing, also provided Georto with a May 29, 2002 Phase I Environmental Site Assessment written report prepared by Goldman Environmental Consultants, Inc. (the "Assessment"). One of the purposes of the Assessment was to identify recognized environmental conditions, a term that is broader than the presence of oil or hazardous materials on the site and includes the burial of material not natural to the site. The Assessment set forth numerous material representations regarding the Property attributed to Gateman, specifically including representations made by

4

Gateman to Goldman Environmental on May 2, 2002 (within one week of the date of the Family Dollar purchase and sale agreement in which Gateman warranted that all demolition debris had been removed from the site) that all of the demolition debris had been or would be removed from the site and replaced with fill dirt.

- On July 7, 2003, after entering the Contract with Georto but prior to the closing, Gateman also provided Georto with a copy of the Family Dollar purchase and sale agreement pursuant to which Gateman warranted to Family Dollar that all demolition debris had been removed from all of the property (i.e., not only the portion of the property sold to Family Dollar but also the portion of the property to be sold to Georto).

- Georto, in reliance on Gateman's warranties and representations, purchased the Property on February 19, 2004 by paying the balance of the $300,000 purchase price to Gateman (as Trustee of 200 Union Street Realty Trust).

- On discovery of the hidden solid waste / demolition debris dump in April, 2004 when its contractor commenced excavation for a foundation for the building to be built on the Property, Georto, after consultation by Georto and its contractor with the City of Lynn Building Inspector and experts including a geotechnical engineer, then had to remove the solid waste / debris material and replace it with fill before constructing its building on the Property.

- Georto paid $249,000 for the removal of the solid waste / debris material and replacement with fill.

- Gateman also failed and refused to reimburse Georto for payment of $1,219.62 in real estate taxes for the tax year ending June 30, 2004 as required by an indemnification agreement dated February 9, 2004.

Without limitation, Georto expects to demonstrate that Gateman breached his warranty in the Contract that there were no non-acceptable environmental conditions on the Property, fraudulently misrepresented to Georto that all of the solid waste / demolition debris had been removed from the Property and replaced with fill dirt, engaged in unfair and deceptive practices in violation of Chapter 93A of the Massachusetts General Laws, and breached the indemnification agreement.

### 2) Damages:

Upon discovery of the buried solid waste / demolition debris, Georto's general contractor, PM Construction, solicited and obtained competing bids for the removal of the debris and replacement with fill. After consideration of the competing bids and based upon the recommendation of PM Construction, Georto then contracted to have the debris removed (which had been located throughout the Property and was largely the same throughout) and replaced with fill, which work was supervised by Steve McIntyre of PM Construction. Approximately 167 truckloads of demolition debris material was removed, and approximately 4,000 cubic yards of fill was delivered to the site at a cost of $249,000.

Georto seeks to recover $249,000 as damages for Gateman's wrongful conduct regarding the demolition debris, $1,219.62 for breach of the indemnification agreement, prejudgment interest, and multiple damages and attorney's fees under Chapter 93A.

**B.**    **Defendant William Gateman's Statement of Defenses and Third Party Claims**

Gateman denies each and every claim asserted by Georto.  Moreover, Gateman expects that the evidence at trial will show the following:

Prior to August of 2001, a large commercial building was situated on the Property until it was destroyed by fire.  Thereafter, Gateman contracted with Roberts, a New Hampshire corporation, for the demolition of the damaged structure and removal of the debris.

Gateman partitioned the Property and sold one portion of the lot to Family Dollar Stores of Massachusetts, Inc. ("Family Dollar") and one portion to Georto.  The Trust first acquired the Property in 1996 and held it as an investment prior to dividing it into separate lots.

Several juveniles set the building on fire in August of 2001, which resulted in its total destruction.  Gateman entered into negotiations with various demolition companies to take the remaining structure down and remove the remaining debris.  Roberts submitted two different bids, one which included the cost of removing the brick and concrete, and the other estimating only the cost of removing the debris, while leaving the brick and concrete in the former basement.

On or about March 12, 2002, Roberts entered into a written contract with Gateman, whereby Roberts agreed, among other things, to demolish the existing building, remove the demolition debris from the site, cover the site with fill and rough grade the site, and remove the brick and concrete.  Thus, the written contract reflected two estimates: $90,000.00 for

completing the demolition and removing the debris; *or* $90,000.00 plus an additional $25,000.00 for removing the brick and concrete.

Roberts commenced the demolition work the day after signing the contract with Gateman and worked on the site for the next several weeks.  Roberts removed over 50 truckloads of debris, leaving behind brick and concrete on the site to use as fill, per the permission obtained by Gateman from the City of Lynn's Building Inspector that the brick and concrete could be used as fill.  As a result, only the $90,000.00 provision of the contract between Gateman and Roberts applied.

In completing its work and per the contract, Roberts warranted that all demolition debris, other than the aforementioned bricks and concrete, had been removed from the site.  Gateman relied on Roberts' contractual obligations and representations from Roberts' management that the work had been fully performed and that Roberts had not concealed any debris.

Gateman discovered, after Roberts had represented that the work had been completed, that Roberts had failed to remove the debris that had constituted an access ramp to the site. Roberts then sent a screener, a loader and several trucks to screen the material from the ramp, but not removing the entire ramp nor all the debris.  Gateman had relied on Roberts' contractual and personal representations that all necessary demolition debris would be removed on the adjoining parcel purchased by Georto.

On or about June 18, 2003, Gateman entered into a contract for the purchase and sale of the adjoining site to Georto.  Gateman had no knowledge at any time of any problems with the site until informed on or about April, 2004 by Georto that Georto was prohibited from going forward because the site allegedly contained solid waste.

8

Gateman expects to demonstrate that Gateman did not breach any alleged warranties or any other element of his contract with Georto and, further, that Roberts breached its contract with Gateman.

### C.    Third Party Defendant's Statement of Defenses and Third Party Counterclaim

The evidence will show that on or about March 12, 2002, Roberts Corporation ("Roberts") was hired by defendant, William Gateman ("Gateman"), to demolish and remove debris of a commercial building destroyed in a fire. The parties only conditionally agreed on removing the entirety of the debris (i.e. brick and concrete). This was reflected in the separate bids, one for $90,000 and one for $90,000 + $25,000 for removal of brick and concrete. Roberts commenced the demolition work immediately after the signing of the contract. Roberts screened and separated the debris into various piles on the site. After separating the debris into various piles, Roberts removed the debris and transported it to various facilities. Roberts removed over 1178 tons of debris during its four (4) weeks of continuous work on the site.

Gateman misrepresented to Roberts that he received permission from the City of Lynn's building department to leave brick and concrete on the site as fill. At the direction of Gateman, Roberts put the brick and concrete back into the foundation hole on the property. Roberts notified Gateman that although all of the debris had been screened and segregated, small pieces of charred wood that could not be mechanically screened and would remained mixed with the concrete and brick unless Gateman desired it to be handscreened. Gateman authorized Roberts to refrain from handscreening and to leave small pieces of charred wood on the site.

Although the contract between Gateman and Roberts stated that Roberts would "cover

9

with fill and grade the site," neither Gateman nor Roberts believed that Roberts was contracted to fill the site. In fact, Gateman contracted two separate companies to fill and grade the site. Also, Gateman himself took part in the fill efforts operating machinery at the site. Further, prior to Roberts' arrival on the site, a separate contractor constructed a ramp into the site of compacted debris and soil.

After Roberts left the worksite, both Roberts and Gateman agreed that Roberts had fully performed its obligation. Gateman observed Roberts' work firsthand throughout the project and inspected the site upon Roberts departure. Gateman made his final payment to Roberts and referred additional business to the company. Gateman's acceptance of the Roberts' work demonstrates that Gateman waived any alleged problems with the quality of work.


4.    **Stipulation of Facts**

     The parties submit the following stipulation of facts which may be read to the jury and introduced as an agreed upon exhibit at trial:

1.   Gateman, purchased certain commercial real property at 200 Union Street, Lynn, Massachusetts (the "site") in 1996 for $20,000 (plus payment of approximately $100,000 in back taxes) for the purposes of renting the property for profit and holding the property as an investment.  The site included three buildings consisting of approximately 100,000 square feet.

2.   Gateman listed the site for sale as of the spring and summer of 2001.  After a fire at the site in August, 2001, however, the City of Lynn building inspector told Gateman to

demolish the buildings.  Turner Demolition performed initial demolition work the day after the fire.

Initial Demolition Work / Debris Ramp

3.  During that initial demolition work, consisting of the destruction of the front of the building, a ramp or road of demolition debris was placed on that part of the property that was ultimately sold to Family Dollar.  The debris ramp was used to drive machinery from street level into the basement foundation during the demolition work and was built before any fill was brought onto the property.   The debris ramp was approximately sixty feet wide, forty feet long, and ten to twelve feet high.

Roberts Demolition Contract / Initial Dumping

4.  As of March, 2002, the City of Lynn and the Massachusetts Department of Environmental Protection notified Gateman to proceed with the demolition and debris removal.  Gateman then contracted with Roberts Corporation in March, 2002 to take down the remainder of the building (while leaving the basement foundation) and remove certain of the demolition debris from the site and dispose of it.

5.  Roberts started work in March, 2002.  At the time that it started work, the site contained "all kinds of debris", including wood, burnt wood, ash, brick, concrete, steel, iron, furniture, and general trash.

6.  Roberts Corporation created piles of demolition debris on the site, including piles of wood (including charred wood) and trash mixed together.  The debris piles ranged up to fifty feet high.

7.  Gateman entered into a purchase and sale agreement dated April 26, 2002 to sell one of the parcels of the site to Family Dollar for $375,000.  Family Dollar had been renting part of the property prior to the fire.  Pursuant to the negotiations for that sale, which started shortly after the fire, Family Dollar required that Gateman remove all of the debris (including brick and concrete as well as other debris) not only from the parcel to be purchased by Family Dollar but also from the adjacent parcels (including the Property later sold to Georto).

### Debris Ramp / Additional Dumping

8.  Roberts Corporation had initially finished its work at the site in late April or early May, 2002 but was called back later to the site by Gateman.

9.  Gateman made a separate $10,000 cash payment to Kevin Doherty individually that was not paid to Roberts Corporation. Mr. Doherty did not disclose that payment to Roberts Corporation until after this lawsuit was filed.

### Georto Purchase and Sale Agreement / Written Representations

10.  Approximately one year later, in June, 2003 and after completion of the filling activity at the site, Gateman entered into a purchase and sale agreement (the "Contract") with Georto.  As was referenced in the Contract, Georto intended to use the Property for the construction of a new commercial building as a retail store.

11.  Gateman, after the execution of the Contract and prior to the closing, also provided Georto with a May 29, 2002 Phase I Environmental Site Assessment written report prepared by Goldman Environmental Consultants, Inc. (the "Assessment") in

connection with Gateman's sale of one parcel of the site to Family Dollar.    The

Assessment set forth numerous material representations regarding the Property,

12.  Goldman Environmental Consultants issued reliance letters to Georto (and to Georto's

lender, Key Bank), acknowledging that Georto (and Key Bank) were relying upon the

information contained in the Assessment for  due diligence activities and financing and

stating that Georto and Key Bank could rely upon such information as if the information

had been prepared for them.

13. Among other uses, Georto provided the Assessment to its contractor, PM Construction,

for the purpose of obtaining an estimate of the costs of constructing a building on the

Property and to its franchisor and bank for purposes of obtaining approval of the

purchase of the site and financing for that purchase.

14. In July, 2003, after entering the Contract with Georto but prior to the closing, Gateman

also provided Georto with a copy of the Family Dollar purchase and sale agreement

prior to the sale to Georto.

15.  Georto closed on the Property on February 19, 2004 by paying the balance of the

$300,000 purchase price to Gateman.

<u>Discovery of Buried Solid Waste / Demolition Debris</u>

16. Upon discovery of  demolition debris at the Property, PM Construction's project

manger, Steve McIntyre, notified Georto that, based on the building code, PM

Construction could not build on the debris and that it was more than likely that all of it

would need to be removed.  Mr. McIntyre invited a Lynn building code enforcement

officer to investigate the demolition debris at the Property and to determine if it needed

13

to be removed.  Georto then also retained a geotechnical engineer, who also advised

Georto that all of the demolition debris material had to be removed.

17. Georto contracted to have the debris removed and replaced with fill, which work was

supervised by Steve McIntyre of PM Construction.

18. Georto paid $249,000 for the removal of the demolition debris and solid waste and

replacement with fill.


**5.**    **Contested Issues of Fact**

The parties intend to supplement the Joint PreTrial Memorandum so as to identify

contested issues of fact based on their discussions as to the stipulations set forth above.

**6.**    **Jurisdictional Questions**

None.

**7.**    **Issues of Law**

The parties jointly submit the following issues of law:

1. Whether Gateman breached his warranty that there were no non-acceptable

environmental conditions on the Property.

2. Whether Gateman fraudulently misrepresented that all demolition debris had been

removed and replaced with fill dirt.

3. Whether Gateman negligently misrepresented that all demolition debris had been

removed and replaced with fill dirt.

4. Whether Gateman breached the implied covenant of good faith and fair dealing.

5. Whether Gateman engaged in unfair and deceptive practices in violation of Chapter 93A

of the Massachusetts General Laws.

6. Whether Gateman breached his contract (indemnification agreement) with Georto by failing to reimburse Georto for its payment of property taxes owed by Gateman.

7. Whether Roberts Corporation breached its contract with Gateman and is liable to Gateman if Gateman is found liable to Georto.

<u>Statement by Georto</u>

Georto states that it shall separately file a trial brief regarding the above referenced issues.

<u>Statement by Roberts Corporation</u>

Roberts Corporation submits the following:

The doctrine of *in pari delicto* bars a plaintiff who has participated in wrongdoing from recovering damages for a loss resulting from the wrongdoing. *Choquette v. Isacoff,* 65 Mass.App.Ct. 1, 3-4 (2005). The doctrine stands for the theory that courts will not lend aid to parties who base their cause of action on their own immoral or illegal acts. *See Atwood v. Fisk,* 101 Mass. 363, 364 (1869). "When two parties, acting together, commit an illegal or wrongful act, the party who is held responsible in damages for the act cannot have indemnity or contribution from the other, because both are equally culpable, … and the damage results from their joint defense." *Stewart v. Roy Bros.,* 358 Mass. 446, 458-459 (1970).

"In Massachusetts, the rule has its usual application with respect to the attempted enforcement of illegal contracts, and in equitable proceedings where both parties come before the court with unclean hands." *Choquette v. Isacoff,* 65 Mass.App.Ct. 1, 4 (2005). Massachusetts

courts would not allow primary wrongdoer to sue a secondary accomplice for helping in the wrong. *Baena v. KPMG LLP,* 2006 WL 1703822 (1st Cir. 2006)

"In pari delicto, which literally means "in equal fault" is a doctrine commonly applied in tort cases to prevent a deliberate wrongdoer from recovering from a co-conspirator or accomplice. It is applied by Massachusetts courts in tort cases, including claims under chapter 93A." *Baena v. KPMG LLP,* 2006 WL 1703822 (1st Cir. 2006) (Where company falsified financial reports and submitted to accounting firm, company was barred from recovering against accounting firm because company was the primary wrongdoer.)

Statement by Gateman:

Roberts Corporation did not perform under the terms of the Contract, breached its contractual obligations to Gateman, and failed to properly remove debris from the site, resulting in Gateman's Purchaser of the site filing suit against Gateman.

The terms of the Roberts-Gateman contract were stated in broad yet unambiguous terms. The one page contract called for Roberts to "demolish existing building" and "remove demo debris off site." The clear intention of the contract was to have the building demolished and the debris removed from the site. The fact that Georto found debris on the site the prevented development of the building can only be attributed to Roberts, which had been hired for the express purpose of removing all of the debris.

Gateman expressly contracted with Roberts as Gateman had little to no experience with demolition debris and relied on Roberts' expertise and competence. Roberts had a duty under its contract with Gateman to perform the removal services in a satisfactory manner and it breached

16

that duty in failing to properly dispose of all debris.

8.    Requested Amendments to Pleadings

By agreement of the parties, Georto's claim against Gateman for breach of the tax indemnification agreement, which arose after the filing of the Complaint and was the subject of correspondence with Gateman's prior counsel (including production of documents by Georto), will be heard at trial without the necessity of amending the Complaint.

Third-Party Defendant, Roberts Corporation, with the consent of all parties, will stipulate to dismiss its counter-claim against Defendant/Third-Party Plaintiff, Gateman.

9.    Additional Matters

Georto submits the following additional matters for consideration by the Court:

1.    Georto, pursuant to Local Rule 26.4, objects to Gateman's presentation of the testimony of any purported expert (specifically including John Ferreira and any other person to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence) and to Gateman's introduction of any proposed exhibit related to such testimony on the grounds that Gateman has failed to disclose the information required by Fed. R. Civ. P. 26(a)(2), has failed to serve any expert report,  and otherwise has failed to identify such information in response to Georto's interrogatories.  In support thereof, Georto states that Local Rules 16.5(C) and 26.4(A) required that Gateman make the disclosures regarding experts required by Fed. R. Civ. P. 26(a)(2) at least 90 days before the final pretrial conference and that the Stipulation and Joint

17

Statement (Docket No. 32) more specifically required that his disclosures be served no later than March 24, 2006.[1]   Gateman failed to make the required disclosures at any time.

    2.    Gateman has not produced documents (specifically including but not limited to documents regarding certain material from Revere that Gateman caused to be delivered to the Property) documents that were the subject of the Court's order to produce dated May 25, 2006. Georto accordingly may seek sanctions, specifically including preclusion of Gateman from testifying about such materials.

    3.    Georto has subpoenaed Kevin Doherty to testify at trial, but Mr. Doherty, by Roberts' counsel, has asserted that he may be unavailable to testify at trial due to certain health issues.  Without waiver of or prejudice to its ability to enforce such subpoena, Georto has designated portions of Mr. Doherty's deposition transcript to be read at trial.

10.    <u>Length of Trial</u>

    One week.

11.    <u>Voir Dire Procedures</u>

    a) *Proposed Jury Selection Procedures*

    The parties request that the Court conduct the examination of the prospective jurors and that the Court permit the parties' counsel to supplement the examination by such further inquiry

---

[1] The prior deadline of January 30, 2006 for such disclosures was extended until March 24, 2006 due to Gateman's change of counsel.  While Gateman served a "disclosure" on March 27, 2006 (pursuant to which he stated that John Ferreira of J&J Materials Corporation may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence), Gateman did not disclose any information regarding the opinions to be expressed, the basis and reasons therefore, the data or other information considered by the witness, exhibits, qualifications, compensation, listing of other cases, or other required information.  See Docket No. 34.  Georto accordingly objected in writing to the insufficiency of such disclosure on March 29, 2006. Gateman nonetheless did not at any time seek leave to supplement such disclosure.

as the Court deems proper, all in accordance with Fed. R. Civ. P. 47(a).  The parties further request that the Court consider the following examination inquiries:

- Do you know any of the parties, their counsel, the potential witnesses, or the companies or firms where any of those individuals work?

- Did you ever observe any demolition or construction work at the property located at 200 Union Street in Lynn?

- Have you ever visited the Family Dollar store or Aarons Rent to Own store located on Union Street in Lynn?

- Have you ever been a customer of any Aarons Rent to Own store?

- Are you or any of your family members or close friends involved in the business of demolition, construction, or disposal of construction and demolition debris?

- Have you or any of your family members ever been involved in a lawsuit regarding the purchase or sale of real property?

- Have your or any of your family members ever been the defendant in a lawsuit?


b) *Names And Addresses Of Witnesses To Be Read To Potential Venire*

See Addendum "A" attached hereto.

c) *Proposed Description Of Case To Be Read To Potential Venire*

Plaintiff Georto, Inc. is a Florida company solely owned and managed by Mr. James Hawkins.  William Gateman is named as a defendant both as an individual and in his capacity as Trustee of the 200 Union Street Realty Trust, a trust that had owned and operated certain commercial land in Lynn, Massachusetts.  Third-party defendant Roberts Corporation is a New

19

Hampshire company engaged in the demolition business.

This action arises out of Georto's purchase of certain land located in Lynn, Massachusetts from Mr. Gateman pursuant to a purchase and sale contract. The Property was one parcel of a larger site that Mr. Gateman had owned at 200 Union Street in Lynn. A fire in August of 2001 required that the three buildings located on the site be totally demolished. Mr. Gateman entered into a contract with Roberts Corporation for that demolition work. Mr. Gateman then sold the land as three separate parcels. He sold the first parcel to Family Dollar of Massachusetts, Inc. in early 2003, the second parcel to Georto in February, 2004, and the third parcel to certain individuals later in 2004.

Pursuant to the purchase and sale contract with Georto, Mr. Gateman, as Trustee of the 200 Union Street Realty Trust, warranted and represented to Georto that "there are no hazardous materials as defined by state, federal, or local law, or non-acceptable environmental conditions on the property." Mr. Gateman also provided Georto with a written Environmental Site Assessment report prepared by Goldman Environmental Consultants. The Assessment set forth certain representations regarding the Property attributed to Mr. Gateman, specifically including representations that all of the demolition debris had been or would be removed from the site and replaced with fill dirt.

Georto asserts that after it purchased the Property and commenced construction of a new commercial building in early April, 2004, it discovered large amounts of demolition debris that had been illegally dumped and buried below the surface by Mr. Gateman. Georto further asserts that it was required to dig out, remove, and properly dispose of the demolition debris and to replace that debris material with approximately 4,000 cubic yards of fill, at a cost of $249,000.

Among other claims, Georto alleges that Mr. Gateman breached his purchase and sale contract warranty that there were no non-acceptable environmental conditions on the property, fraudulently misrepresented that all of the demolition debris had been removed and replaced with fill dirt, and engaged in unfair and deceptive practices in violation of the Massachusetts Consumer Protection Act.

Mr. Gateman denies all of Georto's claims and contends that he entered into a contract for the sale of real estate to Georto and that the contract speaks for itself.  Mr. Gateman further contends that he performed fully under said contract.  Mr. Gateman also alleges that Roberts Corporation was obliged to remove demolition debris from the Property, is liable to Mr. Gateman if Mr. Gateman is held liable to Georto, and is further obligated to defend and indemnify Mr. Gateman against Georto's claims.

Roberts Corporation denies Mr. Gateman's claims and contends that it fully performed its contract with Gateman at Gateman's requests and under Gateman's direction. Mr. Gateman approved of the work completed by Roberts Corporation and referred other work to Roberts Corporation. Roberts Corporation further contends that it removed all debris from the site and took no part in the fill operation of the lot.


12.   Witnesses

Plaintiff

1)   Georto expects to call the following witnesses at trial:

Eric M. Axelrod, LSP
Ransom Environmental Consultants, Inc.
1445 Wampanoag Trail, Suite 108A

21

East Providence, RI 02915
Purpose:  Facts regarding Gateman's conduct at site, communications, and related matters

Kevin Doherty
Roberts Corporation / Roberts Dismantling & Recycling Corp.
4 Bridle Ridge Road
Hudson, NH  03051
(603) 880-0122
Purpose: Facts regarding site work, communications with Gateman, and related matters

William Gateman
93 Atlantic Avenue
Swampscott, Massachusetts
Purpose: Facts regarding site, conduct, and related matters

Allen Green
c/o Cheryl Gottmann, Legal Department
Family Dollar Stores, Inc.
P.O. Box 1017
Charlotte, North Carolina  28201
(704) 847-6961
Purpose:  Facts regarding site, Gateman's conduct and representations, debris ramp, and related matters

James Hawkins
Georto, Inc.
2980 McFarlane Road, Suite 202
Miami, FL  33133
Purpose: Facts regarding purchase of property, warranty, representations, reliance, discovery of debris, removal and replacement of debris/solid waste, and related matters

Steven McIntyre
PM Construction Co., Inc.
P.O. Box 728
Saco, Maine  04072
Purpose:  Facts/standards/expert opinions regarding site inspections and work, suitability for building, communications with Gateman and Roberts, site conditions, work at site, debris/waste removal, and related matters.

Lauren McKinlay
Goldman Environmental Consultants, Inc.
60 Brooks Drive

22

Braintree, MA  02184
(781) 356-9140
Purpose:  Facts/standards/expert opinions regarding site inspection and interviews, communications with Gateman, site observations, environmental reports, environmental conditions, debris/waste, and related matters

Chad B. Michaud, P.E.
Geotechnical Engineer
S.W. Cole Engineering, Inc.
350 Rte. 108, Suite 208
Somersworth, NH  03878
(603) 692-0088
Purpose: Expert, in accordance with prior disclosures / reports

Phillip Morin
PM Construction Co., Inc.
P.O. Box 728
Saco, Maine  04072
Purpose:  Facts/standards/expert opinions regarding site inspection, project, estimates, construction contract, site work, site conditions, debris/waste, proposals, bids, subcontract, work authorizations, debris/waste removal, fill, costs, impact on schedule, construction, and related matters

Mark Phaneuf
Harding ESE, Inc.
107 Audubon Road
Suite 301
Wakefield, MA  01880
Purpose:  Site conditions and related matters

Robert B. Stalker, Jr.
Roberts Corporation / Roberts Dismantling & Recycling Corp.
4 Bridle Ridge Road
Hudson, NH  03051
(603) 880-0122
Purpose:  Facts regarding site inspection, bid/contract, site work, debris/solid waste, directions from Gateman, and related matters

Scott Wetherbee
Scott Wetherbee Contracting
3 Robin Road
North Reading, MA  01864
(781) 389-1621
Purpose:  Facts regarding site work

23

Gregory C. Wirsen, MSc.
Green Seal Environmental
28 Route 6A
Sandwich, Massachusetts
Purpose:  Expert, in accordance with prior disclosure / report

Georto reserves the right to call additional witnesses in accordance with its pretrial disclosures, including but not limited to witnesses previously identified by it or by other parties as well as rebuttal witnesses.  Georto also states that it objects to Gateman's proffered testimony of Paul Yasi on the grounds of relevance and the parol evidence rule.

Defendant William Gateman

 Defendant Gateman expects to present the following witnesses at trial:

1.      William Gateman
        93 Atlantic Avenue
        Swampscott, MA

        Purpose: Facts regarding site, conduct and related matters

2.      Robert B. Stalker, Jr.
        Roberts Corporation
        4 Bridle Ridge Road
        Hudson, NH 03051

Purpose:  Facts regarding site inspection, bid/contract, site work, debris/solid waste, reliance from Gateman, and related matters

3.      James Hawkins
        Georto, Inc.
        2980 McFarlane Road, Suite 202
        Miami, FL 33133

Purpose: Facts regarding purchase of property, representations, reliance, discovery of

debris, removal and replacement of debris/solid waste, and related matters

4.      Kevin Doherty
        Roberts Corporation
        4 Bridle Ridge Road
        Hudson, NH 03051

Purpose:  Facts regarding site inspection, bid/contract, site work, debris/solid waste, reliance from Gateman, and related matters

5.      Scott Wetherbee
        Scott Wetherbee Contracting
        3 Robin Road
        North Reading, MA 01864

Purpose: Facts regarding site work

6.      Paul Yasi, Esq.
        Yasi & Yasi, P.C.
        Two Salem Green
        Salem, MA 01970

Purpose: Facts regarding P&S Agreement and related matters

<u>Third Party Defendant Roberts Corporation</u>

Robert B. Stalker, Jr.
Roberts Corporation
4 Bridle Ridge Road
Hudson, NH 03051
Purpose:  Facts regarding site inspection, bid/contract, site work, debris/solid waste, reliance from Gateman, and related matters

Kevin Doherty
Roberts Corporation / Roberts Dismantling & Recycling Corp.
4 Bridle Ridge Road
Hudson, NH  03051
(603) 880-0122
Purpose: Facts regarding site work, communications with Gateman, and related matters

25

William Gateman
93 Atlantic Avenue
Swampscott, Massachusetts
Purpose: Facts regarding site, conduct, and related matters

Scott Wetherbee
Scott Wetherbee Contracting
3 Robin Road
North Reading, MA 01864
Purpose: Facts regarding site work

Roberts Corporation reserves the right to call additional witnesses in accordance with its pretrial disclosures, including but not limited to witnesses previously identified by it or by other parties.

13.    <u>Proposed Exhibits</u>

Pursuant to the Joint Exhibit List attached hereto as Addendum "B," the parties have identified a) agreed exhibits to be admitted as evidence at trial by agreement of the parties; b) potential exhibits that may be offered by the sponsoring party; and c) a limited number of disputed exhibits.

14.    <u>Jury Instructions</u>

The parties shall separately file their proposed jury instructions.

**PLAINTIFF GEORTO, INC.**
By its attorney

 /s/ Dale Kerester
Dale Kerester, Esq., BBO # 548385
Lynch, Brewer, Hoffman & Fink LLP
101 Federal Street
22nd Floor
Boston, MA 02110
617-951-0800
dkerester@lynchbrewer.com

**DEFENDANT WILLIAM GATEMAN,**
**INDIVIDUALLY AND AS TRUSTEE**
By his attorney

/s/ Mark P. McGrath
Mark P. McGrath, Esq., BBO #642913
9 West Broadway  #214
Boston, MA  02127
(617) 271-9009
mpgrath@aol.com

**THIRD PARTY DEFENDANT ROBERTS CORPORATION**
**BY ITS ATTORNEY**

/s/ J. Mark Dickison
J. Mark Dickison, Esq., BBO# 629170
Dean Hutchison, BBO #658891
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA  02110

Date:   August 11, 2006

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

<u>/s/ Dale Kerester</u>
Dale Kerester