# United States District Court
### FOR THE
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) <br> GEORTO, INC., ) <br>   Plaintiff, ) <br> ) <br>   v. ) <br> ) <br> WILLIAM GATEMAN, INDIVIDUALLY ) <br> and as TRUSTEE OF 200 UNION ) <br> STREET REALTY TRUST ) <br> ) <br>   Defendant, ) <br>   Third Party Plaintiff, and ) <br>   Third Party Defendant-in- ) <br>   Counterclaim ) <br> ) <br> ROBERTS CORPORATION ) <br> ) <br>   Third Party Defendant, ) <br>   and Third Party Plaintiff-in- ) <br>   Counterclaim ) <br> _____ ) | CIVIL ACTION NO. 04-11730 NG |

**THIRD PARTY DEFENDANT ROBERTS CORPORATION'S REPLY TO GEORTO, INC.'S AND WILLIAM GATEMAN'S REQUESTS FOR FINDINGS OF FACT AND RULINGS OF LAW**

Third-Party Defendant, Roberts Corporation ("Roberts") hereby responds to Plaintiff, Georto, Inc.'s ("Georto") and Defendant, William Gateman's ("Gatemant") Requests for Findings of Fact and Rulings of Law.

**Reply to Georto's Findings of Fact**

9. o.   Wood (including wood up to a foot in length) and ash was mixed in with the brick and concrete debris buried on the Georto side. (VI: 47; VIII: 81, 83-84; VIII 87-88).

*Response*:    Stalker never admitted that wood up to one foot in length was left within the brick and concrete. He stated that small pieces of wood that could not be separated from the brick were left and Gateman was aware of this. (VI: 17, 47; VIII: 79).

10.    d.    Mr. Doherty of Roberts observed at the time that the ramp consisted not only of brick and concrete but also a substantial amount of metal. (Ex. 52, p. 80.)

    f.    Mr. Stalker observed not only brick and concrete in the debris ramp as of March 12, 2002 but also wood, burnt wood, scrap metal, and trash, including burnt clothes and other debris, all of which were clearly visible. (VIII: 85-86).

*Response*:    Both Mr. Stalker and Mr. Doherty testified that ramp was initially covered with debris including metal and trash but that they cleaned off the top of the ramp. The remainder appeared to be brick and concrete and dirt left by the previous demolition contractor who built the ramp. (VIII: 85-87; 105-106; Ex. 52, p. 81 (18-20).)

18.    d.    Mr. Doherty observed Mr. Gateman and Mr. Wetherbee taking debris after it was screened and moving that debris and pitting into the hole. (Ex. 52, p. 131)

*Response*:    Mr Doherty was talking about "excess debris" which when he was later allowed to clarify stated that excess debris consisted of the brick, concrete and ash. (Ex. 52, pp. 166-167.)

19.    d.    Roberts removed at most one load of demolition debris and one load of recycling material after May 8, 2002; those two loads were removed on June 5, 2002.

    e.    Of the 1100 cubic yards of debris material excavated from the debris ramp on the Family Dollar portion of the site, on or after May 17, 2002, at most 140 cubic yards were removed from the site prior to the time that Georto purchased the property.

*Response*:   Of the 1100 cubic yards removed, the top 4ft of top soil/fill was set aside to be re-used on the Family Dollar side, the remaining amount fill/debris was screened and the brick, concrete and ash was left on the site. (Ex. 52, p. 131; pp. 166-167) The remaining 25+ tons of metal and mixed debris was removed by Roberts. (Ex. 12)

21.   e.   Mr. Doherty also admitted that he possibly had discussions with Mr. Gateman regarding reducing the price by an additional $10,000 if the additional debris was left on site. (Ex. 52, p. 123).

*Response*: Deposition testimony (Ex. 52, p. 123):

```
13   Q. What was the next discussion that you had
14   with Mr. Gateman about the subject of reducing the
15   price?
16       A.   That was it.
17       Q.   Did you have any discussion with him
18   about reducing the price by an additional $10,000
19   if the additional debris was left on the site?
20       A.   Do I recall that?  No.
21       Q.   Is it possible that you had that
22   discussion with him?
23       A.   Possibly.
```

36.   h.   Based on his review of the Phase I Report and a subsequent Phase II Report, Mr. Morin understood that the fill material that was onsite was suitable for construction.

*Response*:   Mr. Morin was neither a geotechnical nor structural engineer and based his understanding on two reports that had nothing to do the structural soundness of the soil. In fact even the top soil at the site, disregarding the demolition debris, was deemed unsuitable for building by plaintiff's expert due to organic material such as roots. See Transcript, Volume V, p. 15.

**Reply to Gateman's Findings of Fact**

51.   Gateman never saw the ramp being built and testified that the only possible origin could have been Roberts, who needed it to access the property.

3

*Response*:    Gateman's counsel stipulated that the initial demolition contractor, Turner, was responsible for creating the ramp. (Ex. 1). Further, Gateman testified at deposition and trial that both Turner and RIS did work on the site prior to Roberts arrival.

63.    Gateman testified that he observed in Exhibit 3C-70, taken May 1, 2002, that Roberts is on site covering the ramp with clean dirt.

*Response*:    Mr. Gateman testified that he was not on site the day that picture was taken. (VII: 53 (4-6)).

118.    Gateman testifies that he had a contract with Roberts to remove all demolition debris and that Roberts simply failed to do so. A ramp of debris was left behind, in violation of the Gateman-Roberts Contract.

*Response*:    The contract was to remove all debris excluding brick and concrete which was at Gateman's request. Exhibit 9. Gateman testified that he instructed Roberts to keep brick and concrete onsite. Gateman also testified that he was aware that some wood would be left with the brick and concrete and that ash was left on site. Although parties have alleged that a ramp was left behind, the evidence showed that PM construction dug a trench around the entire property as well as test pits throughout the property and there was little or no difference of the location of debris.[1] The slips, that evidence the material leaving the property, show that 167 truckloads left the property and of the 167, 112 were brick and concrete and 55 were "fill," all of which were brought to recycling centers.[2]

---

[1] Roberts left an empty pit when it left, thus, any debris found in the test pits was not placed by Roberts as filling operations were conducted by Wetherbee and Gateman.
[2] Recycling centers do not take demolition debris.

4

122.    In May of 2002, the ramp and debris were discovered and Mr. Gateman assumed that Roberts, after agreeing to return to the site and remove any debris, removed all the ramp and debris.

*Response*:    Roberts was not on-site when the "ramp" was excavated. The entire excavation was performed by Wetherbee. (VIII: 53, 129-130, 152).

124.    Gateman instructed both Roberts and Scott Wetherbee to remove all debris from the entire site, not just family dollar.

*Response*:    Roberts was not on-site when the "ramp" was excavated. The entire excavation was performed by Wetherbee. (VIII: 53, 129-130, 152).

**Reply to Request for Findings of Law:**

1.    Stipulations or admissions made prior to trial have the binding and conclusive effect of Judicial Admissions at the trial, unless judicial relief is granted therefrom to prevent manifest injustice. *American Honda Motor Co. v. Richard Lundgren, Inc.,* 314 F.3d 17, 21 (1st Cir. 2002); See also, *Abbott v. Link-Belt Co.,* 314 Mass. 673 (1949); *Lynch v. Kaufman,* 329 Mass. 762 (1952). Given that Gateman himself testified at two separate occasions prior to trial that a contractor other than Roberts built the debris ramp, Gateman should not be relieved from the stipulations entered into by his counsel that a contractor other than Roberts built the debris ramp.

## **CONCLUSION**

For the above stated reasons, judgment should be granted in favor of the Roberts Corporation on all claims asserted against it in the Third Party action. Additionally, Roberts should be entitled to recover its costs and attorney fees associated with defense of Gateman's claims.

Respectfully submitted,
Roberts Corporation,
By its Attorney,

  /s/ J. Mark Dickison
J. Mark Dickison (BBO# 629170)
LAWSON & WEITZEN, LLP
88 Black Falcon Ave., Ste. 345
Boston, MA  02210
617-439-4990
mdickison@lawson-weitzen.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 23, 2006.

  /s/ J. Mark Dickison
J. Mark Dickison