UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORTO, INC., <br>         Plaintiff, <br> v. <br> WILLIAM GATEMAN, INDIVIDUALLY <br> and as TRUSTEE OF 200 UNION <br> STREET REALTY TRUST, <br>         Defendant and <br>         Third Party Plaintiff, <br> v. <br> ROBERTS CORPORATION, <br>         Third Party <br>         Defendant. | CIVIL ACTION NO. 04-11730 NG |

**PLAINTIFF GEORTO, INC.'S APPLICATION
FOR REASONABLE ATTORNEY'S FEES AND COSTS
WITH PROPOSED FORM OF FINAL JUDGMENT**

Plaintiff Georto, Inc. ("Georto") hereby applies for and petitions this Court to assess and award to Georto $306,713.64 in reasonable attorney's fees and costs pursuant to this Court's Memorandum and Order dated July 3, 2007. Attached hereto as Exhibit "A" is Georto's proposed form of final judgment.[1] In support of its application, Georto submits herewith and incorporates herein the Affidavit of Dale C. Kerester in Support of Plaintiff's Application for Reasonable Attorney's Fees and Costs ("Kerester Affidavit"). Georto submits this application without prejudice to or waiver of its right to apply for additional reasonable attorney's fees and costs which may be incurred by Georto after the date of this application, including but not limited to additional attorney's fees and costs arising from Gateman's notice of appeal filed on August 2, 2007. Georto further states as follows:

**Memorandum and Order Dated July 3, 2007**

After nearly three years of litigation and an eight day jury waived trial held in September, 2006, and upon consideration of the parties' respective extensive requests for findings of fact and rulings of law, the Court, pursuant to its 48 page Memorandum and Order dated July 3, 2007, ordered that Judgment enter in favor of Georto and against William Gateman, individually and as Trustee of the 200 Union Street Realty Trust ("Gateman"), on all counts of Georto's Complaint (breach of contract, fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and violation of Massachusetts General Laws Chapter 93A). With the limited exception of the Court's decision not to award multiple damages under Chapter 93A, the Court ruled in Georto's favor and against Gateman on all of Georto's claims and requested damages and Gateman's defenses thereto. The Court awarded Georto damages in the amount of $250,361.00, prejudgment interest at the statutory rate of 12% per annum from the dates of breach (which totals $121,473.73 as of July 3, 2007)[2], and reasonable attorney's fees and costs under Chapter 93A. Pursuant to its Order, the Court directed Georto to file its submissions regarding attorney's fees, as well a proposed final form of judgment, by August 3, 2007. See Memorandum and Order, Docket No. 97.

---

[1] Georto submits such proposed form of final judgment without waiver of or prejudice to its claim for multiple damages under Chapter 93A.

[2] As is reflected in the Court's Memorandum and Order, the dates of breach are June 18, 2003 with respect to the $249,171.00 in damages arising from the breach of warranty in the Purchase

2

## Legal Standard

General Laws c. 93A, § 11, provides, in part: "If the court finds in any action commenced hereunder, that there has been a violation of section 2, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action." The purpose of such attorney's fee provision is to deter unfair and deceptive trade practices. NASCO, Inc. v. Public Storage, Inc., 127 F.3d 148, 154 (1st Cir. 1997). The Massachusetts Supreme Judicial Court recently reiterated the factors to determine the reasonableness of the fees and costs:

> We have said that a judge must examine a number of factors to determine whether an award of attorneys fees and costs is reasonable. See, e.g., Linthicum v. Archambault, 379 Mass. 381, 388-89, 398 N.E.2d 482 (1979). While the amount of a reasonable attorneys fee is largely discretionary, a judge "should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation, and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." Id. "No one factor is determinative, and a factor-by-factor analysis, although helpful, is not required." Berman v. Linnane, 434 Mass. 301, 303, 748 N.E.2d 466 (2001).

Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 429 – 430, 837 N.E.2d 1121 (2005) (affirming award of $1 million in attorney's fees where damages awarded were $118,950, and inviting plaintiffs to apply for award of appellate attorney's fees).

"[T]here is no 'pat formula' for computing a fee award under Massachusetts law." Star Fin. Servs., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 16 (1st Cir.1996). Instead, the amount awarded should be determined by what the services were objectively worth. Id. "[F]air market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable

---

and Sale Agreement and September 23, 2004 with respect to the $1,190.00 in damages arising from the breach of the tax indemnification agreement.

attorney's fee under State law as well as Federal law." Fontaine v. Ebtec Corp., 415 Mass. 309, 326, 613 N.E.2d 881 (1993).

"As a rule, where a single chain of events gives rise to both a common law and a chapter 93A claim, apportionment of legal effort is not necessary." Industrial Gen. Corp. v. Seguioa Pac. Systems, 849 F.Supp. 820, 826 (D.Mass.1994), *rev'd and remanded on other grounds* 44 F.3d 40 (1st Cir.1995). "'In fact, 93A claims are typically based on an underlying common law claim and attorney's fees may be assessed for all phases' of litigation." Polycarbon Indus., Inc. v. Advantage Engineering, Inc., 260 F.Supp.2d 296, 308 (D.Mass.2003) (quoting Arthur D. Little Intern., Inc. v. Dooyang Corp., 995 F.Supp. 217, 222 (D.Mass.1998)); Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 177, 705 N.E.2d 279 (1999) (appropriate to award fees where common-law and G.L. c. 93A claims are underpinned by "a common core of facts").

### Reasonable Attorney's Fees and Costs

As is set forth in more detail in the Kerester Affidavit, Georto, after its counsel's application of $41,731.25 in courtesy discounts and "no charge" reductions, incurred - and therefore seeks the assessment and award of - the following reasonable attorneys' fees and costs in connection with its claims against Gateman under Section 11 of Chapter 93A:[3]

---

[3] Georto's counsel incurred $41,731.25 in time for which it ultimately did not charge Georto. While such additional amount would be appropriately assessed and awarded, Georto does not request that such additional amount be assessed.

4

| | |
|---|---|
| Reasonable Fees Through July 5, 2007 | $263,157.50 |
| Reasonable Costs/Expenses (including expert fees) | $31,118.64 |
| Fees in Preparing this Application | $12,437.50 |
| Total Reasonable Fees and Costs: | $306,713.64[4] |

Kerester Affidavit at ¶ 16.  Given that a single chain of events (Gateman's conduct regarding the buried demolition debris at the Property) gave rise to Georto's common law and Chapter 93A claims and that such claims are inextricably intertwined, it is appropriate to assess and award to Georto all of its reasonable attorney's fees[5] and costs incurred in this litigation.

As is noted above and as is reflected in the Court's Memorandum and Order, Georto succeeded on all of its claims and obtained judgment for the full amount of the requested damages (with the limited exception of the Court's decision not to award multiple damages for Gateman's violation of Chapter 93A).  More specifically, the Court awarded to Georto damages of $250,361.00 plus prejudgment interest at the statutory rate of 12% from the respective dates of breach (which such prejudgment interest totals $121,473.73 as of July 3, 2007, with a per diem of $82.31).

Simply put, and as is detailed in the Kerester Affidavit and is apparent from a review of the Court's docket reflecting nearly one hundred entries over nearly three years, the fees and costs incurred by Georto were necessary in order to obtain the judgment against Gateman for the out of pocket remediation costs paid by Georto to clean up the buried demolition debris.  Given

---

[4] Such amounts do not include the additional attorney's fees and costs incurred by Georto in connection with the related action of Georto, Inc. v. Jackson Gateman, et als, pending before this court, Civil Action No. 06-11034NG, arising from Gateman's fraudulent conveyances.

[5] Such fees were based on contemporaneous time records for time incurred by experienced litigation counsel at the discounted rate of $250 per hour.  Moreover, pursuant to the application

that Gateman refused to cause the debris to be removed and refused to pay Georto anything for the cost of such remediation, Georto had no choice but to pursue its claims against Gateman. Similarly, given Gateman's conduct throughout the litigation, Georto had no choice but to proceed to trial and thereby incur the attorney's fees and costs that are the subject of this application.

Gateman was given every opportunity to avoid such attorney's fees and costs but failed to do so. When presented with the opportunity by Mr. Hawkins immediately upon Georto's discovery of the buried demolition debris, Gateman refused to take any responsibility for the debris and instead invited Georto to sue him. See Kerester Affidavit at ¶ 24A (and Trial Transcript citations referenced therein). When presented with the opportunity by Georto's counsel upon issuance of its demand notice, Gateman failed to make any offer to pay for any cleanup and even failed to make any arrangements to cause an expert to inspect the Property and assess the required remediation. (Instead, Gateman, after the fact, vigorously contested the scope of the remediation and the resulting costs.) Kerester Affidavit at ¶ 24A (and Trial Transcript citations referenced therein). When presented with the opportunity in connection with the scheduling conference requirements (one year after Georto's discovery of the debris and long after Georto paid nearly $250,000 for the cleanup), Gateman failed to make any good faith offer and instead made a de minimus offer of $10,000. Gateman also refused to participate in mediation at that time, stating (by his counsel) that he needed to complete formal discovery before mediation could be considered (even though Georto's counsel offered to make such information available without need for formal discovery). Kerester Affidavit at ¶ 24B. When presented with the opportunity in a meeting on May 2, 2006 (over two years after Georto's

---

of $41,731.25 in courtesy discounts and reductions over and above the discounted rate, Georto

6

discovery of the buried debris and nearly two years after the lawsuit was filed), Gateman offered only a small fraction of Georto's out-of-pocket remediation costs (and even then proposed to pay such limited amount over time) and even reneged on his offer and agreement to reimburse Georto in travel costs (which amounted to $468.60) to fly from Miami to Boston for the meeting (demonstrating again that any so-called offer from Gateman is suspect). Kerester Affidavit at ¶ 24C. When presented with the opportunity at a settlement meeting at the Court's behest after seven days of trial (on which day the Court had stated to all counsel that Gateman's liability to Georto was clear), Gateman offered significantly less than half of the reasonably expected judgment amount. Kerester Affidavit at ¶ 24D.

As is set forth at paragraph 23 of the Kerester Affidavit and is reflected in the Court's docket, the amount of fees and costs were significantly increased by the following:

A. As is detailed in Georto's post-trial submissions (Georto's Requests for Findings of Fact, Requests for Rulings of Law, and Response to Gateman's Requests), Gateman continually changed his story and reshaped his position and contentions (not only in his answers to interrogatories and deposition testimony but also at the trial itself) and thereby caused Georto to incur substantial additional fees and expenses. For example:

   a. While Gateman ultimately acknowledged (only after Georto's discovery of the Family Dollar engineer photos and sketches clearly showing the location of the debris ramp) that the ramp had extended substantially onto the Georto side, he had initially testified (in his deposition, as referenced in his trial testimony, prior to the discovery of the Family Dollar engineer photographs) that the debris ramp extended only onto the Family Dollar side; i.e., that there <u>never</u> was a ramp on the

has discounted the requested amount of fees for the time incurred in the litigation.

    Georto side.  [See Trial Transcript at Vol. VI at p. 6].  Had those photos not been obtained by Georto and introduced as evidence, Gateman likely would have continued to testify at trial that the ramp had not extended onto the Georto side.

b. Similarly, Gateman testified in his deposition (prior to becoming aware of the Family Dollar engineer photographs – see Trial Exhibit 3C1-172 depicting the extensive amounts of debris) and asserted in his answers to interrogatories that there was an "inconsequential" amount of debris that could "fit in a trash bag." [See Trial Transcript Volume V at p. 124]  When questioned about the extensive amounts of debris revealed by the excavation and test pits in April, 2004, Gateman testified that "I saw dirt. To me it was dirt."  [See Trial Transcript at Vol. VI at p. 113]  Stated otherwise, Gateman denied that which should have been stipulated.

c. Even though he had not only testified in his deposition but actually had <u>stipulated</u> in the parties' Stipulations of Fact (Exhibit 1) that the debris ramp had been created by a prior demolition contractor (i.e., before the buildings were demolished and the debris was sorted by Roberts) [See Trial Ex. 1 (Stipulation of Facts) at ¶¶2, 3; and Trial Transcript Vol. VI at pp. 36-37], Gateman nonetheless testified at trial that the ramp must have been created by Roberts.  [See Trial Transcript at Vol. VII at p. 20-21]

d. When questioned at his deposition (prior to becoming aware of the Family Dollar engineer photos) as to his knowledge of the ramp as of the time that he was working to compact fill over the ramp in May, 2002, Gateman incredibly testified that he wasn't even aware of the existence of the ramp at that time.  [See Trial

>   Transcript at Vol. VI at p. 10-11]. As the Court noted at page 31 of its
>
>   Memorandum and Order, Gateman's claimed ignorance was "absurd."

Given the evolving landscape as painted by Gateman, Georto's counsel could not even rely on his stipulations let alone his prior testimony. Gateman's deceptiveness and ever-changing versions of events resulted in extensive significant additional preparation work (including preparation for trial, additional witnesses, post-trial submissions, etc.) and generally lengthened the litigation and the trial.

B. Gateman failed to comply with his discovery obligations, including failing to provide any answer to numerous interrogatories and failing to produce various documents (notwithstanding repeated requests by Georto's counsel, including but not limited to final requests made pursuant to pre-motion conferences), thereby necessitating the preparation of motions to compel and supporting affidavits/memoranda (resulting in Orders compelling further discovery) and the continuation of Defendant's deposition for examination regarding the additional answers/documents.

C. Gateman, by his counsel, failed and refused Georto's request that Gateman set aside funds in escrow to serve as pre-judgment security and accordingly left Georto with no choice but to prepare and file its motion for trustee process (and detailed supporting affidavit and memorandum) so as to obtain some prejudgment security.

D. Georto also proposed numerous additional stipulations of fact for trial (i.e., in addition to those to which Gateman did agree), which were rejected by Gateman.

E. While Georto appeared for trial on August 21, 2006 and was fully prepared to commence trial as scheduled (which such trial was scheduled to proceed after the Court denied

9

Gateman's motion to consolidate and stay the trial), Georto was required to again prepare for the rescheduled trial on September 11, 2006.

F. While initially demanding a jury trial, Gateman ultimately (but only after the case was called for jury trial on August 21, 2006 and Georto had prepared and submitted its extensive Requests for Jury Instructions) waived such demand such that the rescheduled trial (starting on September 11, 2006) was jury waived.  Accordingly, Georto not only prepared and filed Requests for Jury Instructions but also prepared and filed extensive Proposed Findings of Fact and Proposed Rulings of Law.

G. Gateman vigorously pursued various defenses (such as mitigation of damages, contract interpretation, reliance, ignorance, etc.) to no avail and thereby caused Georto to incur significant additional fees and costs (including not only additional attorney's fees but also expert costs).  Gateman's defenses were not only unsuccessful but were unwarranted. For example, Gateman's denials regarding the amount of the demolition debris and his knowledge thereof (including, for example, his knowledge regarding the demolition debris ramp) caused Georto to incur substantial additional costs to prove that which should have been the subject of stipulation.  Similarly, Gateman not only failed to cause or pay for the remediation work but also chose not to cause any expert to inspect the Property prior to the remediation work or to otherwise consult regarding the scope of the remediation work.  Instead, Gateman, long after such work was completed, challenged the scope of the remediation and costs and thereby caused Georto to incur substantial additional costs (including, for example, the costs of engaging the solid waste expert and the additional costs for the geotechnical expert).

H.  Gateman moved to extend the time for completing discovery and for his designation/disclosure of experts and, as a result of his change in counsel and other issues, delayed the trial (over Georto's objections) from April, 2006 until September, 2006.

I.  Defendant had no less than five attorneys who represented Defendant (or, in the case of Peter McGlynn, who purported to represent Defendant but ultimately did not file an appearance) in this matter. While Alan Miller initially represented Defendant upon the filing and service of the Complaint in August, 2004, James Robbins filed his appearance on April 15, 2005 and assumed primary representation of Defendant until such time as Mr. Robbins' Motion to Withdraw was allowed in March, 2006.  Mark McGrath entered his appearance on March 28, 2006, and Carolyn Conway then entered an appearance shortly before trial.  Such changes in counsel not only resulted in the extension of various discovery/disclosure deadlines and the trial being rescheduled from April, 24 2006 to August 21, 2006 (and ultimately to September 11, 2006) but also increased the time incurred due to the lack of continuity.

J.  The litigation and the trial also were lengthened by Gateman's assertion and pursuit (entirely unsuccessful) of third-party claims against Roberts Corp.

K.  Georto's counsel, as counsel for the plaintiff, took the lead in the coordination among counsel and the preparation of joint submissions, such as the joint statement and stipulations (see docket nos. 10, 19, 32), joint pretrial memoranda, witness lists, exhibits, photographs, exhibit lists, and deposition designations/objections to be introduced at trial, etc. (see docket no. 61, 73, 74, 80).

In accordance with the foregoing and as is reflected in the invoices attached to the Kerester Affidavit at Exhibit "A" (as well as the summary of fees and expenses/advances attached to the Kerester Affidavit at Exhibit "D"), the majority of the fees and costs over the nearly three years of this litigation were incurred in connection with extensive discovery (including eight depositions, four of which were taken by Gateman, in addition to interrogatories, document production, motions to compel, etc.) during the time period from April, 2005 through April, 2006, trial preparation (first for the scheduled jury trial on August 21, 2006 and then the jury waived trial starting on September 11, 2006) during the time period from May through September, 2006, eight days of trial and closing arguments in September and October, 2006, and extensive post-trial submissions in October, 2006.

Pursuant to Georto's efforts to settle this matter without need for additional expense, Gateman was periodically made aware of the approximate amount of Georto's fees and expenses being incurred throughout the litigation. Moreover, Georto rejected settlement demands throughout the litigation that were substantially less than he will be required to pay pursuant to the final judgment to be entered. Kerester Affidavit at ¶ 24.

Georto not only prevailed at trial on all of its claims (with the limited exception of its request for multiple damages) and Gateman's defenses, Georto also generally prevailed on all of pre-trial motions (motions to compel discovery, motion for trustee process) and other submissions (opposition to Gateman's motion to consolidate cases and stay trial). Moreover, Georto refrained from preparing and filing a motion for summary judgment given the attendant additional expense and the determination that such a motion might not eliminate the need for trial. Given the expected additional expense, including additional expert fees, Georto also did not pursue recovery of its lost profits resulting from the delays in construction caused by the

discovery of the debris and resulting remediation work. While Gateman utilized two attorneys to try the case (Carolyn Conway and Mark McGrath) and Third-Party Defendant also utilized two attorneys throughout the trial (J. Mark Dickinson and Dean Hutchison), Gateman utilized one attorney at trial (as well as a paralegal) so as to reduce the costs for the trial. Kerester Affidavit at ¶¶ 21, 22.

## Conclusion

For the foregoing reasons, Georto requests that the Court assess and award to Georto $306,713.64 in reasonable attorney's fees and costs pursuant to this Court's Memorandum and Order dated July 3, 2007 and enter final judgment in accordance with the proposed final judgment attached hereto as Exhibit "A" and enter such further relief as is just and appropriate.

**PLAINTIFF GEORTO, INC.**
By its attorney

/s/ Dale Kerester
Dale Kerester, Esq., BBO # 548385
Lynch, Brewer, Hoffman & Fink LLP
101 Federal Street
22nd Floor
Boston, MA 02110
617-951-0800
dkerester@lynchbrewer.com

Dated:  August 3, 2007

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

/s/ Dale Kerester
Dale Kerester

Dated:  August 3, 2007

Exhibit "A" (Proposed Final Form of Judgment)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEORTO, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM GATEMAN, INDIVIDUALLY | ) | CIVIL ACTION NO. 04-11730 NG |
| and as TRUSTEE OF 200 UNION | ) | |
| STREET REALTY TRUST, | ) | |
|     Defendant and | ) | |
|     Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERTS CORPORATION, | ) | |
|     Third Party | ) | |
|     Defendant. | ) | |

## JUDGMENT

This action came on trial before the Court, the Honorable Nancy Gertner, United States District Judge, presiding. The issues having been duly tried, and in accordance with the Memorandum and Order dated July 3, 2007, the Order on plaintiff Georto, Inc.'s Application for Reasonable Attorney's Fees and Costs, and the June 12, 2006 Order on Third Party Defendant Roberts Corporation Motion for Summary Judgment, JUDGMENT is hereby entered as follows: JUDGMENT is hereby entered in favor of plaintiff Georto, Inc. ("Georto") and against defendant William Gateman, individually and as Trustee of the 200 Union Street Realty Trust ("Gateman"), on all counts of Georto's Complaint (Count One: Breach of Warranty; Count Two: Fraud; Count III: Negligent Misrepresentation; Count Four: Breach of the Implied Covenant of Good Faith and Fair Dealing; and Count Five: Violation of Mass. Gen. L. c. 93A, §§ 2, 11) in the amounts of Two Hundred Forty Nine Thousand One Hundred Seventy One Dollars

($249,171.00) for removal of debris and replacement with fill and One Thousand One Hundred Ninety Dollars ($1,190.00) for payment of real estate taxes, for a total of Two Hundred Fifty Thousand Three Hundred and Sixty One Dollars ($250,361.00), together with prejudgment interest at the Massachusetts statutory rate of 12% per annum from the dates of breach (June 18, 2003 with respect to the $249,171.00 in damages arising from the breach of warranty in the Purchase and Sale Agreement and September 23, 2004 with respect to the $1,190.00 in damages arising from the breach of the tax indemnification agreement); And it is further ADJUDGED that Georto is AWARDED reasonable attorney's fees and costs in the amount of Three Hundred Six Thousand Seven Hundred Thirteen Dollars and Sixty Four Cents ($306,713.64) pursuant to M.G.L. c.93A, §11; and JUDGMENT is hereby entered in favor of third-party defendant Roberts Corporation and against Gateman on all counts of Gateman's Third Party Complaint.

    Dated at Boston, Massachusetts, the _ day of August, 2007.

_____

Clerk of Court