UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEORTO, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM GATEMAN, INDIVIDUALLY | ) | CIVIL ACTION NO. 04-11730 NG |
| and as TRUSTEE OF 200 UNION | ) | |
| STREET REALTY TRUST, | ) | |
| Defendant and | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERTS CORPORATION, | ) | |
| Third Party | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF DALE C. KERESTER IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR REASONABLE ATTORNEY'S FEES AND COSTS**

I, Dale C. Kerester, do depose and state as follows:

1. I am a litigation partner in the law firm of Lynch, Brewer, Hoffman & Fink, LLP, a firm with twenty-two lawyers located in Boston, Massachusetts, and am counsel for Plaintiff Georto, Inc. ("Georto") in the above captioned litigation.

2. I submit this affidavit in support of Plaintiff Georto, Inc.'s application for reasonable attorney's fees and costs pursuant to the Court's Memorandum and Order dated July 3, 2007. I have personal knowledge of the matters set forth herein.

3. I received my Batchelor of Science degree from the Wharton School of the University of Pennsylvania in 1983 and my Juris Doctor degree from the University of Pennsylvania Law School in 1986. I am admitted to practice in the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts, and the United States Court of Appeals for the First Circuit.

4. I have specialized in Commercial Litigation since 1986, specifically including the litigation of many disputes involving real estate, fraud, and unfair and deceptive practices. I have tried cases in the trial courts of the Commonwealth of Massachusetts (both the Superior Court and the District Court) and in the United States District Courts for the Districts of Massachusetts, Maine, and the Southern District of New York, as well as before various administrative and arbitration tribunals. I was named as one of Massachusetts "Super Lawyers" in Business Litigation for 2006. Prior to joining Lynch, Brewer, Hoffman & Fink, LLP in 1998, I practiced law at Jager Smith (1990 – 1998) and at Peabody & Brown (1986-1989; now known as Nixon Peabody).

## Representation of Georto - Overview

5. From on or about April 21, 2004 to the present, I have provided legal services to Georto in connection with the above captioned litigation. As is set forth in more detail below, I participated in every aspect of this litigation – from the initial investigation upon Georto's discovery of the buried demolition debris over three years ago (in April, 2004) through receipt of the Court's Memorandum and Order dated July 3, 2007 (after an eight day jury waived trial in September, 2006). I have been responsible for all work rendered by this firm for Georto on this matter and have been responsible for the client billing.

6. In accordance with my standard practice, I maintained contemporaneous time records reflecting my work for Georto on this matter - including detailed descriptions of the services rendered on each date and the amount of time incurred on each such date. Similarly, in accordance with the firm's standard practices, I caused each such other attorney (with limited exception, only one other attorney other than myself worked on this matter) or paralegal who

2

worked on this matter to maintain contemporaneous time records reflecting their services and a detailed description of such services.

### Reasonable Attorney's Fees and Costs

7.  After the eight day jury waived trial and upon consideration of the parties' respective extensive requests for findings of fact and rulings of law, the Court, pursuant to its 48 page Memorandum and Order dated July 3, 2007, ordered that Judgment enter in favor of Georto and against William Gateman, individually and as Trustee of the 200 Union Street Realty Trust ("Gateman"), on all counts of Georto's Complaint (breach of contract, fraud, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and violation of Section 11 of Massachusetts General Laws Chapter 93A). All of Georto's claims arose from a common core of facts - Gateman's conduct regarding the buried demolition debris at the property located at 200 Union Street, Lynn, Massachusetts (the "Property"). With the limited exception of the Court's decision not to award multiple damages under Chapter 93A, the Court ruled in Georto's favor and against Gateman on all of Georto's claims (including the full amount of damages) and Gateman's defenses thereto. The Court awarded Georto damages in the amount of $250,361.00, prejudgment interest at the statutory rate of 12% per annum from the dates of breach, and reasonable attorneys fees and costs under Chapter 93A.

8.  I undertook the responsibility of reviewing the Lynch, Brewer, Hoffman & Fink LLP time and billing records in connection with Georto's application for reasonable attorneys' fees and costs pursuant to M.G.L. c. 93A, § 11. I have verified that the time-charges incurred by Georto for this matter from April 21, 2004 through the date of my receipt of the Court's Memorandum and Order on July 5, 2007, after application of extensive courtesy discounts

3

and "no charge" reductions, are $263,157.50.  The costs incurred by Georto (i.e., filing fees, service of process, deposition and trial transcripts, expert witness fees, copying, etc.) through such date are $31,118.64 (of which $14,081.44 was paid for expert witness fees for the two testifying experts, Chad Michaud and Greg Wirsen).    These fees and costs do <u>not</u> include the fees and costs incurred by Georto in connection with the related action of <u>Georto, Inc. v. Jackson Gateman, et als</u>, Civil Action No. 06-11034NG, pending before this Court, which have been entered and billed under a separate billing matter number.

9.  Georto also has incurred $12,437.50 in attorney's fees and costs in connection with the preparation of Georto's application for fees and its proposed judgment, including work on this affidavit.  Such fees were incurred in reviewing nearly three years of pleadings, correspondence, notes, and billing records necessary to prepare the application, including this affidavit.  My time for such work, 45.25 hours, was recorded at the discounted rate of $250 per hour.  I also caused an accounting paralegal in our office to prepare the attached spreadsheets and to otherwise assist in the preparation of the application and exhibits.  Such time, 9.0 hours, was recorded at the discounted rate of $125 per hour.  Such fees and costs do not include additional time incurred since July 5 arising from the issuance of the Memorandum and Decision.

10. Attached hereto as Exhibit A to this affidavit are true and accurate copies of invoices that I issued to Georto on this matter, reflecting the time spent by attorneys and paralegals on the various services provided to Georto on this matter, the rates charged, the expenses and advances incurred, the time for which I issued no charge, and the amounts of the courtesy discounts. The invoices set forth detailed descriptions of the services provided based on the contemporaneous time records.  (I have redacted the invoices so as to block out descriptions

of the content of attorney-client privileged communications between myself and Mr. Hawkins so as to avoid any waiver of such privilege. All such communications concerned this litigation.) All invoices have been paid by Georto, with the exception of the invoice I issued on July 27, 2007.

11. Attached hereto as Exhibit B is a summary spreadsheet reflecting the total expenses and advances by category (including $6,534.05 in expert witness fees paid directly by Georto to S.W. Cole Engineering, Inc.). As is reflected in the summary, and among other expenses, Georto incurred $14,081.44 in costs for the expert services rendered by Chad Michaud (the geotechnical expert from S.W. Cole Engineering, Inc.) and by Greg Wirsen (the solid waste expert from Green Seal Environmental) – both of whom I caused to be engaged to review and consider evidence, prepare expert reports, prepare for testimony at trial, and attend and testify at trial in relation to certain of Gateman's proffered defenses. The Reports prepared by the experts were admitted as Trial Exhibit Nos. 39, 40, and 41.

12. Attached hereto as Exhibit C are copies of an agreement dated May 5, 2004 between Georto and S.W. Cole Engineering, Inc., pursuant to which I caused Georto to incur and directly pay to S.W. Cole Engineering expert fees of $1,500 for geotechnical services (as was referenced in the trial testimony of James Hawkins and Chad Michaud, P.E. and as was reflected in the expert Report admitted as Trial Exhibit No. 39), and an invoice from S.W. Cole in the amount of $5,034.05 for services rendered in connection with trial preparation and attendance at portions of the trial (which was also paid directly by Georto). I have also attached at Exhibit C a copy of a Georto accounting report reflecting such payments. The balance of the expert fees were paid by my firm and then invoiced to Georto. I have also

attached at Exhibit C copies of the additional invoices from S.W. Cole and Green Seal Environmental.

13. Attached hereto as Exhibit D is a spreadsheet setting forth a summary of the fees, expenses, and advances incurred by Georto in this litigation.

14. I am familiar with the rates charged by comparable firms in the Boston area. The rates set forth in the invoices are fair and reasonable and are comparable to, and likely lower than, the rates charged by such other firms for attorneys of comparable experience and qualifications.

15. My standard hourly rate in 2004 was $280 per hour and is currently $315 per hour. I agreed to charge Georto, however, a discounted rate of $250 per hour for my services throughout this litigation, which I believe is extremely reasonable given my level of experience. As is reflected in the invoices attached at Exhibit "A", I also issued substantial courtesy discounts to Georto totaling $34,080.00 and also did not charge for an additional $7,651.25 of time incurred (such time is reflected in the time description as "No Charge"). As such, this firm rendered an additional $41,731.25 in services to Georto (at the discounted hourly rates) in this litigation over and above the attorney's fees charged to Georto.

16. The total amount of Georto' reasonable attorneys' fees and costs incurred to date in this litigation, after application of $41,731.25 in courtesy discounts and "no charge" reductions, is $306,713.64, calculated as follows:

| | |
|---|---|
| Reasonable Fees Through July 5, 2007 | $263,157.50 |
| Reasonable Costs/Expenses (including expert fees) | $31,118.64 |
| Fees in Preparing this Application | <u>$12,437.50</u> |
| Total Reasonable Fees and Costs: | $306,713.64 |

17. I believe the fees and costs incurred by Georto are fair and reasonable.  As is set forth in

more detail below, the fees and costs were necessary in order to obtain judgment against

Gateman for the out of pocket remediation costs incurred by Georto to clean up the buried

demolition debris.

## **Work**

18. As is set forth in more detail in the detailed invoices attached at Exhibit A, my

responsibilities included (but were not limited to):

A.     investigation and verification of the facts relating to Georto's discovery in April, 2004 of the demolition debris upon commencement of construction at the Lynn property, including interviews of client and of other fact witnesses, review of GEC environmental report, purchase and sale agreement, reliance letters, emails, related documents, and information regarding Gateman, and attention to engagement of expert geotechnical engineer;

B.     analysis of Georto's claims, including attention to DEP regulations;

C.     preparation of correspondence directed to Gateman notifying Gateman of Georto's claims and providing an opportunity for Gateman and/or his representatives to inspect the Property prior to any remediation work and to resolve such claims without litigation;

D.     efforts to settle matter before any litigation;

E.     attention to remediation work, including bids;

F.     preparation of the Complaint (filed on August 5, 2004), including preparation of drafts, communications with client regarding same, revisions, filing, and service, and preparation of Civil Action Cover Sheet, Category Sheet, and Corporate Disclosure;

G.     review of and attention to additional pleadings, including Answer, Amended Answer, Third-Party Complaint, and Answer to Third-Party Complaint, including review and analysis of defenses to Georto's claims;

H.     preparation of drafts and revisions to Joint Statement and Certification, and attendance at Scheduling Conference;

I.      compliance with Automatic Disclosure Requirements, including but not limited to identification of witnesses, identification of damages, review and production of extensive documentation (including review and production of voluminous emails (approximately four hundred pages), construction documents, etc.) and corresponding privilege review/log and redaction;

J.      preparation of proposed Confidentiality Stipulation;

K.      preparation of discovery requests, including Interrogatories (directed to Defendant), Requests for Production of Documents (directed to Defendant and to Third-Party Defendant), and Notices of Deposition / document Subpoenas (for William Gateman, Jack Gateman, representatives of third-party defendant Roberts Corp., Scott Wetherbee, Family Dollar, Goldman Environmental, and Loveland Trucking);

L.      receipt and review of Automatic Disclosures and documents produced by Gateman and by Third-Party Defendant Roberts Corp.;

M.      Rule 37 conferences regarding failure of Gateman to comply with discovery obligations;

N.      work on detailed Responses / Objections to Interrogatories and Requests for Production of Documents served by Gateman and by Third-Party Defendant;

O.      preparation for depositions (including outlines, identification of exhibits, meeting with witnesses, etc.), including depositions noticed on behalf of Georto (William Gateman, Jack Gateman, Scott Wetherbee, and Kevin Doherty and Robert Stalker of Roberts Corp.) as well as depositions noticed on behalf of Gateman (James Hawkins of Georto, Phil Morin and Steve McIntyre of PM Construction, Lauren McKinley of GEC Environmental, Rule 30(b)(6) designee for Mattachio Construction, and Georto' geotechnical expert);

P.   taking or defending the depositions of:

    i.    William Gateman (noticed by Georto)

    ii.   Kevin Doherty (noticed by Georto)

    iii.  Robert Stalker (noticed by Georto)

    iv.   Scott Wetherbee (noticed by Georto)

    v.    James Hawkins (noticed by Gateman)

    vi.   Phil Morin (noticed by Gateman)

    vii.  Steve McIntyre (noticed by Gateman)

    viii. Lauren McKinley (noticed by Gateman)

    (Jack Gateman failed to appear for his deposition notwithstanding multiple subpoenas, and Gateman's counsel did not ultimately take the depositions of Mattachio or of Georto's geotechnical expert);

Q.      preparation of Motion to Compel Answers to Interrogatories and supporting Memorandum, resulting in Order compelling further answers to interrogatories per Defendant's briefing;

R.      preparation of Motion to Compel Production of Documents, resulting in Order compelling production of additional documents;

S.      attention to Gateman's change of counsel and motion to extend deadlines (re: disclosures, etc.), including impact on trial schedule, communications with new counsel regarding case status and outstanding issues, and attendance at hearing;

T.      communications with Attny McGlynn (who stated that he would be filing appearance on behalf of Gateman) regarding claims, defenses, settlement positions, and related issues;

U.      preparation of Joint Statement and Stipulation pursuant to hearing regarding Gateman's Motion to Extend Deadlines and Motion to Withdraw as Counsel;

V.      receipt and review of additional documents produced by Gateman per Court Order allowing Motion to Compel;

W.      preparation for and taking further deposition of Gateman regarding discovery produced in response to Court's Order;

X.      review and digest of pertinent deposition testimony for use at trial and in support of motion for prejudgment security;

Y.      preparation of Motion for Trustee Process (after Gateman's counsel declined to set aside funds in escrow), with supporting Affidavit (with attached deposition testimony), Memorandum, and Reply Memorandum, and attention to issuance and service of Trustee Summons;

Z.      engagement of geotechnical expert (Chad Michaud) and of solid waste expert (Greg Wirsen), provide information and documentation to same for review and consideration, and attention to compliance with Expert Disclosure requirements for each;

AA.     review of and attention to Third-Party Defendant's Motion for Summary Judgment and Gateman's Opposition thereto, including preparation of Response to Statement of Material Facts insofar as they related to Georto's claims;

BB.     participation in settlement discussions, including client meeting with William and Jack Gateman in Boston as requested by Gateman's counsel; follow up with Defendant's counsel as to Gateman's failure to reimburse Georto for air travel expense from Florida as per agreement;

CC.     preparation of Rule 26 Disclosures, including Supplemental Disclosures based on production of additional documents by non-parties;

DD.     review of Gateman's "expert disclosure" and of pre-trial disclosures, and preparation of Objections thereto based on failure to comply with requirements;

EE.     receipt and review of documents produced by non-parties Family Dollar and by its engineering firm (Mactech), including photographs and charts;

FF.     preparation of Joint Pretrial Memoranda, including Joint Exhibit List, Witness List, etc.;

GG.  preparation of case for jury trial scheduled for August 21, 2006, including but not limited to:

    i.   meetings and conferences with witnesses (fact and expert);

    ii.   preparation of witness examination outlines;

    iii.   designation of deposition testimony to be read into evidence;

    iv.   exhibits, including documents and electronic;

    v.   chalks/demonstratives;

    vi.   review and identification of deposition testimony for admissions and impeachment;

    vii.   attention to evidentiary issues;

    viii.   preparation of proposed stipulations;

    ix.   legal research as to certain elements of claims / defenses;

    x.   preparation of Proposed Jury Instructions; and

    xi.   preparation of Opening Statement;

HH.  attention to Gateman's Emergency Motion to Consolidate Cases, and preparation of Opposition thereto;

II.  preparation for and attendance at Final Pretrial Conference held on August 17, 2006;

JJ.  appearance for trial on August 21, 2006;

KK.  attention to Gateman's Motion To Continue Trial from August 21, 2006;

LL.  participation in mediation before Magistrate Judge Bowler in accordance with Assignment to ADR Provider;

MM. attention to Gateman's waiver of jury trial, including revisions to Jury Waiver Stipulation;

NN.  preparation for jury waived trial commencing on September 11, 2006, including but not limited to:

    i.   additional work on witness examination outlines and related preparation;

    ii.   additional meetings and conferences with witnesses (fact and expert);

    iii.   additional work on exhibits and demonstratives;

    iv.   attention to additional deposition testimony for admissions and impeachment; and

    v.   revisions to Opening Statement.

OO.  Trial (eight days), including witness examinations, witness meetings, preparation, etc.:

    i.   September 11

    ii.   September 12

    iii.   September 13

      iv.   September 18

      v.   September 19

      vi.   September 20

      vii.   September 25

PP.   Receipt and review of Trial Transcripts for use in preparation of requests for findings of fact;

QQ.   Preparation of detailed and extensive Proposed Findings of Fact and Proposed Rulings of Law;

RR.   Review of Gateman's Proposed Findings of Fact and Rulings of Law and Third-Party Defendant's Proposed Findings of Fact and Rulings of Law, and preparation of Responses thereto;

SS.   Preparation for Closing Argument, including preparation of outline and of PowerPoint presentation detailing evidence and contradictions in Gateman's testimony;

TT.   Closing Argument on October 27, 2006;

UU.   Extensive communications (telephone calls, letters, emails, and meetings) with counsel for Gateman and counsel for Third-Party Defendant throughout litigation; and

VV.   Extensive communications with and advice to Georto (through James Hawkins) regarding the foregoing.

19. I also directed and supervised the work of a litigation associate, Karin McEwen, who assisted me in this litigation, including the following:

A.  Preparation of discovery requests and of motion to compel; and

B.  Research of pertinent case law and preparation of Requests for Jury Instructions.

I also caused Thomas J. Clemens, a real estate attorney in this office, to incur one-quarter hour of time to address application of the Massachusetts solid waste regulations.  I have attached hereto as Exhibit "E" copies of printouts from Martindale-Hubbell reflecting the education and qualifications of Ms. McEwen and Mr. Clemens.  As is reflected in those printouts, Ms. McEwen received her Juris Doctor degree from New York University in 2001 and was admitted to practice in Massachusetts (2004), New York (2002) and New Jersey

(2001), and Mr. Clemens received his Juris Doctor degree from the University of Michigan and was admitted to practice in Massachusetts in 1985.

20. I also directed and supervised the work of certain paralegals (Dan Fink, Alana Van der Mude, Megan Sturbridge, and Emily Graefe) who assisted me at various times during the three years of litigation, including the following work:

A.  Fact investigation, including review of Lynn Building Department files and of Lowell Superior Court case file re: prior litigation regarding the Property;

B.  Preparation for trial, including digesting of deposition transcripts for use at trial, identification and organization of exhibits (electronic and hard copy), witness binders, preparation of demonstratives, etc.;

C.  Assistance at trial with exhibits, witnesses, facts, notes, etc.;

D.  Work on materials for use at Closing Arguments, including photographs, conflicts in Gateman's testimony, etc.;

E.  Review of trial transcripts for use in Requests for Findings of Fact; and

F.  Review of Gateman's Requests for Findings of Fact and Third-Party Defendant's Findings of Fact and identify improper requests / citations and preparation of Responses.

21. As is reflected in the docket, Georto not only prevailed at trial on all of its claims (with the limited exception of its request for multiple damages) and Gateman's defenses, Georto also generally prevailed on all of pre-trial motions (motions to compel discovery, motion for trustee process) and other submissions (opposition to Gateman's motion to consolidate cases and stay trial).  I refrained from preparing and filing a motion for summary judgment given the attendant additional expense and my determination that such a motion might not eliminate the need for trial.  Moreover, given the expected additional expense, including additional expert fees, Georto did not pursue recovery of its lost profits resulting from the delays in construction caused by the discovery of the debris and resulting remediation work.

12

22. While William Gateman utilized two attorneys to try the case (Carolyn Conway and Mark McGrath) and Third-Party Defendant also utilized two attorneys throughout the trial (J. Mark Dickinson and Dean Hutchison), I did not utilize another attorney at trial but instead utilized a paralegal so as to reduce the costs for the trial. I also reduced costs by utilizing Mr. Hawkins to actively assist me in the preparation for trial and post-trial submissions.

23. The amount of attorney's fees and expenses incurred by Georto on this matter were significantly impacted (increased) by the following:

A. As is detailed in Georto's post-trial submissions (Georto's Requests for Findings of Fact, Requests for Rulings of Law, and Response to Gateman's Requests), Gateman continually changed his story and reshaped his position and contentions (not only in his answers to interrogatories and deposition testimony but also at the trial itself) and thereby caused Georto to incur substantial additional fees and expenses. For example:

   a. While Gateman ultimately acknowledged (only after Georto's discovery of the Family Dollar engineer photos and sketches clearly showing the location of the debris ramp) that the ramp had extended substantially onto the Georto side, he initially testified (in his deposition, as referenced in his trial testimony, prior to the discovery of the Family Dollar engineer photographs) that the debris ramp extended only onto the Family Dollar side; i.e., that there never was a ramp on the Georto side. [See Trial Transcript at Vol. VI at p. 6]. Had those photos not been obtained by Georto and introduced as evidence, Gateman likely would have continued to testify at trial that the ramp had not extended onto the Georto side.

   b. Similarly, Gateman testified in his deposition (prior to becoming aware of the Family Dollar engineer photographs – see Trial Exhibit 3C1-172 depicting the

extensive amounts of debris) and asserted in his answers to interrogatories that

there was an "inconsequential" amount of debris that could "fit in a trash bag."

[See Trial Transcript Volume V at p. 124]  When questioned about the extensive

amounts of debris revealed by the excavation and test pits in April, 2004,

Gateman testified that "I saw dirt. To me it was dirt."  [See Trial Transcript at

Vol. VI at p. 113]  Stated otherwise, Gateman denied that which should have been

stipulated.

c.   Even though he had not only testified in his deposition but actually had <u>stipulated</u>

in the parties' Stipulations of Fact (Exhibit 1) that the debris ramp had been

created by a prior demolition contractor (i.e., before the buildings were

demolished and the debris was sorted by Roberts) [See Trial Ex. 1 (Stipulation of

Facts) at ¶¶2, 3; and Trial Transcript Vol. VI at pp. 36-37], Gateman nonetheless

testified at trial that the ramp must have been created by Roberts.  [See Trial

Transcript at Vol. VII at p. 20-21]

d.   When questioned at his deposition (prior to becoming aware of the Family Dollar

engineer photos) as to his knowledge of the ramp as of the time that he was

working to compact fill over the ramp in May, 2002, Gateman incredibly testified

that he wasn't even aware of the existence of the ramp at that time.  [See Trial

Transcript at Vol. VI at p. 10-11].  As the Court noted at page 31 of its

Memorandum and Order, Gateman's claimed ignorance was "absurd."


I could not even rely on Gateman's stipulations let alone his prior testimony.  Gateman's

deceptiveness and ever-changing versions of events resulted in extensive significant

additional preparation work (including preparation for trial, additional witnesses, post-trial submissions, etc.) and generally lengthened the litigation and the trial.

B.  Gateman failed to comply with his discovery obligations, including failing to provide any answer to numerous interrogatories and failing to produce various documents (notwithstanding repeated requests by me, including but not limited to final requests that I made pursuant to pre-motion conferences), thereby necessitating the preparation of motions to compel and supporting affidavits/memoranda (resulting in Orders compelling further discovery) and the continuation of Defendant's deposition for examination regarding the additional answers/documents.

C.  Gateman, by his counsel, failed and refused my request that Gateman set aside funds in escrow to serve as pre-judgment security and accordingly left Georto with no choice but to prepare and file its motion for trustee process (and detailed supporting affidavit and memorandum) so as to obtain some prejudgment security.

D.  I also proposed numerous additional stipulations of fact for trial (i.e., in addition to those to which Gateman did agree), which were rejected by Gateman.

E.  While Georto appeared for trial on August 21, 2006 and was fully prepared to commence trial as scheduled (which such trial was scheduled to proceed after the Court denied Gateman's motion to consolidate and stay the trial), Georto was required to again prepare for the rescheduled trial on September 11, 2006.

F.  While initially demanding a jury trial, Gateman ultimately (but only after the case was called for jury trial on August 21, 2006 and Georto had prepared and submitted its extensive Requests for Jury Instructions) waived such demand such that the rescheduled

15

trial (starting on September 11, 2006) was jury waived. Accordingly, I not only prepared

and filed Requests for Jury Instructions but also prepared and filed extensive Proposed

Findings of Fact and Proposed Rulings of Law.

G. Gateman vigorously pursued various defenses (such as mitigation of damages, contract

interpretation, reliance, ignorance, etc.) to no avail and thereby caused Georto to incur

significant additional fees and costs (including not only additional attorney's fees but also

expert costs).

H. Gateman moved to extend the time for completing discovery and for his

designation/disclosure of experts and, as a result of his change in counsel and other

issues, delayed the trial (over Georto's objections) from April, 2006 until September,

2006.

I. Gateman had no less than five attorneys who represented him (or, in the case of Peter

McGlynn, who purported to represent Gateman but ultimately did not file an appearance)

in this matter. While Alan Miller initially represented Gateman upon the filing and

service of the Complaint in August, 2004, James Robbins filed his appearance on April

15, 2005 and assumed primary representation of Gateman until such time as Mr.

Robbins' Motion to Withdraw was allowed in March, 2006. Mark McGrath entered his

appearance on March 28, 2006, and Carolyn Conway then entered an appearance shortly

before trial. Such changes in counsel not only resulted in the extension of various

discovery/disclosure deadlines and the trial being rescheduled from April, 24 2006 to

August 21, 2006 (and ultimately to September 11, 2006) but also increased the time

incurred due to the lack of continuity.

16

J.  The litigation and the trial also was lengthened by Gateman's assertion and pursuit (entirely unsuccessful) of third-party claims against Roberts Corp.

K.  As counsel for the plaintiff, I took the lead in the coordination among counsel and the preparation of joint submissions, such as the joint statement and stipulations (see docket nos. 10, 19, 32), joint pretrial memoranda, witness lists, exhibits, photographs, exhibit lists, and deposition designations/objections to be introduced at trial, etc. (see docket no. 61, 73, 74, 80).

24. Throughout my representation of Georto in this matter, I made repeated efforts to avoid the expense of litigation:

A.  Pursuant to my letter dated April 26, 2004 (prior to the remediation work and over three months prior to the filing of the Complaint) and notwithstanding that I understood that Gateman had already rejected Georto's request that Gateman cause the debris to be removed and had instead told Mr. Hawkins to "sue me", I provided Gateman with the opportunity to inspect the Property and to reach an amicable resolution so as to avoid the costs of litigation.  [The trial transcript reflects that Gateman told Mr. Hawkins on April 15, 2004 "look, I'm not going to pay anything to fix the property and you're going to have to sue me."  See Trial Transcript Vol. II at p. 23 and Vol. VI at p. 115]  In fact, as I stated in the letter [See Trial Ex. No. 31], I caused Georto to refrain from proceeding with the remediation work so as to give Gateman the opportunity to inspect the Property prior to such work.  Among other reasons for the opportunity for the inspection, I wanted to avoid any dispute (and the costs of litigating such dispute) about the condition of the Property or the nature and amount of remediation work required.  I did not receive any

written response to my letter. Moreover, Gateman failed and refused to make any arrangements with me to cause the Property to be inspected by any expert on his behalf or to confer with Georto or its geotechnical expert about the scope of the required remediation work. [In fact, Gateman admitted at trial that he never made any arrangements to have any kind of a geotechnical expert or solid waste expert or any other expert to come in and inspect the property. See Trial Transcript at Vol. VI at p. 116.] Instead, Gateman, pursuant to his contentions in the litigation, denied that there was any demolition debris on the Property other than an "inconsequential" amount of debris that he claimed would fit in a "trash bag" and vigorously litigated his after-the-fact contention that the remediation work should have been performed in some other way. Gateman admitted at trial [see Trial Transcript at Vol. VII at p. 126] that he made no offer to cause the demolition debris to be removed. Gateman, after telling me in April, 2004 that he thought the costs for removing the demolition debris were too high and failing to offer to pay <u>anything</u> for such removal, asked me in a telephone call whether Georto would be interested in reselling the property to him at the original purchase price. Gateman did not ever make such an inquiry in writing and didn't offer to make any payment for Georto's costs, expenses, and damages (as the evidence at trial demonstrated, Georto, prior to its discovery of the debris, had not only entered into a certain construction loan but had also had purchased the building for the Property and had entered into a contract for the construction of the building), didn't offer to indemnify Georto (i.e., for any liability resulting from Georto being in the chain of title or for Georto's contractual indemnification of its lender), and didn't otherwise make any offer to account for the impact of any resulting delay in locating a suitable property for the Aarons store.) In fact,

18

Gateman made no offer to pay Georto anything for the remediation work until Gateman's counsel extended a de minimus $10,000 offer shortly prior to the scheduling conference held April 25, 2005 (over one year after Georto's discovery of the demolition debris and long after Georto had paid nearly $250,000 for such remediation work).

B.  As he stated to the Court at the scheduling conference held on April 25, 2005, Gateman's counsel (James Robbins) reported to the Court that Gateman would not consider participating in mediation until after formal discovery was concluded.  At the conclusion of the scheduling conference but before leaving the courtroom, I specifically offered to provide Gateman / Mr. Robbins with whatever information they might want in order to consider mediation/settlement - without need for formal discovery requests – including making Mr. Hawkins and Georto's contractor available for a meeting.  I also encouraged Mr. Robbins to cause Gateman to reconsider his settlement position (Gateman had made only the negligible $10,000 offer shortly prior to the scheduling conference) and specifically stated to him that the failure to consider mediation / settlement at that time would only cause the parties to incur more attorney's fees and thereby make settlement more difficult.  Notwithstanding the foregoing and additional similar appeals that I made to Mr. Robbins, Mr. Robbins stated to me on April 25, 2005 (and again on later dates) that he needed to proceed with formal discovery before Gateman would consider mediation.  Gateman did not avail himself of the opportunity for mediation at that time and did not do so at all until August 22, 2006 (the day after the jury trial was scheduled to commence).  Similarly, Mr. Robbins did not ever convey any other settlement offer to me (other than the $10,000 offer) and instead withdrew from the case shortly after he had completed discovery on Gateman's behalf.  In connection with my conversations with

Mr. Robbins regarding the settlement demand that I extended to Mr. Robbins by letter dated April 15, 2005, I advised him at that time of the approximate amount of the attorney's fees and costs that Georto had incurred to date (Georto's settlement demand was less than Georto's out-of-pocket costs as of that time - the remediation costs and the attorney's fees incurred to date, without consideration of prejudgment interest).

C.    Shortly after he entered his appearance for Gateman, Mark McGrath requested that we arrange a meeting between Mr. Hawkins of Georto and both Bill Gateman and Jack Gateman to discuss potential settlement.  I expressed to Mr. McGrath my concern about Gateman's settlement position to date (which such position I did not consider to be in good faith) and further stated that Georto was accordingly reluctant to incur the travel expense for a meeting.  I suggested that we instead arrange a conference call so as to avoid the time and expense of travel.  By Mr. McGrath's email to me dated April 25, 2006 and through Mr. McGrath's statements to me in various telephone conferences, Gateman offered to pay for Mr. Hawkins's travel expense for a settlement meeting.  While I had not requested such payment, I accepted the offer on Georto's behalf and confirmed with Mr. McGrath (both orally and in writing) Gateman's agreement to reimburse Georto for Mr. Hawkins roundtrip airfare from Miami to Boston in consideration for Mr. Hawkins traveling to Boston for the meeting (rather than engaging in a conference call).   Mr. Hawkins, Bill Gateman, Jack Gateman, Mr. McGrath, and I met in my offices on May 2, 2006 but were unable to reach any agreement, as Gateman offered to pay only a fraction of the out of pocket remediation cost paid by Georto (and even then only offered to pay such fractional amount over time) and Jack Gateman abruptly left the meeting (which I would characterize as "storming" out of the meeting).

In connection with my conversations regarding Georto's settlement position at that time, I advised Gateman of the approximate amount of attorney's fees that Georto had incurred as of that date.  Notwithstanding his agreement to reimburse Georto's travel costs (as confirmed by e-mails between Mr. McGrath and myself) and my email to Mr. McGrath on May 3, 2006 forwarding an electronic copy of Mr. Hawkins airfare expense verification and requesting the agreed reimbursement, Gateman failed and refused to reimburse Georto for such cost.   The cost (for Mr. Hawkins' roundtrip airfare from Miami to Boston) was a total of $478.60.  As of the date of this affidavit and notwithstanding his agreement to do so, Gateman still has failed to reimburse Georto for that expense.

D. Our efforts to reach settlement during the trial also were unsuccessful.  Gateman's offer during a settlement meeting attended by the parties and counsel on September 20, 2006 (Day 7 of the trial; and after the Court had stated to counsel for all parties that the evidence clearly demonstrated Gateman's liability to Georto), was significantly less than half of the reasonably expected judgment amount (including out-of-pocket remediation costs, prejudgment interest, and reasonable attorney's fees and costs but without consideration of the possibility of multiple damages).   Again, in connection with my conversations with Gateman's counsel regarding Georto's settlement position, I advised Gateman of the approximate amount of attorney's fees and costs that Georto had incurred to date.  During that meeting, Gateman's father, Jack Gateman (who spoke at the meeting on Gateman's behalf), personally insulted Mr. Hawkins, myself, and Gateman's own attorneys and then abruptly terminated the meeting by leaving.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 3rd DAY OF AUGUST, 2007.


/s/ Dale C. Kerester
Dale C. Kerester


**Certificate of Service**

I hereby certify that this document (and the referenced exhibits) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.


/s/ Dale Kerester
Dale Kerester


August 3, 2007