# EXHIBIT "B" TO THE AFFIDAVIT OF DALE C. KERESTER

Exhibit 'B'
Summary of Expenses/Advances

| Invoice Date | Period Covered | Photographs | Parking Charges | Faxes Service | Professional Services | Expert Fee | Witness Fee | Telephone Charges | Outside Photocopying Charges | Delivery Charges | Filing Fees | Travel | Service of Process Fees | Deposition & Transcript Fees | Westlaw Research | Inhouse copying | Messenger Fee | Telefax Expenses | Postage Expenses | Garage Parking | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5-5-2004 | 4/21/04-4/30/04 * | | | | | $1,500.00 | | | | | | | | | | | | | | | $1,500.00 |
| 7-29-2004 | 7/19/04-7/31/04 | | | | | | | | | | | | | | | | $10.00 | $5.96 | $4.42 | | 200.12 |
| 10-5-2004 | 9/3/04-10/31/04 | | | $0.28 | | | | 0.12 | | | | | | | | | | | 0.11 | | 0.11 |
| 11-11-2004 | 11/10/04-4/31/05 | | | $0.40 | | | | 0.11 | | | | | | | $4.20 | | | | 5.48 | | 5.48 |
| 4-28-2005 | 4/10/05-4/31/05 | | | | $345.62 | | | | | | | | 40.00 | | | | | | | | 501.73 |
| 10-18-2005 | 4/1/05-12/31/05 | | | | 345.62 | $2,912.39 | 240.00 | | 278.33 | $24.33 | 150.00 | | | 278.00 | 166.95 | | 14.00 | 1.00 | 17.74 | | 6,457.26 |
| 4-12-2006 | 4/12/06-4/30/06 | | | | | 5,034.95 | | | 258.83 | $38.40 | | $55.75 | | 4,597.00 | 475.55 | | 86.00 | 8.50 | 5.57 | 32.00 | 5,423.09 |
| 5-10-2006 | 11/06-4/30/06 ** | | | | | | | | 354.27 | $78.43 | | | | | 70.65 | | | | 1.15 | | 5,034.65 |
| 9-11-2006 | | | | | | | 303.00 | | | | | | 614.00 | 455.93 | | 46.00 | 32.00 | | | |
| 11-9-2006 | 5/1/06-8/15/06 | | $573.14 | | | $4,635.00 | | | 140.31 | | | | 557.00 | 250.03 | | | 36.00 | 23.58 | | 2,669.02 |
| 7-27-2007 | 8/16/06-7/15/07 | | $92.90 | $0.68 | 345.62 | | $547.00 | 0.23 | 1,916.02 | $143.82 | 150.00 | $193.44 | 1,489.00 | 181.60 | | 66.00 | 1.00 | 1.11 | | |
| | | $ 573.14 | $ 92.90 | $ 0.68 | 345.62 | $4,635.00 | $547.00 | 0.23 | 1,916.02 | $143.82 | 150.00 | $193.44 | 1,489.00 | 2,803.55 | 485.17 | | 222.00 | 53.50 | 53.77 | 32.00 | $11,298.76 |
| | | | | | | | $ 303.00 | | $ 2,996.34 | $ 284.98 | $150.00 | $249.19 | 7,534.28 | $1,974.30 | | | | | | |

* Agreement between Greeto and SW Cole dated 5/5/04, paid directly by Greeto
** SW Cole invoice paid directly by Greeto

# EXHIBIT "C" TO THE AFFIDAVIT OF DALE C. KERESTER

# S.W. COLE
ENGINEERING, INC.

• *Geotechnical Engineering*  • *Field & Lab Testing*  • *Scientific & Environmental Consulting*

**AGREEMENT**

04-0412 S

May 5, 2004

Georto, Inc.
Attention: Mr. James Hawkins
2980 McFarlame Road, Suite 202
Miami, FL 33133

Subject:   Geotechnical Engineering Evaluation – Limited Services
           Proposed Aaron's Furniture
           200 Union Street
           Lynn, Massachusetts

As requested, we have prepared this Agreement to provide a Geotechnical Engineering Evaluation of the suitability of existing fills for foundation support at the proposed site in Lynn, Massachusetts. We understand earthwork construction was started and encountered miscellaneous fill at foundation subgrade along one of the proposed foundation walls. The fill has been described by the contractor to contain soil mixed with primarily burned wood and other miscellaneous material. We understand that a structure previously occupied the property and burned about 2 years ago. The contractor performed test pit explorations to assist in determining the limits of the fill. The explorations encountered a concrete basement foundation and floor slab with the burned wood fill within the interior. We understand that construction has temporarily ceased and the burned wood fill remains as encountered.

**SCOPE OF SERVICES:** As discussed, S.W. COLE ENGINEERING, INC. will observe site conditions and observe and log several additional test pits in the vicinity of the previous and proposed building. We anticipate the test pits will be extended to depth through the fill (provided depth of fill is within reach of excavator). The test pits will be excavated by PM Construction Company and we understand DigSafe clearance has previously been performed by the contractor.

Our scope of services is limited at this time at the request of the client. Services to be performed under this contract are limited to observing the site and test pit explorations and providing an assessment of the suitability of the existing fill for foundation subgrade. Our findings will be presented in a letter report.

**SCHEDULE AND COMPENSATION:** The site visit and test pits are scheduled for May 7, 2004. We will provide our letter report by May 14, 2004. S.W. COLE ENGINEERING, INC. will charge a lump sum fee of $1,500 for our observations of the test pits and letter report of recommendations. If additional services are requested, such as test borings, evaluation of post-construction settlement and other geotechnical recommendations relative to site preparation and earthwork, they will be provided under a separate scope and budget.

SOMERSWORTH, NH OFFICE
350 Rte. 108, Suite 208, Somersworth, NH 03878-1564 ■ Tel (603) 692-0088 ■ Fax (603) 692-0044 ■ E-Mail infosomersworth@swcole.com ■ www.swcole.com
*Other offices in Augusta, Bangor, Caribou, and Gray, Maine*



04-0412 S
May 5, 2004

**TERMS AND CONDITIONS:** It is understood that services provided by S.W.COLE ENGINEERING, INC. are limited by our client and are subject to the Terms and Conditions set forth in Attachment B. It is understood that services under this Agreement are for an assessment of existing fill suitability only and other geotechnical recommendations were not requested by the client at this time. To confirm our understanding, please sign two copies of this Agreement in the space provided below and return one for our files.

**S.W.COLE ENGINEERING, INC.**

Chad B. Michaud, P.E.
Geotechnical Engineer

**AGREEMENT ACCEPTANCE:**

BY:

PRINT: James Hawkins

TITLE: President, Gronto, Inc.

DATE: 5/5/04

2

P0682



# S. W. COLE ENGINEERING, INC.
## TERMS & CONDITIONS
### LIMITED SERVICES

The following Terms and Conditions, together with the attached Proposal/Agreement constitute the terms of the Agreement between S. W. COLE ENGINEERING, INC. ("SWCE") and the party that authorizes performance of services ("Client") with respect to the performance of any services.

## 1. Scope of Services

SWCE shall perform the services described in the attached Proposal/Agreement.

## 2. SWCE's Responsibility

2.1 Perform services in accordance with the attached Proposal/Agreement.

2.2 Perform services in a manner that is consistent with others performing similar work in the geographic area at the time services are rendered.

2.3 Comply with federal, state and local laws in so far as applicable to the services contemplated under this agreement.

2.4 Maintain professional licenses necessary for the performance of services.

2.5 Inform Client of changes in conditions or circumstances that could impact the cost or timing of services.

2.6 Pay all applicable employment taxes and benefits for SWCE's employees.

## 3. Client Responsibilities

3.1 Furnish to SWCE, as needed for performance of SWCE's services, the following:

3.1.1 any existing data, including, without limitation, borings, probings and subsurface explorations, environmental reports, laboratory tests and other data relative to design or construction of the project;

3.1.2 property, boundary, easement, right-of-way, topographic and utility surveys, and property descriptions.

Client acknowledges that SWCE has the right to reasonably rely on information provided.

3.2 Give prompt written notice to SWCE whenever Client observes or otherwise becomes aware of any development that affects the scope or timing of SWCE's services.

3.3 Arrange for SWCE, its agents and representatives to have safe access to the site and buildings thereon, and other locations as required, at reasonable times throughout the performance of the services.

3.4 Acknowledge that SWCE is a corporation and agree that any claim made by the Client arising out of any act or omission of any officer or employee of SWCE in the execution or performance of this Agreement, shall be made against SWCE and not against such officer or employee.

## 4. Insurance

SWCE maintains worker's compensation insurance of a form and in the amount required by state law. SWCE maintains general liability, automobile liability and professional liability coverage. Certificates for insurance coverage will be provided to the Client upon request and SWCE will promptly notify the Client of any impending change in coverage. SWCE shall comply with Client's reasonable requests for special endorsements, additional limits, additional coverages, et al., providing these are available to SWCE, and Client renumerates SWCE for the cost thereof.

ATTACHMENT B
Limited Services
1 of 6
REV. 04-27-04



## 5. Engagement of Laboratories and Others by Client

If so requested or agreed by the Client, SWCE will recommend that the Client engage the services of laboratories, testing services, subconsultants, or third-parties to perform suitable aspects of the services. Invoices for such third-parties will be reviewed by SWCE, and SWCE will make recommendations to the Client regarding payment. Payment to these third-parties will be made directly by the Client. SWCE will recommend the use of such third-parties with reasonable care but does not guarantee their services and will not be liable for their errors or omissions.

## 6. Billing and Payment

6.1 The Client shall pay SWCE in accordance with the rates and charges set forth in this Agreement or otherwise agreed upon. SWCE will submit invoices for services rendered and expenses incurred during the previous period on a four (4) week periodic basis.

6.2 Payment will be due upon receipt of SWCE's invoice. Payments due SWCE and unpaid under the terms of this Agreement shall bear interest from thirty (30) days after the date payment is due at the rate of one and one half (1.5) percent per month (18 percent per annum). In the event that SWCE is compelled to take action to collect past due payments, the Client will reimburse SWCE for all cost and expenses of collection, including without limitation all court costs and reasonable attorney's fees.

6.3 Other direct charges include actual SWCE expenditures plus five (5.0) percent for:

6.3.1 Transportation and living expenses incurred in connection with travel on behalf of the Client;

6.3.2 Fees paid for securing approval of authorities having jurisdiction over the project;

6.3.3 Overnight or priority postage and costs for special handling of documents;

6.3.4 Expense of any additional insurance coverage or limits, including professional liability insurance, requested by the Client in excess of that normally carried by SWCE and SWCE's consultants;

6.3.5 Automobile expenses for personal or company vehicles at $0.38 per mile, plus toll charges, for travel to conduct the work, or rental of vehicles plus gasoline and toll charges for traveling to conduct the work;

6.3.6 Purchase or rental of specialized equipment;

6.3.7 Photographs.

6.4 Miscellaneous communication related expenses will be billed to the Client at 4.5% of current billing. This will cover expenditures for miscellaneous telephone, Fax, and computer expenses incurred on the project(s).

6.5 Should it be necessary to engage the services of specialized consultants or companies, this will be done with the Client's approval.

6.6 If the scope of the project or of SWCE's services is changed materially, the amount of compensation shall be equitably adjusted between the Client and SWCE.

6.7 If the project is suspended or abandoned in whole or part, SWCE shall be compensated for all services performed prior to receipt of written or oral notice from the Client of such suspension or abandonment, together with other expenses then due and project closeout costs. If the project is resumed after being suspended for more than three (3) months, SWCE's compensation shall be equitably adjusted between the Client and SWCE.

6.8 No deductions shall be made from SWCE's compensation on accounts or sums withheld from payments to contractors, nor shall payment to SWCE be contingent upon financing arrangements or receipt of payment from any third party.

6.9 If the Client fails to make payment when due SWCE for services and other expenses, SWCE

ATTACHMENT B
Limited Services
2 of 6
REV. 04-27-04

P0684



may, upon seven (7) days' written notice to Client suspend performance of services under this Agreement. Unless payment in full is received by SWCE within seven (7) days of the date of the notice, the suspension shall take effect without further notice. In the event of a suspension of services, SWCE shall have no liability to Client for delay or damage caused Client or others because of such suspension of services.

## 7. Ownership of Instruments of Service

Plans, specifications, reports, boring logs, calculations, field data, field notes, laboratory and field test data, estimates, and similar documents and materials (other than samples) prepared by or for SWCE as instruments of service are SWCE's property. SWCE shall retain these instruments of service for three (3) years following submission of project deliverables, during which period SWCE's instruments of service will be made available for Client's review at any reasonable time. If Client wants SWCE to retain instruments of service for a longer period, Client shall notify SWCE in writing before expiration of the retention period otherwise prevailing. Client shall remunerate SWCE for additional storage at a fee agreed to by SWCE and the Client.

## 8. Limitation of Liability

Client acknowledges that SWCE faces more than the customary amount of risk when client requests limited services. Accordingly, as part of SWCE consideration, CLIENT shall, to the fullest extent permitted by law, waive any claim against SWCE and indemnify, defend, and hold SWCE harmless from any claim resulting from services covered by this agreement. CLIENT also shall compensate SWCE, for any time spent or expenses incurred by SWCE, in defense of any such claim. Such compensation shall be based upon SWCE prevailing fee schedule and expense reimbursement policy. (The term "any claim" used in this provision means "any claim" in contract, tort, or statute alleging negligence, errors, omissions, strict liability, statutory liability, breach of

contract, breach of warranty, negligent misrepresentation, or other acts giving rise to liability.

Client expressly agrees that to the fullest extent permitted by law, its maximum aggregate recovery for claims against SWCE and all of its employees, concerning SWCE's services, including negligence or breach of this agreement shall be either $5,000 or SWCE's fee, whichever is greater. Client further expressly agrees that unless otherwise mutually agreed to in writing by both parties, all subsequent work performed by SWCE on behalf of Client concerning this agreement will be pursuant to an addendum to this agreement. This Limitation of Liability clause will extend to, and applies to, all subsequent work performed by SWCE for Client for this property.

## 9. Subsurface Risks

Client recognizes that special risks occur whenever engineering or related disciplines are applied to identify subsurface conditions. Even a comprehensive sampling and testing program, implemented with appropriate equipment and experience by personnel who function in accordance with a professional standard of practice, may fail to detect certain conditions. For similar reasons, actual environmental, geological, and geotechnical conditions that SWCE inferred to exist between sampling points may differ significantly from those that actually exist. The Client will not hold SWCE responsible for such special risks.

## 10. Indemnification Hold Harmless

SWCE agrees to indemnify and hold Client, its directors, shareholders, employees, and assigns harmless for all claims, damages and causes of actions, to the extent such claims, damages and causes of action are based on or arise out of SWCE's negligent acts, errors, or omissions.

Client agrees to protect, indemnify and hold SWCE, its directors, shareholders, employees, and assigns harmless for all claims, including third party claims, damages and

ATTACHMENT B
Limited Services
3 of 6
REV. 04-27-04



causes of actions, against SWCE related to the performance of the services in this Agreement, unless such claims are based on or arise out of SWCE's negligent acts or omissions.

**11. Construction Phase Responsibilities**

When SWCE's services include the performance of any services during the construction phase of the project (including any visits to the site) SWCE shall not, during such visits or as a result of any observations of construction, supervise, direct or have control over Contractor's work nor shall SWCE have authority over or responsibility for the means, methods, techniques, sequences or procedures of construction selected by the Contractor(s) or safety precautions and programs incident to the work of Contractor(s) or for any failure of Contractor(s) to comply with laws, rules, regulations, ordinances, codes or orders applicable to Contractor(s) furnishing and performing its (their) work. SWCE does not guarantee the performance of the construction contract by the Contractor(s), and does not assume responsibility for contractor's failure to furnish and perform its (their) work in accordance with the contract documents.

If SWCE's contract with the Client so requires, SWCE shall review (or take other appropriate action in respect of) shop drawings, samples and other data which Contractor(s) is (are) required to submit, but only for conformance with the design concept of the project and compliance with the information given in the contract documents. Such review or other actions shall not extend to means, methods, techniques, sequences or procedures of manufacture (including the design of manufactured products) or construction, or to safety precautions and programs incident thereto. SWCE's review or other actions, as described above, shall not relieve the Contractor(s) of (a) its (their) obligations regarding review and approval of any such submittals; and (b) its (their) exclusive responsibility for the means, methods, sequences, techniques and procedures of construction, including safety of construction.

**12. Delays**

Except as specifically set forth in this Agreement, neither party shall hold the other responsible or liable for damages or delays in performance caused by acts of God, interruptions in the availability of labor, or other events beyond the control of the other party, or that could not have been reasonably foreseen or prevented. For this purpose, such acts or events shall include unusually severe weather affecting performance of services, floods, epidemics, war, riots, strikes, lockouts, or other industrial disturbances, protest demonstrations, unanticipated project site conditions, and inability, with reasonable diligence, to supply personnel, equipment, or material to the project. Should such acts or events occur, both parties shall use their best efforts to overcome the difficulties arising and to resume as soon as reasonably possible the normal pursuit of the services under the Proposal for the specific project. Delays within the scope of this provision which cumulatively exceed thirty (30) days in any six (6) month period shall, at the option of either party, make this Agreement subject to termination or to renegotiation.

**13. Hazardous Substances**

13.1 The Client warrants that the Client has informed SWCE of any hazardous substances which may be present if the Client has knowledge or has any reason to assume or suspect that hazardous substances may be present at the subject property.

13.2 If during the course of the investigation hazardous substances are encountered, SWCE retains the right to suspend work immediately unless SWCE and the Client agree upon amendments to the contract which include provisions for revision of the scope of services, adjustment of budget estimates, and revised terms and conditions. If an amended agreement is not made between the Client and SWCE within seven (7) days of SWCE's notice

ATTACHMENT B
Limited Services
4 of 6
REV. 04-27-04



of suspension of work, further work under the contract will be terminated. The Client shall pay all fees and charges incurred under the provisions of the proposal through the date of termination.

13.3 The Client agrees to compensate SWCE for the cost of decontamination of equipment, replacement of equipment, or other costs incident to the discovery of hazardous substances.

13.4 The Client agrees that samples, drill cuttings and other objects containing hazardous substances are not the responsibility of SWCE. The Client agrees that the contaminated samples, contaminated drill cuttings, and other contaminated materials are the responsibility of the Client, and are to be disposed of through arrangements selected and made by the Client.

13.5 The Client agrees that, in the event SWCE does not discover hazardous substances at the subject site, it is understood that SWCE cannot maintain that no hazardous substances exist at the subject site.

13.6 The Client recognizes the Client's responsibility to inform the property owner, if the property is not owned by the Client, of the discovery of hazardous substances or suspected hazardous substances. The Client further recognizes the Client's responsibility to make any disclosures of the discovery of hazardous substances or suspected hazardous substances required by law to the appropriate governing agencies.

13.7 The Client waives any claim against SWCE and agrees to defend, indemnify, and save SWCE harmless from any claim or liability for injury or loss of any type arising from:
- SWCE's discovery of hazardous substances or suspected hazardous substances, including any costs caused by delay of the project and any cost associated with possible reduction of the property's value.
- All consequences of disclosures made by SWCE which are required by governing law.

- The application of a joint and several liability concept that would in any manner hold or seek to hold SWCE responsible for creating a hazardous condition or permitting one to exist.
- Cross contamination caused by sampling.
- SWCE's failure to detect hazardous substances through techniques consistent with other professionals performing similar services in the geographic area at the time that the services are performed.

The Client shall remain liable for and shall pay all fees and charges incurred by SWCE in defense of any such claim.

### 14. Biological Pollutants

SWCE's scope of work does not include the investigation or detection of the presence of any Biological Pollutants at the project site or in or around any existing or proposed structure at the site unless specifically noted in SWCE's scope of work. Client agrees that SWCE will have no liability for any claim regarding bodily injury or property damage alleged to arise from or be caused by the presence of or exposure to any Biological Pollutants at the project site or in or around any existing or proposed structure at the site. In addition, Client will defend, indemnify, and hold harmless SWCE from any third party claim for damages alleged to arise from or be caused by the presence of or exposure to any Biological Pollutants at the project site or in or around any existing or proposed structure at the site. The term "Biological Pollutants" includes, but is not limited to, molds, fungi, spores, bacteria, and viruses, and the byproducts of any such biological organisms.

### 15. Miscellaneous

15.1 This Agreement shall be governed and construed in accordance with the laws of the State of Maine.



15.2 Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of the Agreement or for any other purpose.

15.3 The Client and SWCE respectively bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such party with respect to all covenants of this Agreement. Neither the Client nor SWCE shall assign, sublet or transfer any interest in this Agreement without the written consent of the other.

15.4 This Agreement represents the entire and integrated Agreement between the Client and SWCE and supersedes all prior negotiations, representations or agreements, either written or oral, and may be amended only by written instruments signed by both Client and SWCE.

15.5 Where the services include subsurface explorations, the Client acknowledges that the use of exploration equipment may alter or damage the terrain, vegetation, structures, improvements, or property at the site and Client accepts that risk. Provided that SWCE uses reasonable care, SWCE shall not be liable for such alteration or damage or for consequential damage to, or interference with any subterranean structure, pipe, tank, cable, or other element or condition whose nature and location are not called to SWCE's attention before exploration commences.

15.6 The proposed language of any certificates, affidavits or certifications requested of SWCE or SWCE's consultants shall be submitted to SWCE for review and approval at least fourteen (14) days prior to execution. The Client shall not request certification and/or affidavits that would require knowledge or services beyond the scope of this Agreement or beyond the professional qualifications and engineering experience of SWCE.

15.7 Any estimates or opinions of project or con-construction costs are provided by SWCE on the basis of SWCE's experience and represents its best judgment. Since SWCE has no control over the cost of labor, materials, equipment or services furnished by others or over competitive bidding or market conditions, it cannot guarantee that proposals, bids or actual project costs or construction costs will not vary from any estimates or opinions of costs prepared by SWCE.

15.8 Samples for materials testing projects will be disposed of after laboratory test results have been reported. SWCE will dispose of all soil, rock, water, and other samples ninety (90) days after submission of SWCE's initial report. Client may request, in writing, that any such samples be retained beyond such date, and in such case SWCE will ship such samples to the location designated by Client, at Client's expense. SWCE may, upon written request, arrange for further storage of samples at mutually agreed storage charges. SWCE will not give Client prior notice of intention to dispose of samples. SWCE will not be responsible for disposing of contaminated samples.

ATTACHMENT B
Limited Services
6 of 6
REV. 04-27-04

<u>Storage Tanks</u>
- Based on Site inspection, interviews and records search via Environmental FirstSearch and town agencies, issues pertaining to current on-Site usage of storage tanks were not identified.
- Based on records obtained from the City of Lynn Fire Department, AGTs and USTs have been utilized historically at the Site for the storage of fuel oil, gasoline and possibly dry cleaning chemicals (chlorinated solvents). Based on records, eight 275-gallon AGTs, one 500-gallon UST, and one UST of unknown size were utilized at the Site from 1950 through 1988. Records document the removal of two 275-gallon AGTs, one 3,000-gallon UST, two 2,000-gallon USTs, one 500-gallon UST, and three tanks (unknown if AGTs or USTs) of unknown size. No records were found documenting subsurface conditions following UST removal.
- Records viewed via Environmental FirstSearch and town agencies located two properties with registered USTs within ¼-mile of the Site. Of these properties, none are located within approximately 0.1 miles of the Site.

<u>Solid Waste</u>
- Piles of solid waste (demolition debris) were observed throughout the Site. Based on conversations with Mr. Gateman, observed piles are scheduled to be removed and properly disposed off Site by Robert's Dismantling and Recycling.

<u>Hazardous Materials and Waste</u>
- No hazardous waste was observed.

<u>Asbestos</u>
- During the demolition of the burnt out building, suspect asbestos containing materials were sampled for asbestos content. Any necessary asbestos abatement was conducted by SCS Environmental under the guidance of Envirotest Laboratory. Refer to Appendix E for copies of asbestos abatement documentation.

P0689

elder service plan facility are located north, west, and east of the Site beyond abutting roadways.

The Site is currently vacant. The Site was formerly occupied by a 70,000 square-foot department store building, which was destroyed in a fire in August 2001. The remainder of the building was removed between October 2001 and April 2002. Asbestos abatement and demolition activities were recently conducted at the Site at the time of building removal. Filling and grading activities are currently being conducted at the Site to fill in the former basement areas and return the Site to a level grade.

### 2.4.1   Structures, Improvements and Land Area

The 0.97-acre Site is currently not occupied by any buildings. Prior to October 2001, the Site was occupied by one 70,000 square-foot building. The building was destroyed in a fire in August 2001. Since October 2001, on-Site asbestos abatement activities have been conducted by SCS Environmental under Envirotest Laboratory's direction, and on-Site demolition activities have been conducted by Robert's Dismantling & Recycling. Based on conversations with Mr. Gateman, all demolition debris has been or will be hauled off-Site by Robert's Dismantling & Recycling. Currently the former basement areas are being filled to grade.

Currently the Site is vacant, with a parking area located on the southeast portion of the Site. Refer to Figure 2 for the Site Plan.

### 2.4.2   Utilities

Based on conversations with Mr. Gateman, the former Site building was serviced with natural gas heat and municipal water and sewer. Mr. Gateman stated that to his knowledge no water wells of any type are located on the Site. Based on records maintained at the City of Lynn Assessor's office and fire department, the former Site building was historically heated with fuel oil. Refer to Section 5.1 for information regarding former aboveground and underground storage tanks.

No heating, cooling, and alternative or emergency energy sources are currently used at the Site.

### 2.5   Description of Abutting Properties

GEC conducted a limited visual reconnaissance of abutting and nearby properties to evaluate the potential for releases of OHM to impact the Site. Roadways and other properties abutting or proximal to the Site are described below. Based on the

P0690



S.W.COLE
ENGINEERING, INC.

• *Geotechnical Engineering*   • *Field & Lab Testing*   • *Scientific & Environmental Consulting*

# INVOICE

**REMIT PAYMENT TO:**
S. W. COLE ENGINEERING, INC.
37 LIBERTY DRIVE
BANGOR, ME 04401-5784
207-848-5714
**TIN: 01-0363633**

DALE C KERESTER, ESQUIRE
LYNCH BREWER HOFFMAN & FINK LLP
101 FEDERAL STREET - 2ND FLOOR
BOSTON MA 02110-1800

**INVOICE: 29260**
INVOICE DATE:  10/11/2006

**PROJECT:**    04-0412.1    LYNN MA - EXPERT TESTIMONY-CIVIL ACTION NO. 04-11730 NG - CONSULTATION

**MANAGER:    CHAD B. MICHAUD**

PROFESSIONAL SERVICES FOR THE PERIOD: 8/3/2006 TO 9/23/2006

| | | |
|---|---|---|
| ENGINEER | 39.50   HOURS | $4,345.00 |
| OTHER DIRECT CHARGES | | $472.27 |

| | |
|---|---|
| PROJECT SUBTOTAL: | $4,817.27 |
| COMMUNICATION FEE: | $216.78 |
| BILLING TOTAL: | $5,034.05 |
| **INVOICE AMOUNT:** | **$5,034.05** |

*TERMS:  Net cash 30 days.  A late charge of 1.5% will be added to any unpaid balance after 30 days.*

10:42 AM
08/03/07
Accrual Basis

**Georto, Inc.**
**Find Report**
**All Transactions**

| Type | Date | Num | Name | Memo | Account | Class | Clr | Split | Amount | Balance |
|------|------|-----|------|------|---------|-------|-----|-------|--------|---------|
| Check | 10/26/2006 | 6188 | S.W. Cole Enginee... | Inv: 29260 | GHQ Key Bank | | X | Legal E... | -5,034.05 | -5,034.05 |
| Check | 10/26/2006 | 6188 | S.W. Cole Enginee... | services 8/3/06 to 9/23/06 | Legal Expense | Cor... | X | GHQ K... | 5,034.05 | 0.00 |
| Check | 06/03/2004 | 2800 | S.W. Cole Enginee... | 18556 | SSB BFMA | | | Legal E... | -1,500.00 | -1,500.00 |
| Check | 06/03/2004 | 2800 | S.W. Cole Enginee... | 18556 - Gateman Lawsuit - Documentati... | Legal Expense | F39... | | SSB B... | 1,500.00 | 0.00 |
| Total | | | | | | | | | 0.00 | 0.00 |

Attn: Dale
Kevesten

(217-951-0811)

# S.W. COLE
## ENGINEERING, INC.

● *Geotechnical Engineering* ● *Field & Lab Testing* ● *Scientific & Environmental Consulting*

# INVOICE

**REMIT PAYMENT TO:**
S. W. COLE ENGINEERING, INC.
37 LIBERTY DRIVE
BANGOR, ME 04401-5784
207-848-5714
**TIN: 01-0363633**

DALE C KERESTER, ESQUIRE
LYNCH  BREWER HOFFMAN & FINK LLP
101 FEDERAL STREET - 2ND FLOOR
BOSTON MA 02110-1800

**INVOICE: 25871**
INVOICE DATE:  1/6/2006

**PROJECT:**    04-0412.1    LYNN MA - EXPERT TESTIMONY-CIVIL ACTION NO. 04-11730 NG - CONSULTATION

**MANAGER:**  **CHAD B. MICHAUD**

PROFESSIONAL SERVICES FOR THE PERIOD: 12/11/2005 TO 12/24/2005

ENGINEER

| | | |
|---|---|---|
| | 14.50   HOURS | $1,595.00 |

| | |
|---|---|
| PROJECT SUBTOTAL: | $1,595.00 |
| COMMUNICATION FEE: | $71.78 |
| BILLING TOTAL: | $1,666.78 |
| **INVOICE AMOUNT:** | **$1,666.78** |

TERMS.  Net cash 30 days.  A late charge of 1.5% will be added to any unpaid balance after 30 days.

Green Seal Environmental, Inc.

28 Route 6A
Sandwich, MA 02563

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/19/2006 | 3549 |

**Bill To**

Lynch Brewer, Hoffman & Fink, LLP
101 Federal Street
Boston, MA 02110

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Net 30 |  |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
|  |  | The following work was conducted between December 23 - 30, 2005. |  |  |
| Principal | 8 | Review file, transcript and prepare testimony. | 125.00 | 1,000.00 |
| Administration | 1 | Pre-filed direct testimony - production and notarization. | 40.00 | 40.00 |
| Principal | 1.5 | Research and document, conference call and document edits. | 125.00 | 187.50 |
| Shipping/Postage | 1 | UPS - overnighted Pre-filed Direct Testimony - December 28. | 18.11 | 18.11 |

Thank you for your business - Richelle

| **Total** | $1,245.61 |
|-----------|-----------|

For your convenience we accept Visa & Master Card

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| (508) 888-6034 | (508) 888-1506 | christie@gseenv.com | www.gseenv.com |

Green Seal Environmental, Inc.

28 Route 6A
Sandwich, MA 02563

# Invoice

| Date | Invoice # |
|------|-----------|
| 8/24/2006 | 3953 |

**Bill To**

Lynch Brewer, Hoffman & Fink, LLP
101 Federal Street
Boston, MA 02110

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | Net 30 | |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
| Principal | 3 | Review file testimony and meet with D. Kerrister. | 125.00 | 375.00 |
| Principal | 3.5 | Review photographs provided by attorney, also includes, e-mail & telephone correspondence with attorney & review of testimony. | 125.00 | 437.50 |

Thank you for your business - Richelle

| **Total** | $812.50 |
|-----------|---------|

For your convenience we accept Visa & Master Card

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| (508) 888-6034 | (508) 888-1506 | christie@gseenv.com | www.gseenv.com |

Green Seal Environmental, Inc.

28 Route 6A
Sandwich, MA 02563

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/18/2006 | 3986 |

**Bill To**

Lynch Brewer, Hoffman & Fink, LLP
101 Federal Street
Boston, MA 02110

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  | Net 30 |  |

| Item | Qty | Description | Rate | Amount |
|------|-----|-------------|------|--------|
|  |  | The following work was conducted between September 11 - 15, 2006. |  |  |
| Principal | 21 | Attend hearing at Federal Courthouse, Boston - September 12 - 14. | 175.00 | 3,675.00 |
| Mileage | 300 | Mileage to/from Boston - September 12 - 14. | 0.405 | 121.50 |
| Travel | 1 | Parking & T fares. | 26.00 | 26.00 |

Thank you for your business - Richelle

| Total | | $3,822.50 |
|-------|--|-----------|

For your convenience we accept Visa & Master Card

| Phone # | Fax # | E-mail | Web Site |
|---------|-------|--------|----------|
| (508) 888-6034 | (508) 888-1506 | christie@gseenv.com | www.gseenv.com |

# EXHIBIT "D" TO THE AFFIDAVIT OF DALE C. KERESTER

Exhibit "D"
Summary of Fees and Expenses/Advances

| Invoice Date | Period Covered | Total Fees Incurred | No-Charge | Courtesy Discount | Net Fees Charged | Expenses | Advances | Total Invoice | Cumulative Total |
|---|---|---|---|---|---|---|---|---|---|
| 5/5/2004 * | | | | | | | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| 7/29/2004 | 4/21/04-6/30/04 | $ 3,750.00 | $ 937.50 | | $ 2,812.50 | 9.42 | | $ 2,821.92 | $ 4,321.92 |
| 10/5/2004 | 7/1/04-8/31/04 | $ 6,933.75 | 62.50 | | $ 6,871.25 | 10.00 | 190.12 | $ 7,071.37 | $ 11,393.29 |
| 11/11/2004 | 9/1/04-10/31/04 | $ 312.50 | | | $ 312.50 | | 0.11 | $ 312.61 | $ 11,705.90 |
| 4/28/2005 | 11/1/04-3/31/05 | $ 7,460.00 | $ 405.00 | | $ 7,055.00 | 5.20 | 0.28 | $ 7,060.48 | $ 18,766.38 |
| 10/18/2005 | 4/1/05-8/31/05 | $ 15,375.00 | | | $ 15,375.00 | 198.69 | 303.04 | $ 15,876.73 | $ 34,643.11 |
| 4/12/2006 | 9/1/05-12/31/05 | $ 42,080.00 | | 12,080.00 | $ 30,000.00 | 605.62 | 5,847.64 | $ 36,453.26 | $ 71,096.37 |
| 6/30/2006 | 1/1/06-4/30/06 | $ 18,790.00 | 540.00 | $ 2,000.00 | $ 16,250.00 | 78.00 | 3,345.09 | $ 19,673.09 | $ 90,769.46 |
| 10/11/2006 ** | | | | | | | 5,034.05 | $ 5,034.05 | $ 95,803.51 |
| 11/9/2006 | 5/1/06-8/15/06 | $ 64,221.25 | $ 2,240.00 | 5,000.00 | $ 56,981.25 | 900.88 | 1,792.14 | $ 59,674.27 | $ 155,477.78 |
| 7/27/2007 | 8/16/06-7/5/07 | $ 145,966.25 | $ 3,466.25 | 15,000.00 | $ 127,500.00 | 525.76 | 10,772.60 | $ 138,798.36 | $ 294,276.14 |
| | | $ 304,888.75 | $ 7,651.25 | $ 34,080.00 | $ 263,157.50 | $ 2,333.57 | $ 28,785.07 | $ 294,276.14 | $ 294,276.14 |

*    Agreement between Georto and SW Cole dated 5/5/04; paid directly by Georto
**   SW Cole invoice paid directly by Georto

**EXHIBIT "E" TO THE AFFIDAVIT OF DALE C. KERESTER**



🖶 Print          ☒ Close Window

## Private Practice Lawyer Profile for Karin I. McEwen

**Karin I. McEwen**
Associate
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, Massachusetts 02110
(Suffolk Co.)

Telephone: 617-951-0800
Fax: 617-951-0811

**Practice Areas:** Civil Litigation

**Admitted:** 2001, New Jersey; 2002, New York and U.S. District Court, District of New Jersey; 2004, Massachusetts

**Law School:** New York University, J.D., 2001

**College:** Grinnell College, B.A., with honors, 1989; University of Wisconsin-Madison, M.A., Russian History, 1998

**Member:** Massachusetts, New York State and American Bar Associations.

**Biography:** Phi Beta Kappa.

**Born:** Nashville, Tennessee, June 13, 1967

**ISLN:** 916155436

**Web Site:** http://www.lynchbrewer.com



🖨 Print        ☒ Close Window

## Private Practice Lawyer Profile for Thomas J. Clemens

**Thomas J. Clemens**
Associate
Lynch, Brewer, Hoffman & Fink, LLP
101 Federal Street, 22nd Floor
Boston, Massachusetts 02110
(Suffolk Co.)

Telephone: 617-951-0800
Fax: 617-951-0811

AV Peer Review Rated

**Practice Areas:** Real Estate; Zoning and Land Use; Environmental Law

**Admitted:** 1985, Massachusetts

**Law School:** University of Michigan, J.D., 1984

**College:** Dartmouth College, B.A., magna cum laude, 1971

**Member:** Boston Bar Association; Real Estate Bar Association for Massachusetts.

**Biography:** Phi Beta Kappa.

**Languages:** French

**Born:** Stambaugh, Michigan, January 19, 1949

**ISLN:** 908343360

**Web Site:** http://www.lynchbrewer.com